Jeffrey W. Leppo
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, Washington 98101
Phone: (206) 624-0900
Fax: (206) 386-7500
Email: jwleppo@stoel.com

Attorney for ConocoPhillips Alaska, Inc.
and Anadarko Petroleum Corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATIONAL AUDUBON SOCIETY, ALASKA WILDERNESS LEAGUE, CENTER FOR BIOLOGICAL DIVERSITY, NATURAL RESOURCES DEFENSE COUNCIL, NORTHERN ALASKA ENVIRONMENTAL CENTER, SIERRA CLUB, and THE WILDERNESS SOCIETY, <br><br> Plaintiffs, <br><br> v. <br><br> GALE NORTON, Secretary of the Interior; HENRI BISSON, State Director, Bureau of Land Management; BUREAU OF LAND MANAGEMENT, and the UNITED STATES DEPARTMENT OF THE INTERIOR, <br><br> Defendants. | Case. No. <br> <u>1:05-CV-00008-JKS</u> |

## MEMORANDUM IN SUPPORT OF MOTION OF CONOCOPHILLIPS ALASKA, INC. AND ANADARKO PETROLEUM <u>CORPORATION FOR LEAVE TO INTERVENE</u>

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

# I.      INTRODUCTION

ConocoPhillips Alaska, Inc. ("ConocoPhillips") and Anadarko Petroleum Corporation ("Anadarko") are major participants in the exploration, development, and production of oil and gas on the North Slope of Alaska. Both ConocoPhillips and Anadarko are significant leaseholders on the North Slope and are the largest leaseholders in the Northeast and Northwest Planning Areas of the National Petroleum Reserve-Alaska ("Petroleum Reserve"). As such, both companies have made sizable financial investments in oil and gas activities in the Petroleum Reserve. Both companies also have a proven track record of environmentally sound oil and gas exploration and development.

ConocoPhillips and Anadarko each have a certain and demonstrated interest in continuing and expanding their operations in the Northeast Planning Area. Accordingly, ConocoPhillips and Anadarko have been actively involved in the administrative process leading up to the Secretary of the Interior's ("Secretary's") decision to approve, with additional environmental protections, the Preferred Alternative described in the Final Amended Northeast Integrated Activity Plan/Environmental Impact Statement ("IAP/EIS"). The Secretary's decision opens new areas of the Northeast Planning Area to highly regulated oil and gas development and changes the mitigation measures applicable to both new and existing leases from rigid, prescriptive stipulations to more flexible performance based stipulations and required operating procedures ("ROPs"). In addition, ConocoPhillips and Anadarko intend to participate in the upcoming lease sale expected to occur in the fall of 2006. Successful participation in the fall lease sale requires considerable advance preparation. ConocoPhillips and Anadarko have thus

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

made, and must continue to make, substantial financial and human resource commitments in anticipation of the lease sale.

In this lawsuit, plaintiffs National Audubon Society, Alaska Wilderness League, Center for Biological Diversity, Natural Resources Defense Council, Northern Alaska Environmental Center, Sierra Club, and the Wilderness Society assert that the Secretary, the Bureau of Land Management ("BLM") and the United States Fish and Wildlife Service ("FWS") (collectively "federal defendants") violated the National Environmental Policy Act ("NEPA"), the Endangered Species Act ("ESA"), the National Petroleum Reserve Production Act ("NPRPA"), and the Administrative Procedure Act ("APA") when they decided to amend the Northeast IAP/EIS.  Plaintiffs seek declaratory judgment and an injunction prohibiting the federal defendants from implementing the decision prior to compliance with these statutes.

Because the relief sought will directly and adversely affect ConocoPhillips' and Anadarko's interests and because ConocoPhillips and Anadarko are not adequately represented by either party to this litigation, both companies seek intervention pursuant to Rule 24 of the Federal Rules of Civil Procedure.  Specifically, ConocoPhillips and Anadarko move this Court for an order granting them leave to intervene in this case as of right on claims raised under the ESA and the NPRPA as well as the remedy phase of plaintiffs' NEPA claims.  Fed. R. Civ. P. 24(a).  In addition, ConocoPhillips and Anadarko seek permissive intervention to address the merits of the NEPA claims.  Fed. R. Civ. P. 24(b); Wetlands Action Network v. U.S. Army Corps of Engineers, 222 F.3d 1105, 1114 (9th Cir. 2000).  In the alternative, ConocoPhillips and Anadarko respectfully request that the Court grant them permissive intervention with regard to

all claims raised by plaintiffs pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 24(b).

## II.     BACKGROUND

### A.     ConocoPhillips' and Anadarko's Interests

#### 1.     ConocoPhillips' and Anadarko's Past Commitment to Oil and Gas Development on the North Slope and in the Petroleum Reserve

ConocoPhillips and Anadarko are, and have been, active participants in the exploration, development, and production of oil and gas on the North Slope of Alaska.  Declaration of Richard P. Mott ("Mott Decl.") ¶¶ 2-15; id., Ex. A at 13-14 (IAP/EIS at 3-14 to 3-15); Declaration of Gregory F. Hebertson ("Hebertson Decl.") ¶¶ 2-13.  ConocoPhillips, through its predecessors, Phillips Alaska, Inc. ("Phillips Alaska") and ARCO Alaska, Inc. ("ARCO"), has been involved in oil and gas activities for several decades.  Mott Decl. ¶ 3.  Similarly, Anadarko has been active on the North Slope for the past twelve years.  Hebertson Decl. ¶ 3.  In the winter of 1994-1995, ConocoPhillips and Anadarko discovered the Alpine field.  Mott Decl. ¶ 7; Hebertson Decl. ¶ 4.  As BLM acknowledges, the Alpine discovery, which revealed a new geologic play in previously unknown oil-bearing sands of the Jurassic Kingak Formation, played a significant role in re-igniting exploration interest in the Petroleum Reserve.  Id.; see also id., Ex. A at 13-14 (IAP/EIS at 3-14 to 3-15).  The Alpine play extends westward into the Petroleum Reserve and has been a principle target for exploration on leases in the eastern half of the Northeast Planning Area.  Id.

ConocoPhillips is also a major interest owner of the Prudhoe Bay field.  Mott Decl. ¶ 4. The company currently operates the Kuparuk River Unit on behalf of itself and other interest owners.  In addition, ConocoPhillips operates the Colville River Unit on behalf of itself and

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

Seattle-3266712.1 0028116-00025

Anadarko.  Id.  The Colville River Unit is located near the eastern edge of the Petroleum

Reserve.  Id.  Over 800,000 barrels of oil per day are shipped from oil fields on the North Slope,

including more than 100,000 barrels per day from the Alpine field.  Id. ¶ 5.  ConocoPhillips'

management of both the Kuparuk River Unit and the Colville River Unit has been heralded as an

example of the oil industry's ability to employ the best technological practices to minimize

environmental impacts and operate in a manner that respects neighboring communities and the

subsistence way of life.  Id. ¶ 6; see also Hebertson Decl. ¶ 6 (indicating Anadarko has a similar

commitment to environmentally and culturally sound oil and gas exploration and development).

ConocoPhillips and Anadarko have a well-established interest in continuing and

expanding their oil and gas operations into the Petroleum Reserve.  The Petroleum Reserve

constitutes a major component of the companies' overall portfolio of exploration lands in Alaska.

Hebertson Decl. ¶ 5; Mott Decl. ¶ 8; id., Ex. A at 14 (IAP/EIS at 3-15) (acknowledging that

ConocoPhillips and Anadarko are the oil companies most actively involved in the Petroleum

Reserve and that the companies' discoveries have played a significant role in reigniting

exploration interest in the Petroleum Reserve).  Anadarko currently manages exploration of

approximately 1,140,000 gross acres and approximately 391,000 net acres of leased lands in the

Northeast Planning Area and approximately 417,000 gross acres and 126,000 net acres in the

Northwest Planning Area.  Hebertson Decl. ¶ 2.  In addition, ConocoPhillips and Anadarko,

jointly or individually, have an interest in over 160 oil and gas leases in the Northeast Planning

Area and over 71 oil and gas leases in the Northwest Planning Area.  Hebertson Decl. ¶¶ 2, 7, 8,

13; Mott Decl ¶¶ 2, 9, 10, 15.

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

ConocoPhillips' and Anadarko's activities in the Petroleum Reserve are dependent on the acquisition of federal oil and gas leases.  The companies have participated in each of the three lease sales held in the Petroleum Reserve.  Mott Decl., Ex. A at 14 (IAP/EIS at 3-15) (noting companies' participation in the 1999 and 2002 lease sales for the Northeast Planning Area and the 2004 lease sale for the Northwest Planning Area); id. ¶¶ 9, 10, 15; Hebertson Decl. ¶¶ 7, 8, 13.  Successful bidding in Petroleum Reserve lease sales requires substantial advance preparation.  This advanced preparation includes involvement in a lengthy administrative process, collection and analysis of extensive three-dimensional and two-dimensional seismic data, as well as considerable commitment of financial and other company resources.  See, e.g., Mott Decl. ¶¶ 9, 15; Hebertson Decl. ¶¶ 7, 13.

The companies' preparations for the 1999 Northeast Planning Area sale and the 2004 Northwest Planning Area sale are typical of the amount of effort required for successful participation in a Petroleum Reserve oil and gas lease sale.  In addition to participating in the administrative processes, ConocoPhillips and Anadarko devoted significant financial, employee, and other company resources to preparations necessary for the lease sales.  See Mott Decl. ¶ 9 (ConocoPhillips' preparation for 1999 Northeast Planning Area lease sale took over 12 man years and included the acquisition and analysis of several million dollars of seismic data); id., ¶ 15 (indicating the company's preparations for 2004 Northwest Planning Area lease sale took approximately six man years and involved acquisition and processing of new seismic data and reprocessing of existing seismic data at a rough cost of $20,000,000); see also Hebertson Decl. ¶ 7 (Anadarko's preparation for 199 Northeast Planning Area lease sale took two years and cost in excess of $20,000,000); id. ¶ 13 (Anadarko's preparations for June 2004 Northwest Planning

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

Area lease sale took two years and cost approximately $10,000,000). As a result of ConocoPhillips' and Anadarko's careful preparation and position on the North Slope, the companies, individually, collectively, or with their partner Pioneer Natural Resources Alaska, Inc., acquired the majority of the leases offered at the 1999 and 2004 lease sales. Mott Decl. ¶¶ 9, 15 (indicating ConocoPhillips jointly or individually acquired 92 of the 133 lease offered in the 1999 sale and 71 of the 123 leases offered at the 2004 sale); Hebertson Decl. ¶¶ 7, 13 (stating Anadarko jointly or individually acquired 99 of the 133 leases offered at the 1999 sale and 37 of the 123 leases offered at the 2004 sale).

The Secretary's decisions to allow strictly controlled oil and gas leasing in the Northeast and Northwest Planning Areas are both currently subject to nearly identical lawsuits filed by similar plaintiff groups. See Wilderness Society, et al. v. Norton, Case No. 98-2395 (D.D.C. filed Oct. 5, 1998); Mott Decl., Ex. B; Northern Alaska Environmental Center, et al. v. Norton, 361 F. Supp. 2d. 1069 (D. Alaska 2005), decision on appeal pending, Case No. 05-35085 (9th Cir. argued Sept. 15, 2005). Significantly, the court in each case granted ConocoPhillips and Anadarko intervention to protect their interests. Mott Decl. ¶¶ 11, 16; Hebertson Decl. ¶¶ 9, 14.[1]

**2.    ConocoPhillips' and Anadarko's Interest in the Final Amended IAP/EIS for the Northeast Planning Area**

ConocoPhillips and Anadarko have a demonstrated interest in expanding and continuing their activities in the Northeast Planning Area pursuant to the Secretary's decision on the Final Amended IAP/EIS. On January 11, 2006, the Secretary signed a Record of Decision ("ROD") adopting the Preferred Alternative analyzed in the IAP/EIS, with additional protective measures.

_____

[1] In Wilderness Society v. Norton, ConocoPhillips intervened under the name of its predecessor, Phillips Alaska.

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

<u>See</u> Mott Decl., Ex. D at 2-6 (ROD at 9-13). The Preferred Alternative, as modified by the Secretary, makes approximately 95 percent of the Northeast Planning Area available to leasing, but defers leasing on Teshekpuk Lake and in the Colville River Special Area. In addition, the final decision subjects approximately 529,700 acres to no-surface-occupancy stipulations to protect sensitive areas along coastal areas, key rivers, deep water lakes, goose molting areas, and caribou use areas. <u>Id.</u> at 3, 7-8 (ROD at 10, 17-18). The ROD also requires area-wide, multi-year surveys and/or studies to prevent the taking of spectacled and Steller's eiders[2] and other bird species and to minimize disturbance to caribou and molting geese. <u>Id.</u> at 6 (ROD at 13).

Finally, instead of placing mitigation measures in prescriptive lease stipulations, as was done in the 1998 IAP/EIS for the Northeast Planning Area, the final decision imposes performance-based stipulations and ROPs on all aspects of oil and gas development and related activities. Mott Decl., Ex. A at 2 (IAP/EIS at ES-1); <u>id.</u> at 12, 19 (IAP/EIS at 2-57, 6-303) (changes to existing leases will be made with concurrence of leaseholder). As explained in the ROD and the IAP/EIS, these performance-based measures provide both BLM and leaseholders with greater flexibility to mitigate impacts from oil and gas activities through adaptive management. Mott Decl., Ex. D at 9 (ROD at 3); <u>id.,</u> Ex. A at 10 (IAP/EIS at 2-15). While performance-based stipulations and ROPs will ensure a similar, if not greater, level of protection for important surface resources and subsistence activities, Mott Decl., Ex. A at 11 (IAP/EIS at 2-16), they will have a marked impact on how leaseholders conduct their exploration and development activities. Hebertson Decl., Ex. A at 2 (performance-based approach to mitigation

---

[2] Spectacled and Steller's eiders are both listed under the ESA. On January 15, 2005, FWS issued a Biological Opinion concluding that the proposed and potential activities identified in the IAP/EIS were "unlikely" to violate section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

will encourage efficient resource management); Mott Decl., Ex. F at 14-15 (performance-based stipulations and ROPs will enable efficient compliance and allow for modification of operations as technologies and operations develop).

ConocoPhillips' and Anadarko's interests in defending the Secretary's decision are therefore twofold.  First, as indicated above, ConocoPhillips and Anadarko currently hold leases in the Northeast Planning Area and thus will be affected by the Secretary's decision to replace rigid prescriptive mitigation measures with performance-based stipulations and ROPs.  Id. Second, both ConocoPhillips and Anadarko are committed to obtaining leases offered at the fall lease sale.  Mott Decl. ¶ 18; Hebertson Decl. ¶ 16.  To that end, both companies have devoted, and must continue to devote, substantial financial and other resources to the preparations necessary for successful participation in the fall lease sale.  Mott Decl. ¶¶ 19-20; Hebertson Decl. ¶¶ 17-18.

ConocoPhillips and Anadarko have been actively involved in the administrative process leading up to the Secretary's decision to amend the Northeast IAP/EIS.  In October 2003, ConocoPhillips and Anadarko submitted detailed comments on issues related to management planning and potential lease sales in the Northeast Planning Area in response to BLM's Federal Register Notice of Intent to Plan and Call for Nominations and Comments.  68 Fed. Reg. 37,173 (June 23, 2003); Mott Decl. ¶ 20; Hebertson Decl. ¶ 18.  In addition, both ConocoPhillips and Anadarko attended public meetings held by BLM throughout Alaska and in Washington D.C. to take comments on the draft IAP/EIS.  Mott Decl., ¶ 20 & Ex. A at 15, 16-18 (IAP/EIS at 5-7, 6-6 to 6-8); Hebertson Decl. ¶ 18.  Finally, both ConocoPhillips and Anadarko submitted comprehensive written comments on the draft IAP/EIS.  Mott Decl. ¶ 20 & Ex. F; Hebertson

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS
Seattle-3266712.1 0028116-00025

Decl. ¶ 18 & Ex. A.  At public hearings and in their written comments, ConocoPhillips and Anadarko expressed their support for performance-based mitigation measures and advocated opening all areas in the Northeast Planning Area to oil and gas leasing subject to measures necessary to protect important resources.  Hebertson Decl., Ex. A at 2; Mott Decl., Ex. F at 1-2, 14-15.

ConocoPhillips and Anadarko anticipate participating in the first lease sale based on the Final Amended IAP/EIS, which BLM expects to hold in the fall of 2006.  Mott Decl., ¶ 18 & Ex. E (BLM press release regarding lease sale); Hebertson Decl. ¶ 16.  To that end, both companies have already expended considerable resources and, in the month leading up to the lease sale, will devote additional resources to the necessary preparations.  Mott Decl. ¶ 19; Hebertson Decl. ¶ 17.  As with previous Petroleum Reserve lease sales, ConocoPhillips and Anadarko expect to spend millions of dollars on data acquisition and analysis, staff and consultants in preparation for the fall sale.  Id.  In sum, due to the extensive investment involved in preparing to bid on Petroleum Reserve leases as well as their status as current leaseholders, ConocoPhillips and Anadarko have a significant stake in the Secretary's decision.  Mott Decl. ¶¶ 18-21; Hebertson Decl. ¶¶ 16-19.

**B.      Plaintiffs' Lawsuit**

Despite the meaningful environmental protections built into the Secretary's final decision and the rigorous analysis contained in the final EIS, plaintiffs' lawsuit challenges the amended IAP/EIS for the Northeast Planning Area.  Plaintiffs contends that the Secretary's decision, along with the final IAP/EIS upon which it was based, violates NEPA, the ESA, the NPRPA, and is therefore arbitrary, capricious, and otherwise not in accordance with law under the APA.

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

5 U.S.C. §§ 702, 706. Specifically, plaintiffs claim that the decision to open the Northeast

Planning Area to oil and gas leasing violates NEPA because the final IAP/EIS (1) understates

impacts to critical resources; (2) fails to analyze management alternatives in the context of

climate change; (3) does not adequately discuss all aspects of the decision made; does not fully

consider (4) cumulative effects, (5) a reasonable range of alternatives, or (6) the effectiveness of

proposed mitigation measures; and (6) presents a "new" approach to resource management that

was not subject to public comment. See Compl., Counts I; 42 U.S.C. § 4332. In addition,

plaintiffs claim that the decision violates the ESA because the Biological Opinion issued by FWS

to evaluate the effects of the proposed action on two species of threatened eiders, is, like the

IAP/EIS, based on a "hypothetical scenario." See Compl., Count II; 15 U.S.C. §1536. Finally,

plaintiffs contend that the decision violates section 6504(b) and section 6508 of the NPRPA

because it does not provide "maximum protection" to wildlife and subsistence resources in

designated special areas. Compl., Count III; 42 U.S.C. §§ 6504(b), 6508.

    Plaintiffs seek a declaratory judgment and injunctive relief prohibiting implementation of

the final decision prior to compliance with NEPA, the ESA, the NPRPA, and the APA. See

Compl., Prayer for Relief. Should plaintiffs prevail, ConocoPhillips and Anadarko will suffer

direct harm from any injunction issued that would either delay the upcoming lease sale,

suspending research or other activities currently being conducted by the companies in the

Planning Area, or otherwise impede implementation of the Preferred Alternative as modified by

the Secretary. Mott Decl. ¶ 21; Hebertson Decl. 19. ConocoPhillips and Anadarko will also

suffer permanent harm if plaintiffs successfully convince this Court that the final decision is

somehow unlawful. Id. Finally, because the issues raised in this lawsuit are substantially similar

to those raised in <u>Wilderness Society</u>, No. 98-2395, and <u>Northern Alaska Environmental Center</u>, Case No. 05-35085, rulings in this lawsuit have the potential to affect ConocoPhillips' and Anadarko's legally-protected interests in those cases. Mott Decl. ¶¶ 11, 16; Hebertson Decl. ¶¶ 9, 14.

## III.    ARGUMENT

### A.    ConocoPhillips and Anadarko Are Entitled to Intervention As of Right

ConocoPhillips and Anadarko are entitled to intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure to defend their interests with regard to plaintiffs' ESA and NPRPA claims. In addition, ConocoPhillips and Anadarko are entitled to intervention as of right in the remedy phase of plaintiffs' NEPA claims.[3] Rule 24(a) provides, in relevant part:

> Upon timely application, anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject matter of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

---

[3] ConocoPhillips and Anadarko are aware of the Ninth Circuit rule limiting intervention as of right for third parties in NEPA actions to the remedy or injunctive phase. <u>See</u>, <u>e.g.</u>, <u>Kootenai Tribe of Idaho v. Veneman</u>, 313 F.3d 1094, 1108 (9th Cir. 2002). ConocoPhillips and Anadarko believe that the Ninth Circuit rule is incorrect for the reasons articulated by other circuits. <u>See</u>, <u>e.g.</u>, <u>Kleissler v. U.S. Forest Service</u>, 157 F.3d 964, 971-72 (3d Cir. 1998) (rejecting Ninth Circuit rule on the grounds that it "contravenes a major premise of intervention—the protection of third parties affected by pending litigation" and acknowledging that NEPA actions often have immediate and deleterious effects on entities and individuals other than the plaintiffs). However, consistent with the Ninth Circuit rule, ConocoPhillips and Anadarko seek intervention as of right with regard to the remedy phase of plaintiffs NEPA claims and permissive intervention on the merits. <u>Kootenai</u>, 33 F.3d at 1108-10 (granting permissive intervention to third parties on merits of NEPA claim); <u>Wetlands Action Network</u>, 222 F.3d at 1114 (developer allowed to intervene as of right in remedial stage of NEPA claims); <u>Churchill County v. Babbitt</u>, 150 F.3d 1072, 1083 (9th Cir. 1998), <u>amended</u>, 158 F.3d 491 (9th Cir. 1998) (granting power company intervention as of right on remedy stage of NEPA claims). The companies' argument for permissive intervention is set forth, <u>infra</u>, at Section III.B-C.

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

Fed. R. Civ. P. 24(a)(2).

The Ninth Circuit has adopted a four-part test to determine whether a party should be permitted to intervene as of right: (1) the motion must be timely; (2) the movant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the movant must be so situated that the disposition of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) the movant's interest must not be adequately represented by the existing parties to the action.  Smith v. Marsh, 194 F.3d 1045, 1049 (9th Cir. 1999); League of United Latin American Citizens v. Wilson, 131 F.3d 1297, 1302 (9th Cir. 1997); Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 836 (9th Cir. 1996).  The Ninth Circuit applies this test broadly in favor of intervention.  United States v. City of Los Angeles, 288 F.3d 391, 397-98 (9th Cir. 2002) ("'A liberal policy in favor of intervention services both efficient resolution of issues and broad access to the courts.'") (citations omitted); Scotts Valley Band of Pomo Indians v. United States, 921 F.2d 924, 926 (9th Cir. 1990).  As discussed below, ConocoPhillips and Anadarko meet each of these requirements.

### 1.     This Motion is Timely

In evaluating the timeliness of a motion to intervene, courts in the Ninth Circuit consider three factors: (1) the stage of the proceedings, (2) the prejudice to the other parties, and (3) the reason for and length of the delay.  State of Alaska v. Suburban Propane Gas Corp., 123 F.3d 1317, 1319 (9th Cir. 1997).  ConocoPhillips and Anadarko satisfy the timeliness requirement.

The NPRPA requires plaintiffs seeking judicial review of an EIS concerning oil and gas leasing in the Petroleum Reserve to file their actions within 60 days of the Federal Register

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

Seattle-3266712.1 0028116-00025

notice announcing the availability of the final EIS.  42 U.S.C. § 6508.  In order to preserve their

claims under NEPA, plaintiffs filed the original complaint in this matter before the Secretary

made its final decision on the Amended IAP/EIS.  See Docket No. 1 (Compl., filed March 28,

2005).  However, plaintiffs clearly indicated their intention to file an amended complaint after

issuance of the ROD.  See Docket No. 5 (Joint Motion to Extend Time for Filing Scheduling and

Planning Conference Report ("Joint Motion")) at 3.  As plaintiffs explained, only after release of

the ROD would they be able to "refine" their NEPA claims and "add any additional claims."  Id.

In addition, plaintiffs and federal defendants jointly moved for permission to delay the time for

filing the scheduling and planning conference report until 21 days after release of the ROD.  Id.

at 2.

    The Court granted the parties' Joint Motion.  Docket No. 6.  Pursuant to the Court's

order, the parties filed their planning report on February 22, 2006.  The planning report, which

was approved by the Court, included a proposed briefing schedule which indicated that motions

to intervene should be filed by March 31, 2006.  Docket No. 16 (planning report); Docket No. 17

(court order approving schedule for intervention motions).

    Accordingly, this motion is timely because ConocoPhillips and Anadarko have filed their

motion to intervene in advance of the date set by the Court.  Furthermore, the proceedings are

still at an early stage.  The federal defendants have not yet answered the amended complaint and

the administrative record has not yet been lodged.  Nor will any of the existing parties be

prejudiced by this motion.  By letter dated July 29, 2005, counsel for ConocoPhillips and

Anadarko informed both plaintiffs and the federal defendants of their intention to move for

intervention once the ROD was issued, plaintiffs filed their amended complaint, and the

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

companies could fully assess their interests in the lawsuit.  See Declaration of Jeffrey W. Leppo, Ex. A.  Finally, because ConocoPhillips and Anadarko are willing to comply with the briefing schedule agreed to by the parties, granting the companies intervention will not delay these proceedings.

> **2.     ConocoPhillips and Anadarko Have a Significant Protectable Interest in this Action**

Whether the moving party demonstrates sufficient interest to intervene is a "practical, threshold inquiry" for which "[n]o specific legal or equitable interest need be established." Greene v. United States, 996 F.2d 973, 976 (9th Cir. 1993), aff'd by Greene v. Babbitt, 64 F.3d 1266 (9th Cir. 1995).  As noted by the court in City of Los Angeles,

> A liberal policy in favor of intervention serves both efficient resolution of issues and broad access to the courts.  By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time we allow an additional interested party to express its views before the court.

288 F.3d at 397-98 (internal quotations and citations omitted).  Consequently, the interest requirement is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  Id. at 398; Nuesse v. Camp, 385 F.2d 694, 700 (D.C. Cir. 1967).  A protectable interest sufficient to support intervention exists where the interest asserted is protectable under some law, and where there is a relationship between the protected interest and the claims at issue.  City of Los Angeles, 288 F.3d at 398 (relationship requirement is met where "'resolution of plaintiff's claim actually will affect the applicant'"); Southwest Center for Biological Diversity v. Berg, 268 F.3d 810, 818 (9th Cir. 2001) (determination of interest is a "'practical, threshold inquiry.  No specific legal or

equitable interest need be established'"); <u>Sagebrush Rebellion, Inc. v. Watt</u>, 713 F.2d 525, 528 (9th Cir. 1983) (intervenor's interest need not be protected by statute put at issue by complaint so long as it is protected by law and relates to claim).

As explained above, ConocoPhillips' and Anadarko's activities in the Petroleum Reserve are dependent on federal leases and subject to the restrictions imposed thereon. <u>See</u> § II.A.1, <u>supra</u>. Moreover, as current Northeast Planning Area leaseholders and perspective participants in the fall lease sale, ConocoPhillips and Anadarko have a direct and substantial interest in the federal defendants' decision. Specifically, ConocoPhillips and Anadarko have a considerable stake in implementation of the final preferred alternative, as endorsed by the Secretary, which opens new areas along the coast to leasing and replaces prescriptive mitigation measures with performance-based lease stipulations and ROPs. <u>See</u> § II.A.2, <u>supra</u>; Mott Decl. ¶¶ 17-21; Hebertson Decl., ¶¶ 15-19. To protect their interests, ConocoPhillips and Anadarko actively participated in the administrative process to ensure that the alternative ultimately selected would permit meaningful access to highly productive areas and would allow both current and future leaseholders to comply with performance-based, rather than prescriptive, mitigation measures to protect environmental and cultural protections. <u>See</u> § II.A.2, <u>supra</u>; Mott Decl. ¶ 20 & Ex. F at 1-2, 14-15; Hebertson Decl. ¶ 18 & Ex. A at 2; <u>see also</u> <u>Kleissler</u>, 157 F.3d at 973 (granting intervention to timber company with interest in approach to forest management adopted by agency).

In addition, as discussed above, ConocoPhillips and Anadarko have devoted, and must continue to devote, substantial financial and other resources to the preparations necessary to participate in the fall lease sale. <u>See</u> §§ II.A.1, II.A.2, <u>supra</u>. By the fall lease sale date, both

companies will have collectively invested several million dollars on data acquisition and analysis as well as consultants and staffing.  Id.; Mott Decl. ¶ 19; Hebertson Decl. ¶ 17.  Moreover, given the companies' track record of success at the 1999, 2002, and 2004 lease sales, ConocoPhillips and Anadarko, rightfully expect that they will be successful in their bidding efforts.  Mott Decl. ¶ 9, 10, 15; Hebertson Decl. ¶¶ 7, 8, 13.

Courts have repeatedly recognized that economic opportunities constitute a legally protectable interest for the purposes of intervention.  See Utahns for Better Transp. v. U. S. Dep't of Transp., 295 F. 3d 1111, 1116 (10th Cir. 2002) (granting intervention as of right to trade association whose members' threatened economic interests included future contract awards, pending bids, and bid opportunities); Kleissler, 157 F.3d at 972-73 (granting timber companies dependent on future contracts and pending bids intervention as of right in suit challenging agency's decisions regarding logging in national forest); Natural Resources Defense Council, Inc. v. U. S. Nuclear Regulatory Comm'n, 578 F. 2d 1341, 1116 (10th Cir. 1978) (granting intervention to potential recipients of operating licenses where plaintiffs sought to prohibit agency from issuing such licenses).  Where, as here, both the declaratory and injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon the significant protectable interests of third parties, the Court should grant intervention.  City of Los Angeles, 288 F.3d at 398-99; Utahns, 295 F. 3d at 1116; Kleissler, 157 F.3d at 972-73; Natural Resources Defense Council, 578 F. 2d at 1116.

**3.     Disposition of this Case in Plaintiffs' Favor Would Harm ConocoPhillips and Anadarko**

ConocoPhillips and Anadarko meet this requirement for intervention as of right because, as discussed above, any relief granted in favor of plaintiffs will have a direct and negative impact

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

Seattle-3266712.1 0028116-00025

on both companies.  The purpose of plaintiffs' lawsuit is to limit oil development in the

Northeast Planning Area and to impose prescriptive, rather than performance-based, mitigation

measures on the oil and gas activities that are allowed.  Such a disposition will adversely affect

ConocoPhillips' and Anadarko's ability to secure additional oil and gas leases in the Northeast

Planning Area and employ the best available technologies to lessen environmental impacts on

both their existing leases and any new leases they obtain in future sales.  Mott Decl. ¶¶ 17-18;

Hebertson Decl. ¶¶ 15-16; see also § II.A.2, supra.  Moreover, intervention as of right is

particularly appropriate where, as here, the relief sought is injunctive.  See City of Los Angeles,

288 F.3d at 399; Sagebrush Rebellion, 713 F.2d at 528 (where relief sought by plaintiffs will

have direct, immediate, and harmful effects upon a third party's legally protectable interests, the

party satisfies the "interest" test), aff'd by Sagebrush Rebellion, Inc. v. Hodel, 790 F.2d 760 (9th

Cir. 1986).

In the present case, if plaintiffs succeed in enjoining the federal defendants' decision to

allow oil and gas leasing in the Northwest Planning Area, ConocoPhillips' and Anadarko's

interests will be seriously compromised.  Not only are both companies dependant on government

oil and gas leases and subject to the restriction placed thereon, as detailed above, each company

has made significant financial commitments and conducted extensive research preparing to

participate in fall lease sale.  Mott Decl. ¶¶ 19; Hebertson Decl. ¶¶ 17.  In addition, because the

issues raised in this lawsuit are substantially similar to those currently before the D.C. district

court in Wilderness Society v. Norton, Case No. 98-2395, and on appeal in Northern Alaska

Environmental Center v. Norton, Case No. 05-35085, court rulings made in this lawsuit have the

potential to affect ConocoPhillips' and Anadarko's legally-protected interests in those case.

Mott Decl. ¶ 11, 16; Hebertson Decl. ¶ 9, 14; <u>Yniguez v. State of Arizona</u>, 939 F.2d 727, 737

(9th Cir. 1991) (impairment requirement satisfied where "jurisprudential concerns" might cause

another court to find the reasoning of district court persuasive); <u>Greene</u>, 996 F.2d at 977

("Intervention may be required when considerations of *stare decisis* indicate that an applicant's

interest will be practically impaired.") (citation omitted).  Accordingly, ConocoPhillips and

Anadarko should be granted intervention as of right to protect their considerable stake in the

outcome of this litigation.

> **4.      The Government Will Not Adequately Represent ConocoPhillips' and Anadarko's Interests**

The burden of demonstrating inadequate representation is minimal; ConocoPhillips and

Anadarko need only show that their interests are sufficiently different from the existing parties

such that their representation "may be" inadequate.  <u>Trbovich v. United Mine Workers of Am.</u>,

404 U.S. 528, 538 n.10 (1972); <u>Berg</u>, 268 F.3d at 823; <u>Nuesse</u>, 385 F.2d at 703.  The Court must

consider:

> (1) whether the interest of a present party is such that it will
> undoubtedly make all the intervenor's arguments; (2) whether the
> present party is capable and willing to make such arguments; and
> (3) whether the would-be intervenor would offer any necessary
> elements to the proceedings that other parties would neglect.

<u>City of Los Angeles</u>, 288 F.3d at 398 (citing <u>Northwest Forest Resource Council</u>, 82 F.3d

at 838).

The federal defendants do not have the same interest or perspective, or the same direct

economic stake in this controversy as does ConocoPhillips and Anadarko.  Therefore, it cannot

be assumed that the government will "undoubtedly" make all of their arguments or that the

government will be willing and able to do so.  <u>Id.</u>  Unlike ConocoPhillips and Anadarko, the

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

federal defendants are charged with balancing multiple and often competing uses of public lands. When parties, such as ConocoPhillips and Anadarko, have private interests, as opposed to the government's "public" interests, this difference is sufficient to justify intervention.  Sierra Club v. Espy, 18 F.3d 1202, 1208 (5th Cir. 1994); County of Fresno v. Andrus, 622 F.2d 436, 438-39 (9th 1980); National Resources Defense Council, Inc. v. Costle, 561 F.2d 904, 912 (D.C. Cir. 1977).

**B.    ConocoPhillips and Anadarko Should Be Allowed to Intervene Permissively on the Merits of Plaintiffs' NEPA Claims**

While the Ninth Circuit has held that third parties are not entitled to intervention as of right on the merits of NEPA claims, district courts may grant third parties permissive intervention pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.  See Kootenai, 313 F.3d at 1108.  As with intervention as of right, motions for permissive intervention are construed liberally in favor of the moving party.  Permissive intervention should be allowed under Rule 24(b) as long as the applicant seeking intervention establishes that: "(1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims."  See Donnelly v. Glickman, 159 F.3d 405, 411-12 (9th Cir. 1998).  Under this standard, neither the inadequacy of representation, nor a direct interest in the subject matter of the action need be shown.  Kootenai, 313 F.3d at 1108; Wright et al., Federal Practice and Procedure: Civil 2d § 1911.  As discussed in Section III.C, below, ConocoPhillips and Anadarko meet the requirements of permissive intervention.

Granting ConocoPhillips and Anadarko permissive intervention to address the merits of plaintiffs' NEPA claims is particularly appropriate in the present case.  Plaintiffs are using this litigation as a second opportunity to attack the federal defendants' analysis of environmental

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

Seattle-3266712.1 0028116-00025

impacts associated with the decision to amend the Northeast IAP/EIS.  Allowing plaintiffs to

represent their criticisms, while denying ConocoPhillips and Anadarko a similar opportunity to

address these issues, will unfairly skew the debate.  See Sierra Club v. U.S. EPA, 995 F.2d 1478,

1483 (9th Cir. 1993) (granting intervention to third parties and stating: "Our adversary process

requires that we hear from both sides before the interests of one side are impaired by a

judgment"); Kleissler, 157 F.3d at 971 (intervention allows entities and individuals affected by

NEPA actions to present their positions to the court); City of Los Angeles, 288 F.3d at 397-98

(liberal policy in favor of intervention allows interested parties to express their views before the

court).

## C.    Alternatively, ConocoPhillips and Anadarko Should Be Granted Permissive Intervention on All of Plaintiffs' Claims

For the reasons set forth above, ConocoPhillips and Anadarko are entitled to intervene as

a matter of right with regard to both Plaintiffs' ESA and NPRPA claims as well as the remedy

phase of plaintiffs' NEPA claims.  In addition, this court should allow ConocoPhillips and

Anadarko to intervene permissively on the merits of the NEPA claims.  In the alternative,

ConocoPhillips and Anadarko should be granted permissive intervention on all claims raised by

plaintiffs pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.  As stated above,

permissive intervention should be allowed under Rule 24(b) where an applicant for intervention

establishes that: (1) it shares a common question of law or fact with the main action; (2) its

motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's

claims.  See Donnelly, 159 F.3d at 411-12.  Furthermore, under this standard, neither the

inadequacy of representation, nor a direct interest in the subject matter of the action need be

shown.  See Wright et al., Federal Practice and Procedure: Civil 2d § 1911.

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

Seattle-3266712.1 0028116-00025

ConocoPhillips and Anadarko clearly satisfy this standard with regard to all claims raised by plaintiffs. First, as demonstrated above, this motion to intervene is timely. See § III.A.1. Second, as neither ConocoPhillips nor Anadarko intends to raise new or collateral issues not already raised in the complaint, ConocoPhillips' and Anadarko's defenses to this action will raise questions of law and fact that are in common with those already raised. Accordingly, intervention will not result in an unnecessary expansion of the present litigation. Moreover, as demonstrated throughout this motion, ConocoPhillips and Anadarko both have a strong interest in the decision challenged by plaintiffs and have significant knowledge and expertise about oil and gas exploration and development on the North Slope of Alaska. Thus, ConocoPhillips' and Anadarko's intervention will aid the Court in clarifying the factual and legal issues raised in this lawsuit. Finally, because this action involves a federal question and because ConocoPhillips' and Anadarko's interests derive from the federal question presented, they have an independent basis for jurisdiction in this matter.

## IV. CONCLUSION

For the reasons stated above, ConocoPhillips and Anadarko respectfully request that the Court grant this motion for leave to intervene as of right pursuant to Rule 24(a) with regard to claims raised by plaintiffs under the ESA, the NPRPA, and on the remedy phase of the claims raised under NEPA. Fed. R. Civ. P. 24(a). In addition, ConocoPhillips and Anadarko respectfully request that the Court grant them permissive intervention to address the merits of plaintiffs' NEPA claims. Fed. R. Civ. P. 24(b). In the alternative, ConocoPhillips and Anadarko request that the Court grant them leave to intervene permissively pursuant to Rule 24(b) with regard to all claims raised by plaintiffs. Id.

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

DATED this 28th day of March, 2006.

STOEL RIVES LLP


s/Jeffrey W. Leppo
Jeffrey W. Leppo, AK Bar #0001003
Attorney for Applicants for Intervention
ConocoPhillips Alaska, Inc. and Anadarko
Petroleum Corporation

National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS

**Certificate of Service**

I hereby certify that on March 28, 2006, a copy of foregoing *Memorandum in Support of Motion of ConocoPhillips Alaska, Inc. and Anadarko Petroleum Corporation for Leave to Intervene.* was served electronically on:

**Deirdre A. McDonnell**
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801

**Dean K. Dunsmore**
U.S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska  99501-3657


Courtesy copies were sent by first-class mail, postage prepaid to:

**David C. Crosby**
David C. Crosby, P.C.
5280 Thane Road
Juneau, Alaska  99801-7717

**Ethan Falatko**
**Lawrence Ostrovsky**
STATE OF ALASKA
Office of the Attorney General
P.O. Box 110300
Juneau, Alaska  99811-0300



s/Jeffrey W. Leppo
Jeffrey W. Leppo




National Audubon Society, et al. v. Norton, et al.
1:05-CV-00008-JKS