# IX.  PROTECTION OF THREATENED SPECIES

55.  The spectacled eider is a large-bodied marine duck that nests primarily on the Yukon-Kuskokwim Delta and the North Slope in Alaska.  58 Fed. Reg. 27,474.  The Yukon-Kuskokwim Delta breeding population has suffered a 94-98 percent decline from 47,700-70,000 pairs in the 1970s to 1,700-3,000 pairs in 1990.  Id.  The North Slope breeding population appears to have suffered a similar decline, with the numbers observed on systematic ground studies in Prudhoe Bay declining 80% from 1981 to 1991.  Id. at 27,475.

56.  On May 10, 1993, FWS published a final rule listing the spectacled eider as threatened throughout its range.

57.  FWS failed to designate critical habitat for spectacled eiders concurrent with the listing.  FWS instead made a determination that critical habitat designation would provide no net benefit to the species and therefore would not be prudent.  58 Fed. Reg. 27,476, 27,478.  According to FWS, "The species is widely dispersed in remote habitats that remain predominantly unaltered and uninhabited.  Current and planned Federal activities are affecting a limited portion of the species' suspected marine and terrestrial habitats."  58 Fed. Reg. 27,478.

58.  Spectacled eiders are present in several high-density nesting areas in the NPR-A planning area located primarily to the north, west and east of Teshekpuk Lake.  1 FEIS, Figure III.B.6-1, p. III-B-49.  According to the EIS, a substantial portion of spectacled eider breeding range to the north, west and east of Teshekpuk Lake may be affected by aircraft activities under the Preferred Alternative.  1 FEIS, p. IV-G-40.  Leasing, exploration and development activities will be permitted in high density nesting areas for spectacled eiders west of Teshekpuk Lake.  1 FEIS, p. IV-G-41 and Figure III.B.6-1, p. III-B-49.

14

59. The Steller's eider historically nested in Alaska in two general regions: western Alaska and the North Slope. 62 Fed. Reg. 31,749. The breeding range of Steller's eiders has contracted in recent decades. The Steller's eider has been essentially extirpated from western Alaska and now nests exclusively on Alaska's North Slope. Id. at 31,749, 31,751. The remnant North Slope population represents the only breeding population within the jurisdiction of the United States. Id. at 31,755.

60. On June 11, 1997, FWS issued a final rule listing the Alaska nesting population of the Steller's eider as threatened.

61. FWS failed to designate critical habitat for the Steller's eider concurrently with the listing, stating: "The Service finds that designation of critical habitat is not prudent for the Alaska breeding population of Steller's eiders at this time." 62 Fed. Reg. 31,755. FWS concluded that because habitat issues relating to activities in the NPR-A can be addressed through the ESA's section 7 consultation process, designation of critical habitat would result in no benefit to the species not already afforded by the Act. Id. at 31,755.

62. In the listing notice, FWS states that because of low numbers and restricted breeding range, the Alaska breeding population of Steller's eiders is at risk from natural and human-caused factors. Among other things, disturbance "could severely deplete Steller's eiders numbers on the North Slope and lead to extirpation of this remnant population." Id. at 31,755.

63. The current breeding range of the Steller's eider is contained largely within the NPR-A. Id. at 31,753. Steller's eiders have been observed nesting throughout the NPR-A planning area. 1 FEIS, Figures III.B.6-2, p. III-B-50 and III.B.6-3, p. III-B-51. Leasing, exploration and

Ex. B, p. 31

development activities will be permitted in areas south and west of Teshekpuk Lake in which Steller's eiders have been observed.  1 FEIS, Figures III.B.6-3, p. III-B-51 and II.C.1, p. II-23.

64.  The FEIS states that under the Preferred Alternative, "[s]ome eiders may be displaced to habitat that may not be optimal for successful reproduction and survival," 1 FEIS, p. IV-G-46, and that "[p]lacement of fill for roads and pads could result in destruction of some breeding habitat or actual take of spectacled and Steller's eiders or their nests." 1 FEIS, p. IV-G-45.

## Count I -- Authority to Lease

65.  Paragraphs 1 through 64 are re-alleged and incorporated by reference.

66.  The NPRPA expressly prohibits production of petroleum from the NPR-A or development leading to production of petroleum unless authorized by Congress.  42 U.S.C. § 6504(a) (1976).

67.  The 1980 appropriations rider did not grant the Secretary continuing or permanent authorization to conduct leasing in the NPR-A.  Pub. L. No. 96-514, 94 Stat. 2964 (1980).  In the 1980 rider, Congress granted the Secretary authority to conduct only a limited, interim program of oil and gas leasing in the NPR-A.  Id.  The Secretary's authority to prescribe an "expeditious program" of oil and gas leasing under the 1980 appropriations rider expired at the end of the leasing program in the mid-1980s.

68.  The prohibition in the NPRPA on production of petroleum or development leading to production of petroleum from the NPR-A remains controlling.  42 U.S.C. § 6504(a).

69.  The Secretary's decision to make approximately 87 percent of the NPR-A planning area available for oil and gas leasing without the requisite Congressional authorization was arbitrary, capricious and not in accordance with law and violated the NPRPA, 42 U.S.C. § 6504(a), and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.

Count II -- Violation of NEPA (Site-Specific Analysis)

70.  Paragraphs 1 through 64 are re-alleged and incorporated by reference.

71.  NEPA requires that an EIS contain a site-specific "detailed statement" that analyzes the probable environmental impacts, including direct and indirect effects, of a proposed action, and further requires that an EIS disclose the extent to which the proposed action forecloses future options.  42 U.S.C. § 4332(C); 40 C.F.R. §§ 1500.8(a)(1), (a)(3), and (a)(6).

72.  The FEIS fails to comply with NEPA because it fails to discuss the probable environmental consequences on a site-specific basis of oil and gas exploration and development related activities on those portions of the NPR-A planning area that would be adversely affected under each alternative, including the Preferred Alternative.

73.  The Secretary's decision to proceed with oil and gas leasing in the NPR-A planning area in the absence of site-specific analysis was arbitrary, capricious and not in accordance with law and violated NEPA, 42 U.S.C. § 4332(C), and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.

Count III -- Violation of NEPA (Wilderness Impact)

74.  Paragraphs 1 through 64 are re-alleged and incorporated by reference.

75.  NEPA requires that an EIS include an assessment of the impact of proposed oil and gas development activities on the wilderness resource of affected public lands.

76.  The FEIS fails to discuss adequately the direct and indirect impacts from oil and gas exploration and development related activities on wilderness.  The FEIS fails to compare or discuss the relative value as wilderness of the lands covered by each of the alternatives, including the Preferred Alternative, or to describe what the loss of the wilderness character in particular distinct areas would mean under each of the alternatives.

77. The Secretary's decision to proceed with oil and gas leasing in the NPR-A planning area in the absence of an adequate analysis of the impact to the wilderness resource was arbitrary, capricious and not in accordance with law and violated NEPA, 42 U.S.C. § 4332(C), and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.

## Count IV -- Violation of NEPA (Cumulative Impacts)

78. Paragraphs 1 through 64 are re-alleged and incorporated by reference.

79. NEPA requires that an EIS include an assessment of the cumulative impacts of the proposed action together with the impacts of past, present, and reasonably foreseeable activities.

80. The FEIS fails to provide an adequate assessment of the environmental impacts caused by past and present oil and gas activities on significant resources in the Arctic region and fails to provide an adequate cumulative assessment of the combined impacts of all past, present, and reasonably foreseeable activities.

81. The Secretary's decision to proceed with oil and gas leasing in the NPR-A planning area in the absence of an adequate analysis of cumulative impacts to the environment was arbitrary, capricious and not in accordance with law and violated NEPA, 42 U.S.C. § 4332(C), and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.

## Count V -- Violations of NEPA, NPRPA, FLPMA (Seismic Operations)

82. Paragraphs 1 through 64 are re-alleged and incorporated by reference.

83. NEPA requires that an agency prepare a detailed statement on any adverse environmental effects that cannot be avoided should the proposal be implemented. Included in this obligation is a requirement that the EIS include a discussion of the extent to which adverse effects can be avoided through mitigation measures or stipulations. 42 U.S.C. § 4332(C)(ii); 40 C.F.R. §§ 1502.14(f), 1502.16(h) and 1505.2(c).

18

84. FLPMA requires that "in managing the public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

85. The 1980 appropriations rider, to the extent it permits leasing in NPR-A at all, requires the Secretary to insure that activities undertaken shall include or provide such conditions, restrictions, and prohibitions as he deems necessary or appropriate to mitigate reasonably foreseeable and significantly adverse effects to the surface resources of NPR-A. 42 U.S.C. § 6508.

86. The FEIS fails to explain the choice made in Stipulation 24i for a six inch average snow cover requirement to mitigate surface resource damage given the options, not described in the FEIS, for more protective requirements. The FEIS reveals that Stipulation 24i will not prevent damage to tundra resources covering more than 30% of the NPR-A planning area.

87. The Secretary's decision to proceed with oil and gas leasing in the NPR-A planning area in the absence of an adequate analysis of mitigation measures for ground operations was arbitrary, capricious and not in accordance with law and violated NEPA, 42 U.S.C. § 4332(C), 40 C.F.R. §§ 1502.14(f), 1502.16(h) and 1505.2(c), and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.

88. The Secretary's decision to proceed with oil and gas leasing in the NPR-A planning area without imposing stipulations adequate to prevent damage to sensitive tundra resources was arbitrary and capricious and not in accordance with law and violated FLPMA, 42 U.S.C. § 1732(b), NPRPA, 42 U.S.C. § 6508, and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.

Ex. B, p. 35

Count VI -- Violations of NPRPA (Maximum Protection Standard)

89. Paragraphs 1 through 64 are re-alleged and incorporated by reference.

90. The NPRPA requires that exploration activities conducted within the Utukok River and Teshekpuk Lake areas and any other area designated by the Secretary of the Interior as containing "any significant subsistence, recreational, fish and wildlife, or historical or scenic value" be conducted in a manner which assures "maximum protection" of these surface values. 42 U.S.C. § 6504(b).

91. If the 1980 appropriations rider authorizes and applies to a current program of oil and gas leasing, it extends application of the "maximum protection" standard to oil and gas production activities. 42 U.S.C. § 6508.

92. The Secretary decided to proceed with the Preferred Alternative, which makes significant portions of the designated special areas available for leasing, despite the FEIS's description of other alternatives that are feasible and would provide more protection to the Colville River and Teshekpuk Lake Special Areas.

93. The Secretary's decision to proceed with the Preferred Alternative was arbitrary, capricious and not in accordance with law and violated the NPRPA, 42 U.S.C. § 6504(b), and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.

Count VII -- Violations of Executive Order 11990

94. Paragraphs 1 through 64 are re-alleged and incorporated by reference.

95. Executive Order 11990 requires that in acquiring, managing and disposing of federal lands, each federal agency "shall take action to minimize the destruction, loss or degradation of wetlands." Exec. Order 11990 § 1(a), 42 Fed. Reg. 26,961 (1977), reprinted in 42 U.S.C. § 4321.

Ex. B, p. 36

96. Executive Order 11990 further requires that federal agencies avoid new construction in wetlands unless the head of the agency makes a finding that there is no practicable alternative to such construction, and the proposed action includes all practicable measures to minimize harm to wetlands. Exec. Order 11990 § 2(a).

97. In selecting the Preferred Alternative, defendants failed to choose an alternative that will minimize the loss or degradation of wetlands.

98. Defendants further failed to find that no practicable alternative exists to the Preferred Alternative and that all practicable measures have been taken to minimize harm to wetlands.

99. The Secretary's decision to proceed with the Preferred Alternative in the face of these failures was arbitrary and capricious and not in accordance with law and violated Executive Order 11990, and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.

## Count VIII -- Violations of the Endangered Species Act

100. Paragraphs 1 through 64 are re-alleged and incorporated by reference.

101. The Endangered Species Act requires that to the maximum extent prudent and determinable, critical habitat shall be designated concurrently with a determination that a species is an endangered or threatened species. 16 U.S.C. § 1533(a)(3)(A).

102. FWS failed to designate critical habitat for both spectacled and Steller's eiders, instead making a determination that such designation would not be prudent.

103. The determinations of the Secretary and FWS that designation of critical habitat for spectacled and Steller's eiders would not be prudent were unlawful at the time they were made and continue to be unlawful, particularly in light of impending oil and gas leasing, exploration and development activities in the NPR-A planning area.

104. The ESA further prohibits federal agencies from making "any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate subsection (a)(2) of [section 1536]." 16 U.S.C. § 1536(d).

105. In the absence of critical habitat designation, there is no basis for concluding under 7(d) that oil and gas activities authorized in the NPR-A will not result in an irreversible or irretrievable commitment of resources that will foreclose formulation or implementation of reasonable and prudent alternatives that would avoid adverse modification of critical habitat.

106. Plaintiffs have complied with the requirements of 16 U.S.C. § 1540 by providing the Secretary, BLM and FWS with written notice on December 11, 1998 that they have violated the ESA, 16 U.S.C. §§ 1533(a)(3)(A) and 1536(d).

107. The failure of the Secretary and FWS to designate critical habitat for spectacled and Steller's eiders was arbitrary, capricious and not in accordance with law and violated the ESA, 16 U.S.C. § 1533(a)(3), and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.

108. The Secretary's decision to proceed with oil and gas leasing in the NPR-A planning area in the absence of a critical habitat designation was arbitrary, capricious and not in accordance with law and violated the ESA, 16 U.S.C. § 1536(d), and the Administrative Procedure Act, 5 U.S.C. §§ 702, 706.

PRAYER FOR RELIEF

Therefore, plaintiffs respectfully request that the Court:

1. Declare that defendants have violated the NPRPA, NEPA, FLPMA, Executive Order 11990, the ESA, and the Administrative Procedure Act, and that the actions as set forth above are arbitrary, capricious and not in accordance with law;

2. Enter appropriate injunctive relief to ensure that the defendants comply with the NPRPA, NEPA, FLPMA, Executive Order 11990, the ESA, and the Administrative Procedure Act, and to prevent irreparable harm to the plaintiffs and to the environment until such compliance occurs;

3. Award plaintiffs the costs of this action, including reasonable attorneys' fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;

4. Grant such other relief as the Court deems just and proper.

Respectfully submitted this 21st day of April, 1999,

Eric P. Jorgensen (Alaska Bar # 894010)
Earthjustice Legal Defense Fund, Inc.
325 Fourth Street
Juneau, AK 99801
(907) 586-2751

Peter Van Tuyn (Alaska Bar # 8911086)
Michael J. Frank (Alaska Bar # 7410076)
Trustees for Alaska
725 Christensen Dr. #4
Anchorage, AK 99501
(907) 276-4244

Sharon Buccino (D.C. Bar # 432073)
Natural Resources Defense Council
1200 New York Avenue, N.W.
Suite 400
Washington, D.C. 20005
(202) 289-6868

_Sharon Buccino w/ permission DSA_

By: Sharon Buccino
ATTORNEYS FOR PLAINTIFFS

23

ROBERT E. JORDAN III
LINDA S. STEIN
CYNTHIA L. TAUB
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, D. C. 20036-1795
(202) 429-6290
FAX (202) 466-7663

Attorneys for Phillips Alaska, Inc. and
Anadarko Petroleum Corporation

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE WILDERNESS SOCIETY, <u>et al.</u>, | ) ) ) |
| Plaintiffs, | ) ) )  Civ. Action No. 98-02395(RWR) |
| v. | ) ) ) |
| BRUCE BABBITT, Secretary of the Department of the Interior, <u>et al.</u>, | ) ) ) |
| Defendants. | ) ) ) ) |

## ANSWER OF INTERVENOR DEFENDANTS PHILLIPS ALASKA, INC. AND ANADARKO PETROLEUM CORPORATION TO FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 8(b), Intervenor Defendants Phillips Alaska, Inc. and

Anadarko Petroleum Corporation (hereinafter referred to as Phillips-Anadarko) answer Plaintiffs'

First Amended Complaint for Declaratory and Injunctive Relief as follows:

The numbered paragraphs of this Answer correspond to the numbered paragraphs of the

Complaint.

Phillips-Anadarko deny any allegations contained in Plaintiffs' Complaint, whether

express or implied, that are not specifically admitted herein.

## I.    NATURE OF THE CASE

1.    This paragraph contains characterizations of Plaintiffs' claims and legal conclusions, neither of which require a response.  To the extent that a response is necessary, Phillips-Anadarko admits that the Phillips-Anadarko have held an oil and gas lease sale in the northeast portion of the National Petroleum Reserve-Alaska ("Petroleum Reserve") and deny all other allegations.

## II.    JURISDICTION

2.    This paragraph alleges conclusions of law requiring no response.

## III.    PLAINTIFFS

3.    Phillips-Anadarko admits that The Wilderness Society is a non-profit organization. Phillips-Anadarko lack sufficient knowledge or information to form a belief as to the truth or falsity of the remainder of the allegations in this paragraph.

4.    Phillips-Anadarko admits that the Natural Resources Defense Council is a non-profit organization.  Phillips-Anadarko lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remainder of the allegations in this paragraph.

5.    Phillips-Anadarko admits that Greenpeace is a non-profit organization.  Phillips-Anadarko lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remainder of the allegations in this paragraph.

6.    Phillips-Anadarko admits that the Sierra Club is a non-profit organization.  Phillips-Anadarko lack sufficient knowledge or information to form a belief as to the truth or falsity of the remainder of the allegations in this paragraph.

7.     Phillips-Anadarko admits that Defenders of Wildlife is a non-profit organization. Phillips-Anadarko lack sufficient knowledge or information to form a belief as to the truth or falsity of the remainder of the allegations in this paragraph.

8.     Phillips-Anadarko admits that the Alaska Wilderness League is a non-profit organization.  Phillips-Anadarko lack sufficient knowledge or information to form a belief as to the truth or falsity of the remainder of the allegations in this paragraph.

9.     Phillips-Anadarko admits that the Alaska Center for the Environment is a non-profit organization.  Phillips-Anadarko lack sufficient knowledge or information to form a belief as to the truth or falsity of the remainder of the allegations in this paragraph.

10.    Phillips-Anadarko admits that the Northern Alaska Environmental Center is a non-profit organization.  Phillips-Anadarko lack sufficient knowledge or information to form a belief as to the truth or falsity of the remainder of the allegations in this paragraph.

11.    This paragraph alleges conclusions of law, and requires no response.  To the extent a response is required, Phillips-Anadarko denies the allegations in this paragraph.

12.    Phillips-Anadarko lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in the first sentence of this paragraph.  The second sentence of this paragraph alleges conclusions of law requiring no response.  To the extent a response is required, Phillips-Anadarko deny the allegations in the second sentence of this paragraph.

13.    Phillips-Anadarko admits the allegations in the first sentence of this paragraph. Phillips-Anadarko lack sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in the second and third sentences of this paragraph.  The fourth sentence

- 3 -

of this paragraph alleges conclusions of law requiring no response. To the extent a response is required, Phillips-Anadarko deny the allegations in the fourth sentence of this paragraph.

### IV.    DEFENDANTS

14.    Admitted.

15.    Admitted.

16.    Phillips-Anadarko admits that the Fish and Wildlife Service is an agency of the United States Department of the Interior which has responsibilities under the Endangered Species Act with respect to certain listed species in the National Petroleum Reserve-Alaska.

### V.    BACKGROUND

#### A.    National Petroleum Reserve-Alaska History

17.    Admitted.

18-20.    The allegations in paragraphs 18-20 summarize, characterize or paraphrase federal statutes and legislative history, to which no response is required. The statutes and legislative history described in these paragraphs are the best source of their content and speak for themselves. To the extent these paragraphs allege conclusions of law, no response is required.

21.    Phillips-Anadarko admits the first sentence of this paragraph. The second sentence of this paragraph summarizes, characterizes or paraphrases federal regulations, to which no response is required. The regulations themselves are the best source of their content and speak for themselves. To the extent this paragraph alleges conclusions of law, no response is required.

22.    Phillips-Anadarko admits the first sentence of this paragraph. Phillips-Anadarko admits that most of the Teshekpuk Lake Special Area and approximately one-third of the

- 4 -

Colville River Special Area are within the northeast planning area of the Petroleum Reserve; the remainder of the second sentence of this paragraph is denied.

23.     Phillips-Anadarko admits that in the Record of Decision for the Petroleum Reserve planning area the Secretary directed that the Pik Dunes Land Use Emphasis Area be added to the Teshekpuk Lake Special Area and that areas encompassing approximately two miles on either side of the Kikiakrorak and Kogosukruk Rivers, and the Kogosukruk's tributaries downstream of specific points identified by township and range, be added to the Colville River Special Area. Phillips-Anadarko admits the allegations in the second sentence of this paragraph.

24.     The first sentence of this paragraph quotes, summarizes or paraphrases the legislative history of a federal statute and requires no response. The quoted legislative history is the best source for its content and speaks for itself. With respect to the second sentence of this paragraph, Phillips-Anadarko notes that the Plaintiffs' use of vague and/or ambiguous adjectives such as "essential" and "significant" make this sentence unanswerable. Phillips-Anadarko does, however, admit that the area around Teshekpuk Lake provides nesting habitat for many migratory waterfowl species including those listed in the second sentence. Phillips-Anadarko further admits that the Teshekpuk Lake Special Area provides molting habitat for populations of the species listed in the third sentence. With respect to the fourth sentence, Phillips-Anadarko admits that spectacled and Steller's eiders are currently listed as threatened species under the Endangered Species Act. The Endangered Species Act is a federal statute, and it and its regulations are the best source for its content. Phillips-Anadarko further admits that both spectacled eiders and Steller's eiders have been observed in the area around Teshekpuk Lake, and both species are believed to nest within the Teshekpuk Lake Special Area, although sightings

- 5 -

of Steller's eiders, in particular, are very infrequent.  To the extent that this paragraph alleges

conclusions of law, no response is required.

26.    Phillips-Anadarko admits that portions of the area surrounding Teshekpuk Lake

encompass calving grounds for the Teshekpuk Lake caribou herd, which number approximately

25,000, and that the herd is a food source for local Alaska Native families.

26.    Phillips-Anadarko admits the allegations in the first sentence of this paragraph.

With respect to the allegations in the remainder of this paragraph, Defendants note that Plaintiffs'

use of vague and/or ambiguous terms such as "important," "vital source," "substantial," and

"highly concentrated," render this paragraph unanswerable.  Nevertheless, Phillips-Anadarko

admits that the Colville River and some of its tributaries provide habitat for certain raptors,

moose, brown bear, wolves and wolverine, and for at least 20 species of anadromous and other

freshwater fish.  Phillips-Anadarko further admits that certain of these species are a subsistence

resource for area residents, and that the river has some scenic and recreation values and potential

for remote, wilderness experiences.  Phillips-Anadarko also admits that the Colville River area

contains song birds and birds of prey, including the birds of prey listed in the fourth sentence of

this paragraph.  The fifth sentence is admitted.

27.    Phillips-Anadarko admits that Fish Creek, the Ikpikpuk, Kikiakgorak and

Kogosukruk Rivers, among others, have certain resource values, and deny the remaining

allegations of this paragraph.  To the extent this paragraph contains legal conclusions, no

response is required.

## B.    Leasing in NPR-A

28.    The first sentence of this paragraph either alleges conclusions of law, which require no response, or quotes, paraphrases or characterizes an Act of Congress. The cited Act is the best source for its content and speaks for itself. With respect to the remainder of this paragraph, Phillips-Anadarko admits that the Secretary has previously (before 1999) offered oil and gas leases in lease sales covering portions of the Petroleum Reserve and that all leases predating 1999 expired without development of a commercial oil field. Phillips-Anadarko also avers that a lease sale of portions of the northeast planning area of the Petroleum Reserve was held on May 5, 1999.

29.    The first sentence of this paragraph is the plaintiffs' characterization of the reasons for preparation of the Integrated Activity Plan for the northeast portion of the Petroleum Reserve. The Plan itself, the Environmental Impact Statement and Administrative Record of its consideration, and the Federal Register Notices surrounding its publication are the best sources for information regarding the plan's purposes and objectives, and they speak for themselves. Further, Phillips-Anadarko is without sufficient information to know why the Bureau of Land Management (BLM) prepared the plan, and therefore the allegation that it was prepared solely in response to expressions of interest by outside parties is denied. With respect to the second sentence, Phillips-Anadarko admits that a Notice of Intent to prepare an Integrated Activity Plan/Environmental Impact Statement was published in the Federal Register on February 13, 1997. The Federal Register Notice itself is the best source for its content and speaks for itself.

30.    Phillips-Anadarko admits that the Draft Environmental Impact Statement on the Integrated Activity Plan for the northeast portion of the Petroleum Reserve was prepared in

- 7 -

approximately 10 months.  With respect to the second sentence, Phillips-Anadarko admits that a

Notice of Availability of the Draft Integrated Activity Plan/Environmental Impact Statement was

published in the Federal Register on December 12, 1997.  The Federal Register Notice cited in

the second sentence of this paragraph is the best source for its content and speaks for itself.

31.    Admitted.

32.    Admitted.

33.    Admitted as to the first sentence.  With respect to the second sentence, Phillips-

Anadarko admits that the October 7, 1998 Record of Decision, the Final EIS and the

Administrative Record supporting the action served as the final stage of compliance with NEPA

for purposes of the May 5, 1999, oil and gas lease sale.

34.    This paragraph purports to summarize, paraphrase or characterize the content of a

federal statute, the Final EIS, and the ROD.  These documents are the best sources for their

contents and speak for themselves, and require no response.  To the extent this paragraph

contains conclusions of law, no response is required.  Phillips-Anadarko also avers that

Plaintiffs' characterizations fail to accurately summarize the entire contents of the Final EIS and

the ROD.

35.    Admitted as to the first sentence of this paragraph.  As to the second and third

sentences, Phillips-Anadarko admits, on information and belief, that almost the entire area

identified for leasing in the October 7, 1998 ROD was offered for lease in the first lease sale after

the ROD, and all bids received in that sale were opened at the May 5, 1999, bid opening.

Ex. B, p. 47

## VI.    FEIS ANALYSES

### A.    Lack of Site-Specific Impact Assessment

36.    Admitted.

37.    Denied.

38.    This paragraph purports to quote from, paraphrase, summarize or characterize portions of the Final Environmental Impact Statement, which speaks for itself, and requires no response.  To the extent this paragraph contains conclusions of law, no response is required.  Further, Phillips-Anadarko denies that plaintiffs' characterizations in this paragraph accurately quote or summarize the entire discussion in the Final Environmental Impact Statement.

### B.    Lack of Wilderness Impact Assessment

39.    This paragraph purports to quote from statements in the Final Environmental Impact Statement, which speaks for itself, and requires no response.  Phillips-Anadarko denies that plaintiffs' quotations in this paragraph accurately characterize or summarize the entire discussion in the Final Environmental Impact Statement.

40.    This paragraph purports to quote from, paraphrase, summarize or characterize portions of the Final Environmental Impact Statement, which speaks for itself, and requires no response.  To the extent this paragraph contains conclusions of law, no response is required.  Phillips-Anadarko denies that plaintiffs' characterizations in this paragraph accurately characterize or summarize the entire discussion in the Final Environmental Impact Statement.

41.    This paragraph purports to quote from, paraphrase, summarize or characterize portions of the Final Environmental Impact Statement, which speaks for itself, and requires no

response. To the extent this paragraph contains conclusions of law, no response is required. Phillips-Anadarko denies that plaintiffs' characterizations in this paragraph accurately characterize or summarize the entire discussion in the Final Environmental Impact Statement.

### C.    Lack of Adequate Cumulative Impacts Assessment

42.    This paragraph purports to quote from, paraphrase, summarize or characterize portions of the Final Environmental Impact Statement, which speaks for itself, and requires no response. To the extent this paragraph contains conclusions of law, no response is required. Phillips-Anadarko deny that plaintiffs' characterizations in this paragraph accurately characterize or summarize the entire discussion in the Final Environmental Impact Statement.

43.    Denied.

### D.    Lack of Seismic Mitigation Assessment

44.    This paragraph purports to quote from, paraphrase, summarize or characterize portions of the Final Environmental Impact Statement, which speaks for itself, and requires no response. To the extent this paragraph contains conclusions of law, no response is required. Phillips-Anadarko deny that plaintiffs' characterizations in this paragraph accurately characterize or summarize the entire discussion in the Final Environmental Impact Statement.

45.    This paragraph purports to quote from, paraphrase, summarize or characterize portions of the Final Environmental Impact Statement, which speaks for itself, and requires no response. Phillips-Anadarko denies that Plaintiffs' characterizations accurately characterize or summarize the entire discussion in the Final Environmental Impact Statement. To the extent this paragraph contains conclusions of law, no response is required.

- 10 -

46.     This paragraph purports to quote from, paraphrase, summarize or characterize portions of the Final Environmental Impact Statement and the Record of Decision, which speak for themselves, and require no response.  To the extent this paragraph contains conclusions of law, no response is required.  Phillips-Anadarko denies that plaintiffs' characterizations accurately characterize or summarize the entire discussion in the Final Environmental Impact Statement.  Denied as to the second sentence.

## VII.    SPECIAL AREA PROTECTION

47-49.  These paragraphs purport to summarize or characterize portions of the Final Environmental Impact Statement and ROD which speak for themselves and require no responses.

50.     Denied.

## VIII.    PROTECTION OF WETLANDS

51.     Phillips-Anadarko admits that portions of the planning area have many lakes and plant species that occur in water or poorly drained soils.

52.     This paragraph purports to quote, summarize, paraphrase or characterize the content of a Federal Executive Order.  The Order is the best source for its contents and speaks for itself, and requires no response.

53.     This paragraph purports to paraphrase, summarize or characterize portions of the Final Environmental Impact Statement, which speaks for itself, and requires no response.  Phillips-Anadarko denies that Plaintiffs' characterizations in this paragraph accurately summarize or characterize the entire discussion in the Final Environmental Impact Statement.

- 11 -

54.    This paragraph purports to paraphrase, summarize or characterize portions of the Final Environmental Impact Statement, and the ROD, which speak for themselves, and requires no response.

## IX.    PROTECTION OF THREATENED SPECIES

55.    With respect to the first sentence, Phillips-Anadarko admits that the spectacled eider is a large-bodied marine duck; the remainder of the sentence is denied. The second and third sentences purport to paraphrase, summarize or characterize portions of a Federal Register Notice. The Federal Register is the best source for its contents and speaks for itself, and therefore references to it require no response.

56.    Admitted.

57.    With respect to the first sentence, Phillips-Anadarko admits that the U.S. Fish and Wildlife Service did not designate critical habitat at the same time that it listed the spectacled eider as threatened. The second, third and fourth sentences purport to quote, summarize, paraphrase or characterize the content of a Federal Register Notice. The Federal Register is the best source for its contents and speaks for itself, and references to it therefore require no response. To the extent this paragraph consists of conclusions of law, no response is required.

58.    This paragraph purports to paraphrase, summarize or characterize portions of the Final Environmental Impact Statement, which speaks for itself, and requires no response. Phillips-Anadarko denies that plaintiffs' characterizations accurately summarize or characterize the entire discussion in the Final Environmental Impact Statement.

59.    Admitted as to the first sentence. As to the second sentence, Phillips-Anadarko admits that the nesting range of Steller's eiders in Alaska has contracted compared to the early

- 12 -

part of this century. As to the third sentence, Phillips-Anadarko admits that nesting Steller's

eiders are extremely scarce in western Alaska and that a small number of them are believed to

nest on Alaska's North Slope. As to the fourth sentence, Phillips-Anadarko admits that the North

Slope population is almost the only nesting population of Steller's eiders in the United States.

60.    Admitted.

61.    This paragraph purports to quote from, paraphrase, summarize or characterize

portions of a Federal Register Notice, which speaks for itself, and references to it therefore

require no response. Phillips-Anadarko deny that plaintiffs' characterizations accurately

characterize or summarize the entire discussion in the Federal Register Notice. To the extent this

paragraph contains any legal conclusions, no response is required.

62.    This paragraph purports to paraphrase, summarize or characterize portions of a

Federal Register Notice, which speaks for itself, and requires no response. Phillips-Anadarko

denies that plaintiffs' characterizations accurately characterize or summarize the entire discussion

in the Federal Register Notice.

63.    Admitted as to the first sentence. Denied as to the second sentence. With respect

to the third sentence, Phillips-Anadarko admits that oil and gas leasing, exploration and

development may be permitted in portions of areas south and west of Teshekpuk Lake in which a

small number of Steller's eiders have been observed.

64.    This paragraph purports to quote from, paraphrase, summarize or characterize

portions of a Final Environmental Impact Statement, which speaks for itself, and requires no

response. Phillips-Anadarko denies that plaintiffs' characterizations accurately characterize or

summarize the entire discussion in the Final Environmental Impact Statement.

- 13 -

**Count I–Authority to Lease.**

65.     Phillips-Anadarko's answers to paragraphs 1-64 of the First Amended Complaint are re-alleged and incorporated by reference in response to this paragraph.

66-68.   These paragraphs consist of Plaintiffs' characterizations, quotations and conclusions of law regarding federal statutes and require no response. The cited statutes speak for themselves, and are the best evidence of their content. To the extent these paragraphs make any factual allegations, they are denied.

69.     This paragraph consists of conclusions of law and requires no response. To the extent this paragraph makes any factual allegations, they are denied.

**Count II–Violation of NEPA (Site-Specific Analysis)**

70.   Phillips-Anadarko's answers to paragraphs 1-64 of the First Amended Complaint are re-alleged and incorporated by reference in response to this paragraph.

71.   This paragraph consists of Plaintiffs' characterizations and conclusions of law regarding a federal statute, and related regulation, and requires no response. To the extent the paragraph makes any factual allegations, they are denied.

72-73.   These paragraphs consist of conclusions of law and require no response. To the extent these paragraphs make any factual allegations, they are denied.

**Count III–Violation of NEPA (Wilderness Impact)**

74.     Phillips-Anadarko's answers to paragraphs 1-64 of the First Amended Complaint are re-alleged and incorporated by reference in response to this paragraph.

- 14 -

75.    This paragraph consists of Plaintiffs' characterizations and conclusions of law regarding a federal statute and requires no response. To the extent the paragraph makes any factual allegations, they are denied.

76-77.  These paragraphs consist of conclusions of law and require no response. To the extent these paragraphs make any factual allegations, they are denied.

### Count IV–Violation of NEPA (Cumulative Impacts)

76.    Phillips-Anadarko's answers to paragraphs 1-64 of the First Amended Complaint are re-alleged and incorporated by reference in response to this paragraph.

77.    This paragraph consists of Plaintiffs' characterizations and conclusions of law regarding a federal statute and requires no response. To the extent the paragraph makes any factual allegations, they are denied.

80-81.  These paragraphs consist of conclusions of law and require no response. To the extent these paragraphs make any factual allegations, they are denied.

### Count V–Violations of NEPA, NPRPA, FLPMA (Seismic Operations)

78.    Phillips-Anadarko's answers to paragraphs 1-64 of the First Amended Complaint are re-alleged and incorporated by reference in response to this paragraph.

83-85.  These paragraphs consist of Plaintiffs' quotations from, characterizations and conclusions of law regarding federal statutes and related regulations, that require no response. To the extent these paragraphs make any factual allegations, they are denied.

86.    This paragraph purports to paraphrase, summarize or characterize the contents of the Final Environmental Impact Statement, which speaks for itself and requires no response. To the extent this paragraph makes any factual allegations, they are denied. To the extent this

- 15 -

paragraph contains conclusions of law, no response is required. Phillips-Anadarko denies that plaintiffs' characterizations in this paragraph accurately summarize or characterize the entire discussion in the Final Environmental Impact Statement.

87-88. These paragraphs consist of conclusions of law and require no response. To the extent these paragraphs make any factual allegations, they are denied.

### Count VI–Violations of NPRPA (Maximum Protection Standard)

89.    Phillips-Anadarko's answers to paragraphs 1-64 of the First Amended Complaint are re-alleged and incorporated by reference in response to this paragraph.

90-91. These paragraphs purport to quote from, paraphrase, summarize or characterize federal statutes, which speak for themselves, and require no response. To the extent these paragraphs contain conclusions of law, no response is required. To the extent these paragraphs make any factual allegations, they are denied.

92-93. These paragraphs consist of conclusions of law and require no response. To the extent these paragraphs make any factual allegations, they are denied.

### Count VII–Violations of Executive Order 11990

94.    Phillips-Anadarko's answers to paragraphs 1-64 of the First Amended Complaint are re-alleged and incorporated by reference in response to this paragraph.

95-96. These paragraphs purport to quote from, paraphrase, summarize or characterize a federal Executive Order, which speaks for itself, and requires no response. To the extent these paragraphs contain conclusions of law, no response is required. To the extent these paragraphs make any factual allegations, they are denied.

97.    Denied.

98-99.  These paragraphs consist of conclusions of law and require no response.  To the extent these paragraphs make any factual allegations, they are denied.

## Count VIII–Violations of the Endangered Species Act

100.  Phillips-Anadarko' answers to paragraphs 1-64 of the First Amended Complaint are re-alleged and incorporated by reference in response to this paragraph.

101.    This paragraph consists of Plaintiffs' characterizations and conclusions of law regarding a federal statute and requires no response.  To the extent this paragraph makes any factual allegations, they are denied.

102.    This paragraph consists of Plaintiffs' characterizations and conclusions of law with respect to a Fish and Wildlife Service determination and requires no response.  The determination and record supporting it are the best sources for its content, and speak for themselves, requiring no response.  To the extent this paragraph contains conclusions of law, no response is required.

103.    This paragraph consist of conclusions of law, and require no response.  To the extent these paragraphs make any factual allegations, they are denied.

104.    This paragraph consists of Plaintiffs' quotations from, characterizations of and conclusions of law regarding a federal statute and requires no response.  To the extent this paragraph makes any factual allegations, they are denied.

105.    This paragraph consists of conclusions of law and requires no response.  To the extent this paragraph makes any factual allegations, they are denied.

106.    Phillips-Anadarko has insufficient information to form a conclusion as to the truth or falsity of this allegation, and it is therefore denied.

- 17 -

107-108.      These paragraphs consist of conclusions of law, and require no response.

To the extent these paragraphs make any factual allegations; they are denied.

## PRAYER FOR RELIEF

The remaining paragraphs (denoted 1-4 on page 23) of the First Amended Complaint

constitute Plaintiffs' prayer for relief, to which no response is required.

## FIRST AFFIRMATIVE DEFENSE

The First Amended Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs lack standing.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

Respectfully submitted this 15th day of May, 2000.

Of Counsel:
Antoinette M. Tadolini
Phillips Alaska, Inc.
700 G Street
Anchorage, AK  99510-0360

April Kanak
Anadarko Petroleum Corporation
17001 Northchase Drive
Houston, TX  77060

Robert E. Jordan III, D.C. Bar No. 15784
Linda S. Stein, D.C. Bar No.376217
Cynthia L. Taub, D.C. Bar No. 445906
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000
Fax:  (202) 466-7663

Attorneys for Intervenors/Defendants Phillips
Alaska, Inc. and Anadarko Petroleum
Corporation

- 18 -