

**FRIDAY, JUNE 3, 1977**

**PART VI**





# DEPARTMENT OF THE INTERIOR

## Bureau of Land Management

## Office of the Secretary

■

# MANAGEMENT AND PROTECTION OF THE NATIONAL PETROLEUM RESERVE IN ALASKA

**Exhibit 1, page 1 of 4**

HeinOnline -- 42 Fed. Reg. 28719 (1977)

serve on June 1, 1977, the suggested amendment would make the regulations too narrow.

4. Amend § 2361.0–2 by deleting reference to the Secretary's responsibility to proceed with petroleum exploration and other land uses. This suggested amendment ignores the Secretary's statutory responsibilities in sections 102, 103(c), 104(d), 104(e), and 105.

5. The Secretary is only responsible for environmental, fish and wildlife, and historic and scenic values as specified in the Act. This comment does not recognize that water, air, vegetation, and mineral values are components of the environment and must be protected and managed.

6. It was suggested that several additional Federal laws be added to § 2361.0–3. Since that section was already cumbersome and the Federal laws apply whether listed or not, the section was revised to only state the statutory authority under which the regulations are issued.

7. Consultation on management programs is not authorized or demanded in the Act except for the Task Force. Consultation is not demanded in the Act; however, section 103(b) authorizes the Secretary to promulgate such rules and regulations as necessary and appropriate. It is considered necessary and appropriate to maintain an exchange of information and ideas with interested, knowledgeable, and involved persons, groups, and agencies in making management decisions.

8. The public, particularly public interest organizations, must be consulted before use authorizations are issued and in deciding what stipulations will be required. Provisions are specifically included for consultation with the principal known interests. Comments and suggestions, whether volunteered or solicited, are welcomed and will be considered.

9. A boundary description should be included in the regulations. This would add unnecessary bulk to the regulations.

10. Terms "Best Available Management Practices" and "Maximum Protection of the Environment" should be included in the definitions sections. Where used, forms of the above terms are self explanatory in the text.

11. Section 2361.0–7 could cause needless complications with the exploration of the Reserve. The section has been reduced to the effect of law as stated in the Act.

12. Where State laws are more stringent, make State law apply. As a general rule, that may not always be the ideal situation. With the provisions in the regulations for communication among the affected agencies, the best possible management for all concerned should be attainable.

13. List all State and local government laws in § 2361.0–3. This section has been revised to only state the statutory authority under which the regulations are issued.

14. It was suggested that § 2361.1 include a provision to set up a monitoring team to see that the regulations are en-

forced. A monitoring team would duplicate the actions and responsibilities of the authorized officer and his staff and is not necessary.

15. It was suggested that a paragraph be added to § 2361.1, stating that all resources utilized by natives for subsistence be made available to them without restriction so long as the resources are available. Biological resources can be depleted gradually to a point of endangering future productivity without the depletion being recognizable to the untrained eye. Therefore, the Secretary's discretion must be maintained to exercise management when necessary. Adequate provision has been included in the proposal to protect the needs of subsistence users.

16. A suggestion that, for the duration of a use authorization, no additional special areas with added stipulations would be invoked cannot be included in the regulations. New information and new discoveries might make added stipulations necessary to protect a unique or extremely valuable resource.

17. It was suggested that a provision be added to § 2361.1 that the Task Force submit a list of proposed additional special areas to the Secretary. In accomplishing the statutory duties assigned, the Task Force will recognize areas of special significance. The procedures attached to that suggestion will be retained and considered in light of the duties of the Secretary and the Task Force.

18. The suggested inclusion of biological factors with historical and cultural resource protection measures does not fit in that context. Biological resources will be adequately protected under other provisions in the regulations.

19. The comment that these regulations make the State Director the final authority regarding fish and wildlife habitat management and subsistence uses is not correct. Decisions of the State Director are subject to review by the Director, the Secretary of the Interior, and the courts.

20. It is not necessary to include the suggestion to reserve the right of the authorized officer to monitor activities on the Reserve. As the officer responsible for the management and protection of the Reserve, he has that right.

21. It was suggested that a comprehensive resource report accompany each application for a use authorization. This type of data will be gathered by personnel assigned to processing any application.

The Department of the Interior has determined that this document does not contain a major program requiring preparation of an Inflation Impact Statement under Executive Order 11821 and OMB Circular A–107.

Under the authority of section 103(b) of the Naval Petroleum Reserves Production Act of 1976 (42 U.S.C. 6501), Group 2300 of Subchapter B of Chapter II of Title 43 is amended by adding a Part 2360 and Subpart 2361 as set forth below.

GUY R. MARTIN,
*Acting Secretary of the Interior.*

Subchapter B of Chapter II of Title 43 is amended by adding a new Part 2360 and a new Subpart 2361 as follows:

## PART 2360—NATIONAL PETROLEUM RESERVE IN ALASKA

**Subpart 2361—Management and Protection of the National Petroleum Reserve in Alaska**

Sec.
2361.0–1    Purpose.
2361.0–2    Objectives.
2361.0–3    Authority.
2361.0–4    Responsibility.
2361.0–5,    Definitions.
2361.0–6    [Reserved].
2361.0–7    Effect of law.
2361.1    Protection of the Environment.
2361.2    Use Authorization.
2361.3    Unauthorized Use and Occupancy.

Subpart 2361—Management and Protection of the National Petroleum Reserve in Alaska

§ 2361.0–1   Purpose.

The purpose of the regulations in this subpart is to provide procedures for the protection and control of environmental, fish and wildlife, and historical or scenic values in the National Petroleum Reserve in Alaska pursuant to the provisions of the Naval Petroleum Reserves Production Act of 1976. (90 Stat. 303; 42 U.S.C. 6501 et seq.).

§ 2361.0–2   Objectives.

The objective of this subpart is to provide for the protection of the environmental, fish and wildlife, and historical or scenic values of the Reserve so that activities which are or might be detrimental to such values will be carefully controlled to the extent consistent with the requirements of the Act for petroleum exploration of the reserve.

§ 2361.0–3   Authority.

The Naval Petroleum Reserve Production Act of 1976 (90 Stat. 303, 42 U.S.C. 6501, et seq.) is the statutory authority for these regulations.

§ 2361.0–4   Responsibility.

(a) The Bureau of Land Management (BLM) is responsible for the surface management of the reserve and protection of the surface values from environmental degradation, and to prepare rules and regulations necessary to carry out surface management and protection duties.

(b) The U.S. Geological Survey is responsible for management of the continuing exploration program during the interim between the transfer of jurisdiction from the U.S. Navy to the U.S. Department of the Interior and the effective date of any legislation for a permanent development and production program, to enforce regulations and stipulations which relate to the exploration of petroleum resources of the Reserve, and to operate the South Barrow gas field or such other fields as may be necessary to supply gas at reasonable and equitable rates to the Native village of Barrow and other communities and installations at or near Point Barrow, Alaska, and to installations of the Department of Defense and other agencies

**Exhibit 1, page 2 of 4**

28722

**RULES AND REGULATIONS**

of the U.S. located at or near Point Barrow, Alaska.

§ 2361.0–5  Definitions.

As used in this subpart, the following terms shall have the following meanings:

(a) "Act" means the Naval Petroleum Reserves Production Act of 1976, (90 Stat. 303, 42 U.S.C. 6501, et seq.).

(b) "Authorized officer" means any employee of the Bureau of Land Management who has been delegated the authority to perform the duties of this subpart.

(c) "Exploration" means activities conducted on the Reserve for the purpose of evaluating petroleum resources which include crude oil, gases of all kinds (natural gas, hydrogen, carbon dioxide, helium, and any others), natural gasoline, and related hydrocarbons (tar sands, asphalt, propane butane, etc.), oil shale and the products of such resources.

(d) "Reserve" means those lands within the National Petroleum Reserve in Alaska (prior to June 1, 1977, designated Naval Petroleum Reserve No. 4) which was established by Executive Order of the President, dated February 27, 1923, except for tract Numbered 1 as described in Public Land Order 2344 (the Naval Arctic Research Laboratory-surface estate only) dated April 24, 1961.

(e) "Secretary" means the Secretary of the Interior.

(f) "Special areas" means areas within the reserve identified by the Secretary of the Interior as having significant subsistence, recreational, fish and wildlife, or historical or scenic value and, therefore, warranting maximum protection of such values to the extent consistent with the requirements of the Act for the exploration of the Reserve.

(g) "Use authorization" means a written approval of a request for use of land or resources.

§ 2361.0–7  Effect of Law.

(a) Subject to valid existing rights, all lands within the exterior boundaries of the Reserve are reserved and withdrawn from all forms of entry and disposition under the public land laws, including the mining and mineral leasing laws, and all other Acts.

(b) Notwithstanding the provisions of paragraph (a) of this section, the Secretary is authorized to:

(1) Make dispositions of mineral materials pursuant to the Act of July 31, 1947 (61 Stat. 681), as amended (30 U.S.C. 601), for appropriate use by Alaska Natives.

(2) Make such dispositions of mineral materials and grant such rights-of-way, licenses, and permits as may be necessary to carry out his responsibilities under the Act.

(3) Convey the surface of lands properly selected on or before December 18, 1975, by Native village corporations pursuant to the Alaska Native Claims Settlement Act, as amended (43 U.S.C. 1601, et seq.).

(c) All other provisions of law heretofore enacted and actions heretofore taken reserving such lands as a Reserve shall remain in full force and effect to the extent not inconsistent with the Act.

(d) To the extent not inconsistent with the Act, all other public land laws are applicable.

§ 2361.1  Protection of the Environment.

(a) The authorized officer shall take such action, including monitoring, as he deems necessary to mitigate or avoid unnecessary surface damage and to minimize ecological disturbance throughout the reserve to the extent consistent with the requirements of the Act for the exploration of the reserve.

(b) The Cooperative Procedures of January 18, 1977, for National Petroleum Reserve in Alaska between the Bureau of Land Management (BLM) and the U.S. Geological Survey (GS) (42 FR 4542, January 25, 1977) provides the procedures for the mutual cooperation and interface of authority and responsibility between GS and BLM concerning petroleum exploration activities (i.e., geophysical and drilling operations), the protection of the environment during such activities in the Reserve, and other related activities.

(c) Maximum protection measures shall be taken on all actions within the Utukok River Uplands, Colville River, and Teshekpuk Lake special areas, and any other special areas identified by the Secretary as having significant subsistence, recreational, fish and wildlife, or historical or scenic value. The boundaries of these areas and any other special areas identified by the Secretary shall be identified on maps and be available for public inspection in the Fairbanks District Office. In addition, the legal description of the three special areas designated herein and any new areas identified hereafter will be published in the FEDERAL REGISTER and appropriate local newspapers. Maximum protection may include, but is not limited to, requirements for: (1) rescheduling activities and use of alternative routes, (2) types of vehicles and loadings, (3) limiting types of aircraft in combination with minimum flight altitudes and distances from identified places and (4) special fuel handling procedures.

(d) Recommendations for additional special areas may be submitted at any time to the authorized officer. Each recommendation shall contain a description of the values which make the area special, the size and location of the area on appropriate USGS quadrangle maps, and any other pertinent information. The authorized officer shall seek comments on the recommendation(s) from interested public agencies, groups, and persons. These comments shall be submitted along with his recommendation to the Secretary. Pursuant to section 104(b) of the Act, the Secretary may designate that area(s) which he determines to have special values requiring maximum protection. Any such designated area shall be

identified in accordance with the provision of § 2361.1(c) of this subpart.

(e) (1) To the extent consistent with the requirements of the Act and after consultation with appropriate Federal, State, and local agencies and Native organizations, the authorized officer may limit, restrict, or prohibit use of and access to lands within the Reserve, including special areas. On proper notice as determined by the authorized officer, such actions may be taken to protect fish and wildlife breeding, nesting, spawning, lambing of calving activity, major migrations of fish and wildlife, and other environmental, scenic, or historic values.

(2) The consultation requirement in § 2361.1(e) (1) of this subpart is not required when the authorized officer determines that emergency measures are required.

(f) No site, structure, object, or other values of historical archaeological, cultural, or paleontological character, including but not limited to historic and prehistoric remains, fossils, and artifacts, shall be injured, altered, destroyed, or collected without a current Federal Antiquities permit.

§ 2361.2  Use Authorizations.

(a) Except for petroleum exploration which has been authorized by the Act, use authorizations must be obtained from the authorized officer prior to any use within the Reserve. Only those uses which are consistent with the purposes and objectives of the Act will be authorized.

(b) Except as may be limited, restricted, or prohibited by the authorized officer pursuant to § 2361.1 of this subpart or otherwise, use authorizations are not required for (1) subsistence uses (e.g., hunting, fishing, and berry picking) and (2) recreational uses (e.g., hunting, fishing, backpacking, and wildlife observation).

(c) Applications for use authorizations shall be filed in accordance with applicable regulations in this chapter. In the absence of such regulation, the authorized officer may make such dispositions absence of such regulations, the authorized officer may make such dispositions of mineral materials and grant such rights-of-way, licenses, and permits as may be necessary to carry out his responsibilities under the Act.

(d) In addition to other statutory or regulatory requirements, approval of applications for use authorizations shall be subject to such terms and conditions which the authorized officer determines to be necessary to protect the environmental, fish and wildlife, and historical or scenic values of the Reserve.

§ 2361.3  Unauthorized use and occupancy.

Any person who violates or fails to comply with regulations of this subpart is subject to prosecution, including trespass and liability for damages, pursuant to the appropriate laws.

[FR Doc.77–15700 Filed 5–31–77;11:47 am]

**Exhibit 1, page 3 of 4**

HeinOnline -- 42 Fed. Reg. 28722 (1977)

NOTICES                                                                    28723

# DEPARTMENT OF THE INTERIOR

## Office of the Secretary

### ALASKA

### National Petroleum Reserve in Alaska Designation of Special Areas

The purpose of this publication is to give notice of the designation of the Utukok River Uplands, Teshekpuk Lake, and Colville River as special areas within the Naval Petroleum Reserve No. 4, Alaska (the reserve). The name "Naval Petroleum Reserve No. 4" will statutorily change to "National Petroleum Reserve in Alaska" on June 1, 1977.

Pursuant to section 104(b) of the Naval Petroleum Reserves Production Act of 1976 (42 U.S.C. 6501) (the Act), the Secretary of the Interior is authorized to designate certain areas containing significant subsistence, recreational, fish and wildlife, or historical or scenic values where special precautions are necessary to control activities which would disrupt such resource values.

All activities, including but not limited to petroleum exploration, within these three special areas shall be conducted in a manner which will assure maximum protection of the resource values to the extent consistent with the requirements of the Act. Maximum protection of designated special areas does not imply a prohibition of exploration or other activities. In scheduling activities in these or other special areas, steps to minimize adverse impacts on existing resource values will be required and implemented.

In determining what significant subsistence, recreational, fish and wildlife, or historical or scenic values are contained in each of the three special areas designated herein, current available literature and information from Federal and State agencies and individuals were utilized. The same source of material and data was used in establishing the location of the boundaries of each special area.

The Utukok River Uplands special area contains critical habitat for caribou. The critical decline in the population level of the western Arctic caribou herd (from 70,000 in 1975 to 35,000 in 1976) necessitates maximum protection of this area, which is ordinarily the calving territory for this herd. BLM will restrict low-level air access through the area, along with other protective measures, during the May 15 through July 15 calving season. The integrity of this area will be protected during the entire year. The caribou herds segregate by sexes on the close of the calving season, and most of the cows and calves tend to move to the east and south of this area. Once the calving concentrations have dispersed, caribou are widely dispersed throughout this area and often over the entire reserve. Because of the nomadic nature of the caribou, a large area encompassing approximately 4,032,000 acres is included within this area.

The Teshekpuk Lake and its watershed are an important nesting, staging, and molting habitat for a large number

of ducks, geese, and swans. Because of its importance to these migratory birds and numerous other waterbirds, a total of approximately 1,734,000 acres is identified as the Teshekpuk Lake special area. Maximum protective measures will be implemented for this area with special emphasis placed during the period from May 20 through August 25.

The central Colville River and some of its tributaries provide critical nesting habitat for the Arctic peregrine falcon, an endangered species. The bluffs and cliffs along the Colville River provide nesting sites with the adjacent areas being utilized as food hunting areas. The area is currently being considered for nomination as Critical Habitat pursuant to section 7 of the Endangered Species Act of 1973. A total area of approximately 2,300,000 acres within the reserve is identified for inclusion in the Colville River special area. Special restrictions will be placed on low-level aircraft flights during the period from April 1 through August 15. These and other restrictions will be similar to those used by BLM to protect peregrine falcon nesting sites within the pipeline corridor at Sagwon Bluffs. Other maximum protective measures will be imposed upon proposed activities to protect the special resource values located in the area. Although the special area designation for the Colville River involves only Federal lands within the reserve, strong efforts will be made to cooperate with State and Native landowners of peregrine falon habitat adjacent to the reserve.

In addition to the maximum protective measures to be imposed upon activities within these designated special areas, every precaution will be taken to avoid unnecessary surface damage and to minimize ecological disturbances throughout the reserve.

The legal descriptions of the Utukok River Uplands, Teshekpuk Lake, and Colville River Special Areas are listed below. A map showing the boundaries of these three special areas is also available for public inspection in the Fairbanks District Office.

UMIAT MERIDIAN (Unsurveyed)

UTUKOK RIVER UPLANDS SPECIAL AREA

Tps. 2 and 3 S., Rs. 24 through 37 W.
T. 4 S., Rs. 25 through 37 W.
T. 1 S., Rs. 24 through 40 W.
T. 1 S., R. 41 W.
Secs. 1 through 5, 8 through 17, 20 through 29, 32 through 36.
T. 5 S., Rs. 20 through 38 W.
T. 6 S., Rs. 31 through 36 W.
T. 4 N., Rs. 24 through 37 W.
T. 3 N., Rs. 24 through 38 W.
T. 2 N., Rs. 24 through 39 W.
T. 1 N., Rs. 24 through 40 W.
Tps. 5 and 6 N., Rs. 25 through 35 W.
T. 7 N., Rs. 26 through 34 W.
T. 8 N., Rs. 26 through 33 W.

TESHEKPUK LAKE SPECIAL AREA

T. 8 N., R. 8 W., W½.
T. 8 N., R. 9 W.
T. 9 N., Rs. 8 and 9 W.
T. 9 N., R. 10 W., E½.
T. 10 N., Rs. 7 through 9 W.
T. 10 N., R. 10 W., E½.
T. 11 N., Rs. 5 through 12 W.

T. 12 N., R. 4 through 12 W.
T. 13 N., R. 2 E.
Secs. 6, 7, 8, 31 through 36 fractional.
T. 13 N., R. 1 E.
Sec. 1 fractional;
Secs. 12 through 16 fractional;
Secs. 17, 18, 19;
Secs. 20, 29 fractional.
Secs. 30, 31, 32;
Secs. 33 through 36 fractional.
T. 13 N., Rs. 1 through 11 W.
T. 14 N., R. 2 E.
Secs. 19, 20, 29, 30, 31 fractional.
T. 14 N., R. 1 E.
Secs. 7, 8, 9, 15 through 18 fractional;
Sec. 19;
Secs. 20, 29, 30 through 24 fractional;
Secs. 25 through 35;
Sec. 36 fractional.
T. 14 N., R. 1 W.
Secs. 1 and 2;
Secs. 3 and 4 fractional;
Sec. 5;
Sec. 6 fractional;
Secs. 7 through 11;
Secs. 12 through 22;
Secs. 13 through 36.
T. 14 N., R. 2 W.
Secs. 2 through 36;
T. 14 N., Rs. 3 through 11 W.
T. 15 N., R. 2 W.
Secs. 4, 5, 6, 7, fractional;
Secs. 8 and 7;
Secs. 8 and 17 fractional;
Secs. 18 and 19;
Secs. 20, 28, 29 fractional;
Secs. 30, 21, 32;
Secs. 33 through 36 fractional.
T. 15 N., Rs. 3 through 11 W.
T. 16 N., R. 2 W.
Sec. 2 fractional;
Secs. 3 through 10;
Secs. 11 and 16 fractional;
Secs. 16 through 21;
Secs. 22, 27, 29 fractional;
Secs. 29 through 31;
Secs. 32 and 33 fractional.
T. 16 N., Rs. 3 through 8 W.
T. 16 N., R. 9 W.
Sec. 1;
Secs. 2, 3, 4, fractional;
Secs. 5 through 36.
T. 16 N., Rs. 10 and 11 W.
T. 17 N., R. 1 W.
Secs. 7, 17, 18 fractional;
Sec. 19;
Secs. 20, 29, 30 fractional.
T. 17 N., R. 2 W.
Secs. 2, 3, 4, fractional;
Secs. 5 through 10;
Secs. 11 and 12 fractional;
Secs. 13 through 35;
Sec. 36 fractional.
T. 17 N., R. 3 W.
T. 17 N., R. 4 W.
Secs. 1, 2, 3 fractional;
Secs. 4 through 36.
T. 17 N., Rs. 5 through 7 W.
T. 17 N., R. 8 W.
Sec. 1 and 2;
Secs. 3, 9, 10 fractional;
Secs. 11 through 15;
Secs. 16, 20, 21 fractional;
Secs. 22 through 28;
Secs. 29, 30, 31 fractional;
Secs. 32 through 36.
T. 17 N., R. 9 W.
Secs. 17 and 18 fractional;
Sec. 19;
Secs. 20, 21, 22, 27 fractional;
Secs. 28 through 32;
Secs. 33 and 34 fractional.
T. 17 N., R. 10 W.
Secs. 7, 8, 13 through 18 fractional;
Secs. 19 through 36.
T. 18 N., R. W.
Secs. 31 through 33 fractional.

**Exhibit 1, page 4 of 4**

HeinOnline -- 42 Fed. Reg. 28723 (1977)