

U.S. Department of the Interior
Bureau of Land Management

in cooperation with the
U.S. Department of the Interior
Minerals Management Service

October 1998

# Northeast National Petroleum Reserve-Alaska

# Integrated Activity Plan/ Environmental Impact Statement



Record of Decision

# Northeast National Petroleum Reserve-Alaska

## Integrated Activity Plan/ Environmental Impact Statement

# Record of Decision

_signature_ 10/7/98

Bruce Babbitt  Date
Secretary of the Interior

## October 1998

Prepared by
U S Department of the Interior
Bureau of Land Management

In cooperation with
U.S. Department of the Interior
Minerals Management Service


It is the mission of the Bureau of Land Management to sustain the health, diversity and productivity of the public lands for the use and enjoyment of present and future generations

BLM/AK/PL-99/001+3130+930



Cover photos:
1. Anne Morkill, Bureau of Land Management
   *Photo of Dora Itta of Barrow*
2. © D Roby & K Brink / VIREO
   *Photo of Spectacled Eider*
3. © BP Exploration (Alaska) Inc
   *Photo of Exploratory Drill Rig*
4. U S Fish & Wildlife Service
   *Photo of Caribou*

# Contents

| | |
|---|---|
| Summary | v |
| Decision | 1 |
| Alternatives Considered | 9 |
| Management Considerations | 13 |
| ANILCA Section 810 Summary | 17 |
| Mitigation and Monitoring | 21 |
| Public Involvement | 23 |
| Appendices | |
| A--Modifications and Clarifications | 25 |
| B--Stipulations | 29 |

Exhibit 5, page 5 of 51

*Record of Decision*

# Summary

The Bureau of Land Management's (BLM) Northeast National Petroleum Reserve-Alaska (NPR-A) Integrated Activity Plan/Environmental Impact Statement (IAP/EIS) describes the future multiple-use management of 4 6 million acres of the NPR-A, consistent with existing statutory direction for its management  The plan emphasizes restrictions on surface activities, consultation with local residents, and coordinated scientific studies to protect wildlife habitat, subsistence use areas, and other resources  At the same time it makes approximately 87 percent of the planning area available for oil and gas leasing  In reaching the decisions embodied in this Record of Decision (ROD), BLM has received extensive assistance from other Federal agencies, the State of Alaska, the North Slope Borough, and thousands of individuals and institutions who have shared their knowledge and insights about the resources and values associated with the planning area

This plan fulfills Congress's mandate in the Naval Petroleum Reserves Production Act (NPRPA) to conduct "an expeditious program of competitive leasing of oil and gas" and at the same time to protect the significant subsistence, environmental, fish and wildlife, and historic or scenic values "consistent with the requirements of this Act for the exploration of the reserve " Under the plan, important oil and gas resources, including those which may lie near the Alpine field now under construction just east of the Reserve, will be made available for leasing. Stipulations protect surface resources and subsistence activities throughout the planning area  The plan also protects key surface resource and use areas identified through the planning process by strict restrictions on surface activities and, in 13 percent of the area, through a decision not to offer lands for oil and gas leasing  Included among the areas receiving special protections are important habitat for waterfowl and caribou in the vicinity of Teshekpuk Lake, wildlife habitat and recreation and scenic areas along the Colville River and some of its tributaries, and subsistence use lands critical to local residents near Teshekpuk Lake and several rivers and creeks

The IAP/EIS analyzed six alternative future management plans for public comment, including the Preferred Alternative. Alternative A was the environmentally preferred alternative  But because it offered no lands for oil and gas leasing, the BLM determined that it would not be appropriate for adoption because it fails to fulfill legislative mandates to provide opportunities for oil and gas development of the Reserve.

The IAP/EIS also determined that while the Preferred Alternative independent of associated cumulative effects did not reach the "may significantly restrict" threshold for impacts on subsistence applicable to section 810 of the Alaska National Interest Lands Conservation Act (ANILCA), assessed with past, present, and anticipated cumulative effects, the Preferred

v

*Northeast NPR-A Integrated Activity Plan/Environmental Impact Statement*

Alternative did cross that threshold. The plan, however, meets the legal requirements for Federal actions which may result in a significant restriction on subsistence uses; i.e. the restriction is necessary, consistent with sound management principles for utilization of the public lands; the plan involves the minimal amount of public lands necessary to accomplish the purposes of such utilization; and reasonable steps will be taken to minimize adverse impacts on subsistence uses and resources resulting from the plan.

*Record of Decision*

# Decision

The plan described below is hereby adopted for future management in the northeast planning area of National Petroleum Reserve-Alaska. The plan adopted here is the Preferred Alternative presented in the *Northeast National Petroleum Reserve-Alaska Final Integrated Activity Plan/Environmental Impact Statement* with minor clarifications and changes noted, explained, and evaluated in Appendix A. Comments offered by the public and other government agencies have resulted in these clarifications and minor modifications of the Preferred Alternative. We thank those who have helped us in this planning process through their comments.

The plan emphasizes restrictions on surface activities, consultation with local residents, and coordinated scientific studies to protect wildlife habitat, subsistence use areas, and other resources. At the same time it makes approximately 87 percent of the planning area's 4.6 million acres available for oil and gas leasing.

This decision culminates the Integrated Activity Plan/Environmental Impact Statement (IAP/EIS) process. It fulfills the National Environmental Policy Act (NEPA) requirements associated with management planning on these public lands, including making decisions on what lands to make available for oil and gas leasing  It serves as the NEPA documentation for the first oil and gas lease sale  Subsequent lease sales are contemplated within the portion of the planning area made available for leasing  Prior to authorizing future site-specific activity on these lands or conducting any additional lease sales, the Bureau of Land Management (BLM) will conduct the appropriate additional NEPA analysis, tiering from the IAP/EIS, if appropriate.

The decision is described below and includes the stipulations in Appendix B

**Teshekpuk Lake Special Area**

> *Teshekpuk Lake Surface Protection Area:* This area is depicted in green (including the green hatched area) on Figure II.C 1 of the Final IAP/EIS reproduced here on page 3. It encompasses important goose molting areas, caribou calving and insect-relief habitat, and all of Teshekpuk Lake  It is of special importance to subsistence users because of the caribou and fish resources in the area and long-standing subsistence use of the area. Within this area
>
> - No permanent oil and gas surface occupancy will be allowed. (Note· Unless otherwise noted, reference to no permanent oil and gas occupancy would prohibit

1

*Northeast NPR-A Integrated Activity Plan/Environmental Impact Statement*

---

  pads, rigs, platforms, gravel roads, airstrips, gravel or other material extraction pits, and pipelines)
- No seasonal exploratory or delineation wells will be allowed.
- Ice roads, seismic activities, winter overland moves, and other nonpermanent activities other than exploratory or delineation well drilling may be authorized
- Oil and gas leasing will be allowed in the 5- to 6-mile band (hatched area on Fig II C 1) at the southern and western edge of this area. Rights to the subsurface resources under leases in this area will not include the uppermost 500 feet.
- Restrictions will be imposed on aircraft activity associated with permitted activities (See stipulations 52-55)

*Miguakiak River:*
- No permanent oil and gas surface facilities, except essential transportation crossings (roads and pipelines), will be allowed within ½ mile of the river
- An area within 3 miles of the river is of particular sensitivity for subsistence activities and will receive special consideration within the consultation framework described in stipulation 61.

**Colville River Special Area**

*Colville River:*
- The BLM will develop a Colville River Management Plan for the Special Area in cooperation with adjacent landowners and other affected parties to address subsistence, wildlife, recreation, paleontological, and other issues  Prior to launching such a plan, the agency will conduct a raptor workshop to review scientific literature on disturbance to raptors and identify potential additional mitigation measures. Creation of a Bird Conservation Area as described in Section II B.6 of the Final IAP/EIS will be explored with other landowners as part of the Colville River Management Plan.
- No permanent oil and gas surface facilities, except essential pipeline crossings, will generally be allowed within 1 mile of the west bluffs (or bank if there is no bluff) extending the length of the river in the Colville River Raptor, Passerine and Moose Land Use Emphasis Area (LUEA) (Maps depicting this and other LUEAs mentioned in this document can be found in the Final IAP/EIS, pp II-4 to II-17)
- An area within 2 miles of the west bluff (or bank if there is no bluff) extending the length of the river in the Colville River Raptor, Passerine and Moose LUEA is of particular sensitivity for subsistence activities and wildlife and will receive special consideration within the consultation frameworks described respectively in stipulations 61 and 62.

2



Figure II.C.1

**Exhibit 5, page 11 of 51**

- The Scenic Areas LUEA will be managed for Visual Resource Management (VRM) I upstream of Umiat and VRM II below Umiat, although exceptions to this management guidance will be allowed for subsistence structures and essential pipeline crossings.
- Even though the physical characteristics and associated resource values make the Colville River "eligible" for designation, the river has been determined not "suitable" for Wild & Scenic River (WSR) designation, because other landowners within the potential WSR corridor do not support this action and, without their cooperation, management as a WSR would be ineffective.

*Kikiakrorak and Kogosukruk Rivers:*
(Note: The following discussion refers only to portions of the Kikiakrorak River downstream from T. 2 N., R. 4 W., U.M. and the Kogosukruk River downstream from T. 2 N., R. 3 W., U.M.)
- No permanent oil and gas surface facilities, except essential transportation crossings, will be allowed within 1 mile of the bluff (or bank if there is no bluff) on either side of the rivers and several of the Kogosukruk tributaries.
- An area within 2 miles of the top of the bluff on either side of the rivers and several of the Kogosukruk's tributaries is of particular sensitivity for raptor nesting and will receive special consideration within the consultation framework described in stipulations 61 and 62.
- The BLM is being directed to prepare the necessary documents to add an area encompassing approximately 2 miles on either side of the rivers and the Kogosukruk's tributaries to the Colville River Special Area. The BLM will include management considerations for these areas in the Colville River Management Plan.

*Umiat Recreation Site LUEA:*
- Incorporate plans for future management of this area in the Colville River Management Plan. Emphasis is to be on supporting public health and safety.

**Other Specific Areas in the Planning Area**

*Fish Creek:*
- No permanent oil and gas surface facilities, except essential transportation crossings, will be allowed within 3 miles of the creek downstream from the eastern edge of Sec. 31, T. 11 N., R. 1 E., U.M. or within ½ mile of the creek farther upstream.
- An area within 2 miles of the creek in and above Sec. 31, T. 11 N., R. 1 E., U.M. is of particular sensitivity for subsistence activities and will receive special consideration within the consultation framework described in stipulation 61.

5

*Northeast NPR-A Integrated Activity Plan/Environmental Impact Statement*

---

*Judy Creek and Ikpikpuk River (in the planning area):*
- No permanent oil and gas surface facilities, except essential transportation crossings, will be allowed within ½ mile of these waterbodies.
- An area within 2 miles of these waterbodies is of particular sensitivity for subsistence activities and will receive special consideration within the consultation framework described in stipulation 61.

*Pik Dunes LUEA:*
- No surface structures, except essential transportation crossings, will be allowed.
- The BLM is being directed to prepare the necessary documents to add the LUEA to the Teshekpuk Lake Special Area.

*Deep-Water Lakes:*
- No permanent oil and gas surface facilities will be allowed in the lake bed of fish-bearing lakes in this portion of the Fish Habitat LUEA. Nor will such occupancy be allowed within ¼ mile of these fish-bearing lakes.

*Kuukpik Corporation Entitlement:*
- The BLM has asked Kuukpik to identify twice its underselection acreage. In its first oil and gas lease sale, BLM will defer from leasing those lands Kuukpik identifies.

The plan also includes decisions which apply to the entire planning area. These are incorporated in the stipulations for the plan which are listed in Appendix B. They address such topics as waste prevention, handling, and disposal; preventive measures and preparation and response to spills; ice roads and water use; overland moves and seismic work (which are allowed throughout the planning area subject to stipulations); oil and gas exploratory drilling; facility design and construction; ground transportation; air traffic; oil field abandonment; and subsistence.

The plan establishes procedures and advisory bodies to address subsistence and research (inventory and monitoring) concerns. Stipulation 61 describes a conflict avoidance procedure to address subsistence concerns with oil and gas exploration and development activities. Through it, lessees will consult with the North Slope Borough (NSB), affected communities, and the Subsistence Advisory Panel, a special body created to represent subsistence issues (See Sec. II.F.6 of the Final IAP/EIS). Under the plan, representatives from Federal, State, and NSB agencies, the oil industry, environmental groups, academia, and other interested parties will be invited to participate on a Research and Monitoring Team. This team will coordinate research and monitoring projects related to the effectiveness of stipulations and surface resource impacts. It also will seek advice from the Subsistence Advisory Panel (See

Sec. II.F.7 of the Final IAP/EIS). The team will be chartered in accordance with the Federal Advisory Committee Act.

Many of the geographically-specific restrictions listed above are also included in the stipulations. Nearly all stipulations are subject to an exception clause. Exceptions to a stipulation may be granted under strict conditions. In the event that an exception to a lease or permit stipulation is requested and before an exception may be granted, the AO shall find that implementation of the stipulation is:

1. a) technically not feasible or
   b) economically prohibitive or
   c) an environmentally preferable alternative is available, and
2. the alternative means proposed by the lessee fully satisfies the objective(s) of the stipulation.

In addition, prior to the consideration or granting of an exception to a lease or permit, all conditions and/or consultation requirements specific to a stipulation must be met. The Authorized Officer (AO) shall consult with appropriate Federal, State, and NSB regulatory and resource agencies before an exception may be granted, except in the case of an emergency. The AO's power to grant stipulation exceptions is limited to those subjects, uses, and permits over which the BLM has authority. Exceptions also may be granted in emergencies involving human health and safety.

Some decisions listed above and in the stipulations are not subject to the exception clause. These include:
1. decisions on the areas to be available or unavailable for oil and gas leasing,
2. prohibition of permanent roads connecting to a road system outside the planning area,
3. prohibitions on pipeline and road crossings in the setback area around Teshekpuk Lake and road crossings in the setback area adjacent to the Colville River, and
4. prohibitions on permanent oil and gas surface occupancy in the Teshekpuk Lake Surface Protection Area

The plan will not affect other non-discretionary BLM responsibilities mandated by Congress. Chief among these is conveyance of land to individual Alaskan Natives and to Native corporations under the Native Allotment Act and the Alaska Native Claims Settlement Act (ANCSA), respectively.

# Alternatives Considered

The *Northeast National Petroleum Reserve-Alaska Final Integrated Activity Plan/Environmental Impact Statement* presented the Preferred Alternative and 5 other alternatives.

**Preferred Alternative:** The Preferred Alternative is nearly identical to the plan described in this Record of Decision. (See Appendix A for explanations of minor clarifications and changes.) It would maximize protection for molting geese by making virtually all of the Goose Molting Habitat LUEA unavailable for leasing. The Preferred Alternative would protect caribou calving areas in the Teshekpuk Lake Caribou LUEA by not making 48 percent of the LUEA available for oil and gas leasing (including the key caribou movement corridors), buffered by an area (30% of the LUEA) available for leasing but with no surface oil and gas activities allowed (including no exploratory drilling), and a small portion (22%) available, subject to stipulations specifically designed to limit impacts. The Preferred Alternative would make 87 percent of the planning area (4,007,000 acres and 67% of the area of high oil and gas potential) available for oil and gas leasing and allows seismic operations throughout the area subject to stipulations. The Preferred Alternative also establishes procedures and advisory bodies to address subsistence and research (inventory and monitoring) concerns.

**Alternative A:** This alternative is the No Action alternative. It reflects current BLM management of the planning area and a decision BLM has made that the 1983 EIS for leasing in the 1980s is inadequate for renewed leasing. No new oil and gas leasing would occur, no new designations such as Special Areas or Wild and Scenic Rivers would be proposed, and protection of surface resources from other activities would be provided by existing Special Area designations, Special Management Zones, and existing stipulations. Under this alternative two options exist with regard to seismic activity. Winter seismic activity could occur throughout the planning area (the existing management situation), or seismic activity could be prohibited. Alternative A is the **environmentally preferable alternative**, because it would forbid oil and gas leasing, the most likely activity to create environmental impacts. This alternative, however, was not chosen because it would not fulfill the legislative direction to make lands in the Reserve available for oil and gas development.

**Alternative B:** Alternative B would make 53 percent of the planning area available for oil and gas leasing while emphasizing protection of specific surface resources. With the exception of the Kuukpik Corporation Entitlement LUEA, none of the LUEAs would be made available for oil and gas leasing. Leasing in the Kuukpik Corporation Entitlement LUEA would be postponed until the corporation's entitlement has been satisfied. Aboveground

*Northeast NPR-A Integrated Activity Plan/Environmental Impact Statement*

---

pipelines could cross all lands except the Potential Colville Wild and Scenic River LUEA, and all lands would be available for seismic studies. Protective measures include applying the stipulations described in the Draft and Final IAP/EISs, recommending a portion of the Colville be included as a wild river in the WSR System, proposing a Bird Conservation Area along the Colville River, designating the Ikpikpuk Paleontological Sites LUEA as a new Special Area to protect paleontological resources, and adding the Pik Dunes LUEA to the Teshekpuk Lake Special Area. BLM would undertake plans for areas receiving new designations.

**Alternative C:** Alternative C would make 72 percent of the planning area available for oil and gas leasing. The Teshekpuk Lake Caribou Habitat LUEA and the Goose Molting Habitat LUEA, which contain important caribou and waterfowl habitat, would not be made available. The Kuukpik Corporation Entitlement LUEA would be available for oil and gas leasing, and all appropriate sale and leasing revenues due Arctic Slope Regional Corporation (ASRC) would be put in escrow. Aboveground pipelines could cross all lands, and all lands would be available for seismic studies. Protective measures would include applying stipulations described in the Draft and Final IAP/EISs, recommending a portion of the Colville be included as a scenic river in the WSR System, and proposing the same management designations for a Bird Conservation Area (BCA) and the Ikpikpuk Paleontological Sites and Pik Dunes LUEAs as noted for Alternative B. BLM would undertake plans for areas receiving new designations.

**Alternative D:** Alternative D would make 90 percent of the planning area available for oil and gas leasing. The Goose Molting Habitat LUEA would not be made available. The Kuukpik Corporation Entitlement LUEA would be available for oil and gas leasing, and all appropriate sale and leasing revenues due ASRC would be put in escrow. Aboveground pipelines could cross all lands within the planning area, and all lands would be available for seismic studies. Stipulations would protect caribou in the part of the Teshekpuk Lake Caribou Habitat LUEA available for oil and gas leasing. Other protective measures include applying other relevant stipulations described in the Draft and Final IAP/EISs, recommending a portion of the Colville be included as a recreational river in the WSR System, and proposing the same management designations for a BCA and the Ikpikpuk Paleontological Sites and Pik Dunes LUEAs as noted for Alternative B. BLM would undertake plans for areas receiving new designations. In addition, the agency would conduct an interagency wildlife management plan focusing on caribou and waterbird populations within the Teshekpuk Lake Caribou Habitat and the Goose Molting LUEAs.

**Alternative E:** Alternative E makes all BLM-administered lands in the planning area available to oil and gas leasing. The Kuukpik Corporation Entitlement LUEA would be available for oil and gas leasing, and all appropriate sale and leasing revenues due ASRC

10

would be put in escrow. Aboveground pipelines could cross all lands within the planning area, and all lands would be available for seismic studies. Stipulations would protect caribou in the Teshekpuk Lake Caribou Habitat LUEA and others would protect waterfowl in the Goose Molting Habitat LUEA. Other protective measures would include applying other relevant stipulations described in the Draft and Final IAP/EISs and proposing the same management designations for a BCA and the Ikpikpuk Paleontological Sites and Pik Dunes LUEAs as noted for Alternative B. BLM would undertake plans and studies similar to those anticipated for Alternative D.

*Record of Decision*

# Management Considerations

This plan fulfills Congress's mandate in the Naval Petroleum Reserves Production Act (NPRPA) to conduct "an expeditious program of competitive leasing of oil and gas" and at the same time to protect the significant subsistence, environmental, fish and wildlife, and historic or scenic values "consistent with the requirements of this Act for the exploration of the reserve." This plan meets the total energy needs of the nation by making 87 percent of the planning area available for leasing, including lands nearest current oil development immediately to the east of the Reserve. Maximum protection of important surface resources is provided in Special Areas designated by the Secretary through a combination of prohibitions, restrictions, and stipulations restricting oil and gas facilities and other activities which might adversely impact wildlife habitat and subsistence use areas, as well as by positive management approaches.

Because of the years required to find, delineate, and develop a producing oil field in the remote arctic environment, oil leasing is not conducted to meet today's need but future projected needs. The U.S. currently imports about half its oil supply, and the Federal government projects that the proportion of the Nation's oil coming from overseas will continue to climb, approaching two-thirds by 2020. The Department of Energy also reports that domestic oil and gas production in the U.S. overall is declining, as it is on the North Slope of Alaska. Oil produced from the NPR-A would be transported using excess capacity of the existing Trans-Alaska Pipeline System, which would be available in the timeframe projected for development of new NPR-A fields. The Department of Energy also reports that importation of foreign oil significantly exacerbates this country's trade deficit. Domestic oil production, especially on Federal lands, contributes directly to the health of the Nation's economy and to Federal revenues. Most NPR-A oil is expected to be processed and consumed domestically. Even if a small portion of NPR-A oil may be exported, it can still help in the nation's trade imbalance and thereby indirectly help meet the nation's energy needs. Demand for petroleum is typically proportionately greater in relation to supply on the East Coast than on the West Coast. Because of transportation costs, the nation can obtain more oil with a given amount of money by purchasing foreign oil for the East Coast than shipping Alaskan oil there. Viewed in terms of a balance of trade, exporting an amount of Alaskan oil can produce export revenues which can be applied to purchase a greater amount of imported oil. In addition, the oil industry provides jobs, many of them high-skill and high-paying. Finally, lease sales, rentals, bonuses, and royalties from Federal oil and gas leases contribute to the Federal treasury, as do taxes paid by oil companies and their workers.

Federal law, including the NPRPA, the Federal Land Policy and Management Act (FLPMA), ANILCA, NEPA, and the Wild and Scenic Rivers Act, requires BLM to protect soil, water,

13