## DEPARTMENT OF THE INTERIOR

### Bureau of Land Management

[WO–350–1430–EU–24 1A]

### Extension of Approved Information Collection, OMB Approval Number 1004–0153

**AGENCY:** Bureau of Land Management, Interior.

**ACTION:** Notice and request for comments.

**SUMMARY:** In accordance with the Paperwork Reduction Act of 1995, the Bureau of Land Management (BLM) is requesting the Office of Management and Budget (OMB) to extend an existing approval to collect information from persons who seek to acquire the Federally-owned (reserved) mineral interests underlying their surface estate. BLM collects this information to verify that the applicant is the surface owner that overlies the Federally-owned minerals and that statutory requirements for their conveyance are met. The regulations under 43 CFR Part 2720 authorize BLM to collect information (no specific form is required) to convey Federally-owned mineral interests to surface owners if certain conditions are met.

**DATES:** You must submit your comments to BLM at the address below on or before August 9, 2004. BLM will not necessarily consider any comments received after the above date.

**ADDRESSES:** You may mail comments to: Bureau of Land Management, (WO–630), Eastern States Office, 7450 Boston Blvd., Springfield, Virginia 22153.

You may send comments via Internet to: *WOComment@blm.gov.* Please include ''ATTN: 1004–0153'' and your name and return address in your Internet message.

You may deliver comments to the Bureau of Land Management, Administrative Record, Room 401, 1620 L Street, NW., Washington, DC.

Comments will be available for public review at the L Street address during regular business hours (7:45 a.m. to 4:15 p.m.) Monday through Friday.

**FOR FURTHER INFORMATION CONTACT:** You may contact Alzata L. Ransom, Realty Use Group, on (202) 452–7772 (Commercial or FTS). Persons who use a telecommunication device for the deaf (TDD) may call the Federal Information Relay Service (FIRS) on 1–800–877–8330, 24 hours a day, seven days a week, to contact Ms. Ransom.

**SUPPLEMENTARY INFORMATION:** 5 CFR 1320.12(a) requires that we provide a 60-day notice in the **Federal Register** concerning a collection of information to solicit comments on:

(a) Whether the collection of information is necessary for the proper functioning of the agency, including whether the information will have practical utility;

(b) The accuracy of our estimates of the information collection burden, including the validity of the methodology and assumptions we use;

(c) Ways to enhance the quality, utility, and clarity of the information collected; and

(d) Ways to minimize the information collection burden on those who are to respond, including the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology.

Section 209 of the Federal Land Policy and Management Act of 1976 and implementing regulations at 43 CFR 2720 establish procedures for BLM to convey Federally-owned (reserved) mineral interests to non-Federal surface ownership. The regulations authorize BLM to collect this information (no specific form is required) to determine if BLM may convey the Federally-owned mineral interests to surface owners who apply and meet the statutory requirements. We list in 43 CFR 2720.1–2 the specific information requirements you must submit when applying for a conveyance of Federally-owned mineral interests. Without this information, BLM would not be able to analyze and approve applications to convey Federally-owned mineral interests.

Based upon BLM experience administering the regulations, we estimate the public reporting information collection burden to be 10 hours per application. The respondents are surface owners in which the mineral interests are reserved or owned by the United States. The estimated number of responses per year is 30 and the total annual burden is 300 hours.

BLM will summarize all responses to this notice and include them in the request for OMB approval. All comments will become a matter of public record.

Dated: June 4, 2004.

**Michael H. Schwartz,**
*Bureau of Land Management, Information Collection Clearance Officer.*

[FR Doc. 04–13019 Filed 6–8–04; 8:45 am]

**BILLING CODE 4310–84–M**

## DEPARTMENT OF THE INTERIOR

### Bureau of Land Management

[AK–930–1310–DP–NEAM]

### Proposed Amendment to the Integrated Activity Plan for the Northeast National Petroleum Reserve—Alaska

**AGENCY:** Bureau of Land Management, Interior.

**ACTION:** Notice of availability and announcement of public subsistence-related hearing schedule.

**SUMMARY:** The Bureau of Land Management announces the availability of the Draft Amendment to the Northeast National Petroleum Reserve—Alaska (NPR–A) Integrated Activity Plan/Environmental Impact Statement (IAP/EIS). The planning area is roughly bounded by the Beaufort Sea to the North, the Ikpikpuk River to the west and the Colville River to the east and south of the planning area (Map 1–3). In November 2000, Congress passed and the President signed the Energy Policy and Conservation Act Amendments of 2000 (EPCA), which directed the Secretary of the Interior, in consultation with the Secretaries of Energy and Agriculture, to conduct an inventory of oil and natural gas resources beneath federal lands and to identify the extent and nature of any restrictions or impediments to the development of these resources. In 2002, the President's National Energy Policy Development Group recommended that the President direct the Secretary of the Interior to consider additional environmentally responsible oil and gas development, based on sound science and the best available technology, through further lease sales in the National Petroleum Reserve—Alaska and that such consideration should include areas not currently leased within the northeast corner of the National Petroleum Reserve—Alaska.

**ADDRESSES:** Written comments should be sent to: NPR–A Planning Team, Bureau of Land Management, Alaska State Office (931), 222 West 7th Avenue, Anchorage, Alaska 99513–7599. Comments can also be submitted at the project Web site *http://nenpra.ensr.com.* Individual respondents may request confidentiality. If you wish to withhold your name or street address from public review or from disclosure under the Freedom of Information Act, you must state this prominently at the beginning of your written comment. Such requests will be honored to the extent allowed by law. BLM will not consider anonymous comments. All submissions from

organizations and businesses, and from individuals identifying themselves as representatives or officials of organizations or businesses, will be available for public inspection in their entirety. The amended DIAP/DEIS will be available in either hard copy or on compact disks at the Alaska State Office Public Room at 222 West 7th Avenue, Anchorage, Alaska 99513–7599 at the above address. The entire document can also be reviewed at the project Web site *http://www.ak.blm.gov/nwnpra.*

**FOR FURTHER INFORMATION CONTACT:** Susan Childs (907) 271–1945; *7susan_childs@ak.blm.gov*) or Mike Kleven (907) 474–2317, *Mike_Kleven@ak.blm.gov.*

**SUPPLEMENTARY INFORMATION:** This IAP/EIS amendment contains three alternatives for a land management plan for the 4.6 million-acre planning area and assessments of each plan's impacts on the surface resources present there. These alternatives provide varying answers to two primary questions that are consistent with EPCA and the President's Energy Policy. First, will BLM conduct oil and gas lease sales in the planning area on lands currently unavailable or surface-restricted, and, if so, which of those lands will be made available for leasing? Second, what measures should BLM develop to protect important surface resources during oil and gas activities?

Alternative A, the No Action Alternative, makes approximately 87 percent of 4.6 million acres available for oil and gas leasing and calls for no change from the status quo rendered under the 1998 Record of Decision (ROD) for the Northeast National Petroleum Reserve—Alaska. Under Alternative A, no leasing would occur on lands currently unavailable, and the existing No Surface Restrictions would be maintained. Alternatives B, the Preferred Alternative, and C make progressively more land available to leasing. Alternative B makes approximately 96% percent of 4.6 million acres in the planning area available for oil and gas leasing, and Alternative C makes 100 percent of 4.6 million acres in the planning area available for oil and gas leasing. Mitigating measures would provide protections for natural and cultural resources under all alternatives, but their nature, number and scope would vary among alternatives.

Alternative A would maintain the current land allocation that makes approximately 840,000 acres either unavailable (600,000 ac) or surface restricted (240,000) to leasing. It maintains the 79 prescriptive stipulations set forth in the 1998 ROD. The Preferred Alternative, Alternative B, makes approximately 213,000 acres of sensitive bird habitat north of Teshekpuk Lake unavailable to leasing. This alternative also contains a mitigation package that is comprised of a combination of prescriptive and performance-based mitigations very similar to those developed for the 2004 Northwest National Petroleum Reserve—Alaska ROD. Performance-based mitigations provide the BLM and other land users, including industry, greater flexibility by emphasizing the intent or objective of the mitigation to protect the environment. In addition, there are site-specific mitigations protecting key biological resources throughout the planning area. Alternative C contains no land allocation prohibiting leasing, and includes performance-based mitigations similar to those in Alternative B and site-specific mitigations protecting identified key biological resources throughout the planning area.

The Secretary of the Interior is authorized to identify specific lands in the NPR–A as ''Special Areas'', and there are two previously designated Special Areas within the planning area—The Colville River Special Area and the Teshekpuk Lake Special Area. As required by 43 CFR 2361.1, all three alternatives proposed through this amendment process, using stipulations, Required Operating Procedures (ROPs), and allocation decisions, mitigate or avoid unnecessary surface damage and miminize ecological disturbance throughout the reserve to the extent consistent with the requirement of the National Petroleum Reserve Protection Act (NPRPA) for the exploration of the reserve. Also, each alternative presents for public comment a different approach to providing maximum protection to surface resources within designated Special Areas.

Public participation has occurred throughout the period since the Notice of Intent to Prepare the Amendment and Environmental Impact Statement was published on June 23, 2003. In addition to holding scoping meetings in Anaktuvuk Pass, Nuiqsut, Atqasuk, Barrow, Fairbanks and Anchorage, several public meetings have addressed important issues within the planning area. The planning area provides particularly important habitat for caribou, waterfowl and other species and many of the local residents of the area rely on harvesting these resources for subsistence purposes. Ensuring adequate protection of these resources has been one of the driving forces behind the meetings to seek input from a variety of public sources with information in related fields. Information from these meetings has also been helpful in developing this draft document.

The BLM has worked closely with native communities within or adjacent to the planning area in developing this draft IAP/EIS. In addition to native representatives, the State of Alaska, the North Slope Borough, and other Federal agencies have participated in meetings that identified areas of concern to be addressed during the development of the alternatives presented here. BLM is solely responsible for the form of alternatives evaluated.

Section 810 of the Alaska National Lands Conservation Act requires the BLM to evaluate the effects of the alternatives presented in this DEIS on subsistence activities in the area of the proposed action and alternatives, and to hold public hearings if it finds that any alternative may significantly restrict subsistence activities. The analysis of environmental consequences indicates that Alternative C and the cumulative case for all alternatives may significantly restrict subsistence activities. Therefore, the BLM will hold public hearings on subsistence in conjunction with the public meetings in the potentially affected communities.

**DATES:** Written comments on the Amended DIAP/DEIS will be accepted for 45 days following the date the Environmental Protection Agency publishes the Notice of Availability in the **Federal Register**. Future meetings or hearings and any other public-involvement activities will be announced at least 15 days in advance through public notices, media news releases, and/or mailings. Authority for developing this document is derived from the Federal Land Policy and Management Act, the Naval Petroleum Reserves Production Act of 1976 and the National Environmental Policy Act (NEPA).

Copies of the draft IAP/EIS amendment will be available for public review at the following locations: Tuzzy Public Library, Barrow, AK; City of Nuiqsut, Nuiqsut, AK; City of Atqasuk, Atqasuk, AK; City of Anaktuvuk Pass, Anaktuvuk Pass, AK; Z.J. Loussac Public Library, Anchorage, AK; Noel Wien Public Library, Fairbanks, AK.

Dated: March 31, 2004.

**Curtis J. Wilson,**
*Acting Chief, Planning and Resources, Alaska State Office.*
[FR Doc. 04–13016 Filed 6–8–04; 8:45 am]
**BILLING CODE 4310–JA–P**