

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
REGION 10
1200 Sixth Avenue
Seattle, WA 98101

September 9, 2004

Reply To
Attn Of:   ETPA-088                                          Ref: 97-013-BLM

Henri Bisson, State Director
U.S. Department of the Interior
Bureau of Land Management
Alaska State Office
222 W. 7th Avenue, #13
Anchorage, AK  99513-7599

Dear Mr. Bisson:

     The U.S. Environmental Protection Agency (EPA) has completed review of the Draft Amended Integrated Activity Plan/Environmental Impact Statement (IAP/EIS) for the **Northeast National Petroleum Reserve-Alaska (NPR-A)** (CEQ No. 040275) in accordance with our responsibilities under the National Environmental Policy Act (NEPA) and Section 309 of the Clean Air Act. Under our 309 authority, our review of the Draft EIS considered not only the expected environmental impacts of the project, but also the adequacy of the EIS in meeting the procedural and public disclosure requirements of NEPA.

     The Draft EIS amends a 1998 Final IAP/EIS and Record of Decision (ROD) and evaluates three alternatives, including a No Action Alternative (Alternative A) and two action alternatives, for the management of approximately 4.6 million acres of public lands in the Northeast Planning Area. The Draft EIS identifies a Preferred Alternative (Alternative B), which would allow oil and gas leasing on portions of lands currently closed to leasing or under No Surface Activity restrictions and adopt a set of performance-based stipulations and Required Operating Procedures (ROPs) patterned after those developed for the Northwest NPR-A Planning Area.

     EPA's review of the Draft EIS has concluded that the Preferred Alternative (Alternative B) is likely to cause significant adverse impacts to fish and wildlife resources and habitat areas (including wetlands and aquatic habitat), and in particular to critical waterfowl habitat and caribou calving and insect-relief areas and migration corridors in the Teshekpuk Lake Special Area. On the basis of information presented in the Draft EIS, we have determined that the biological, cultural and subsistence resources (surface resources) continue to merit the protections assured by the leasing plan in the 1998 ROD. The 1998 IAP/EIS and ROD were the results of a substantial and collaborative effort by the BLM; federal, state, and local resource and regulatory agencies; federally recognized Tribes; and residents in local affected communities. The BLM determined at that time that the surface resources in the Teshekpuk Lake Special Area and the Colville River Special Area deserved special protections.

The Draft EIS lacks new or updated biological, subsistence or technological information to support any decrease in protections for those areas. The Preferred Alternative's proposal to open additional lands for leasing within the Northeast Planning Area, remove current No Surface Activity restrictions and adopt new performance-based mitigation measures presents a high risk to the important surface resources and to subsistence users in North Slope communities. We believe that the BLM can meet the stated Purpose and Need by offering lands that are already available for leasing within the Northeast and Northwest planning areas and optimizing oil and gas exploration, development and production through the judicious use of revised performance-based stipulations and ROPs.

Consequently, EPA recommends that the BLM develop and analyze a modified Preferred Alternative in the Final IAP/EIS (Final EIS) that retains the current leasing acreage and surface activity restrictions described in the No Action Alternative (Alternative A) and includes revised stipulations and ROPs that are patterned after the performance-based mitigation measures included in Alternative B. This modified Alternative would provide environmental protections for the Planning Area, including lands within the Teshekpuk Lake Special Area and the Colville River Special Area, and facilitate sustainable subsistence use of resources within the Planning Area.

EPA is concerned that the proposed Preferred Alternative could have disproportionate adverse environmental, social and health effects on minority populations in Alaska. We are also concerned that effective consultation and collaboration with Tribes and meaningful public involvement during development of the Draft EIS, especially within local affected communities, have not yet been completed, as required by NEPA, Executive Order 12898 (Federal Actions to Address Environmental Justice in Minority and Low-Income Populations) and Executive Order 13175 (Consultation and Coordination with Indian Tribal Governments). EPA recommends that the BLM take the time while developing the Final EIS and ROD to further engage Tribes and residents in affected communities; discuss their comments, issues and concerns; collaborate; and seek consensus for a revised plan that balances oil exploration and development with fish and wildlife, cultural and subsistence needs.

In summary, EPA recommends that the BLM develop and evaluate a modified Preferred Alternative that keeps lands closed or under No Surface Activity restrictions as specified in Alternative A and adopts a revised set of performance-based stipulations and ROPs. The effective use of lease stipulations and ROPs that provide flexibility along with adequate environmental protections and mitigation would optimize the development of oil and gas resources on lands presently open for development, provide for enhanced energy security and protect the valuable surface resources in the entire Planning Area. We believe this alternative would meet the Purpose and Need presented in the Draft EIS and achieve a balance between oil and gas exploration and development activities and the protection of valuable biological, cultural and subsistence resources, consistent with Presidential and Congressional directives and implementing regulations for NEPA.

Based on our review and evaluation of the Draft EIS, EPA has assigned a rating of EO-2 (Environmental Objections - Insufficient Information) to the Preferred Alternative (Alternative B). This rating was determined on the basis of the potential adverse environmental impacts associated

3

with the Preferred Alternative and the adequacy of mitigation measures. EPA has enclosed written comments that describe our substantive issues and concerns, which support our rating (Enclosure 1). A copy of the EPA rating system used in conducting our environmental review is attached (Enclosure 2).

EPA is committed to working with the BLM during the development of the Final EIS and ROD. We appreciate the opportunity to provide comments on the Draft EIS. Should you have any questions regarding our comments, please contact me at (206) 553-1272. Please also feel free to contact Colleen Burgh in our Alaska Operations Office at (907) 271-1481.

Sincerely,

Michelle Pirzadeh, Director
Office of Ecosystems and Communities

Enclosures

cc: Susan Childs, BLM Project Manager

September 9, 2004

# U.S. Environmental Protection Agency
# Detailed Comments on the
# Northeast National Petroleum Reserve-Alaska
# Draft Amended IAP/EIS

## Selection of a Preferred Alternative for Final EIS

The U.S. Environmental Protection Agency (EPA) has concluded that the Preferred Alternative would likely result in significant adverse environmental impacts to important fish and wildlife resources and in particular to critical waterfowl habitat, caribou calving and insect-relief areas, and caribou migration corridors in the Teshekpuk Lake Special Area. On the basis of information presented in the Draft Amended Integrated Activity Plan/Environmental Impact Statement (IAP/EIS) (Draft EIS), we have determined that the valuable biological, cultural and subsistence resources (surface resources) in the Teshekpuk Lake Special Area, the Colville River Special Area, and the other specific areas listed in the 1998 Record of Decision (ROD) continue to merit the protections assured in that decision. The 1998 IAP/EIS and ROD were the results of a substantial and collaborative effort by the BLM; federal, state, and local resource and regulatory agencies; federally recognized Tribes; and residents of affected Environmental Justice communities. The Bureau of Land Management (BLM) determined at that time that significant surface resources in the Planning Area, located primarily in the Teshekpuk Lake Special Area and the Colville River Special Area, deserved special protections.

Teshekpuk Lake, together with surrounding smaller lakes and adjacent coastal wetlands, is widely recognized as the most productive, diverse and sensitive wetlands ecosystem in the American arctic. Lakes throughout the Teshekpuk Lake Special Area support important waterfowl species during critical breeding and molting stages. Residents from seven North Slope villages hunt caribou from the Teshekpuk Lake Caribou Herd, making that herd the most important on the North Slope for subsistence purposes. The Colville River corridor supports the most diverse landbird community in the Alaskan arctic. The Colville River Special Area is one of the most significant regional habitats for raptors in North America. EPA believes that maximum protection for these lands is warranted.

The Draft EIS lacks new or updated biological, subsistence or technological information to support any decrease in protections for those areas. In addition, the Draft EIS does not contain information to support the urgency to open up additional lands within the Planning Area to oil and gas activities. We recommend that the BLM maintain the current level of leasing within the Northeast Planning Area, as described in Alternative A in the Draft EIS, and not open the lands currently closed or under No Surface Activity restrictions.

EPA supports the concept of performance-based mitigation measures that would provide environmental protections and give the BLM and other land users, including industry, greater flexibility. However, the stipulations and required operating procedures (ROPs) proposed for the Preferred Alternative do not adequately ensure protection of surface resources and subsistence use in the Planning Area. Furthermore, the proposed mitigation measures are patterned after those recently adopted in the Northwest NPR-A ROD, which have not yet stood the test of time. No track record has been established to verify and document the success of the performance-based mitigation

September 9, 2004

measures currently in place for the Northwest Planning Area; therefore, it is difficult to use them to adequately predict the effectiveness of the proposed mitigation measures in the Draft EIS.

EPA recommends that the BLM develop and analyze a modified Preferred Alternative that incorporates the leasing acreage and No Surface Activity restrictions in Alternative A with a set of revised and improved performance-based stipulations and ROPs. Attachment 2 includes EPA's specific comments and recommendations for improvements to the proposed stipulations and ROPs that are included in the Draft EIS Preferred Alternative. We recommend that the BLM wait to open additional ecologically sensitive lands to leasing within the Planning Area until after the new performance-based stipulations and ROPs have been used and their effectiveness has been tested and documented.

EPA acknowledges the Congressional and Presidential directives placed upon the BLM to advance the development of energy resources through further lease sales in the Northeast Planning Area. The 1998 ROD made approximately 4 million acres of land within the Northeast Planning Area available for oil and gas leasing. Approximately 1.3 million acres have been leased to date; therefore, additional lands are currently available for leasing within the Planning Area. In addition, BLM recently made over 8 million acres within the Northwest Planning Area of the NPR-A available for oil and gas leasing. The BLM is also planning for lands that will be available for oil and gas leasing within the Southern portion of the NPR-A. EPA believes that the BLM can use acreage that is currently available for oil and gas leasing within the entire NPR-A to demonstrate compliance with Presidential and Congressional directives and meet the Draft EIS Purpose and Need.

## Stipulations and Required Operating Procedures

### General Comments

EPA supports the use of performance-based stipulations and ROPs as mitigation measures, provided they are clearly defined, applied to measurable performance goals and objectives, and used in combination with an effective and consistent monitoring and enforcement program. While many of the stipulations and ROPs listed for the Preferred Alternative should provide adequate environmental protections, there are others which contain vague wording, insufficient or ill-defined decision criteria, and exception clauses that would reduce their predictability and effectiveness.

**Lease Stipulations vs. ROPs.** EPA believes many of the proposed mitigation measures would be more effective as lease stipulations rather than ROPs. Lease stipulations represent a level of regulatory certainty that is routinely requested by industry. By providing requirements upfront as lease conditions, surface land users, including industry, can efficiently plan and budget for future project design. Recommendations for changing specific ROPs to stipulations are included in the Specific Comments subsection below.

**Mechanisms for Compliance.** EPA recommends the Final EIS include additional detail for each ROP that explains the authorization(s), permit(s), or other action(s) to which it applies. It is important to describe the types of activities that would trigger each ROP, in order to determine when an ROP must be initiated and determine if the requirement would be more effective as a lease stipulation. The timing of requirements is important to understand in order for effective monitoring

September 9, 2004

and enforcement to occur. It would be helpful to provide a listing of the types of authorizations and permits that the BLM typically processes for activities within the NPR-A, in order to understand when specific ROP requirements would apply. This information could be presented in tabular format as an additional column in Table 2-2.

**Effectiveness of Stipulations and ROPs.** The performance-based stipulations and ROPs included in the Preferred Alternative are revisions to the 1998 Northeast NPR-A ROD stipulations and are patterned after stipulations and ROPs that were recently adopted in the Northwest NPR-A ROD. We recommend that the Final EIS report on the implementation and effectiveness of the stipulations that are in effect for the Northwest NPR-A ROD. The information would disclose to the public and decision maker the likely outcomes of the use similar mitigation measures in the Northeast Planning Area. We also recommend that the Final EIS discuss how specific stipulations in the 1998 ROD have not provided effective mitigation or have created an unnecessary restriction or impediment to surface activities, such as resource development, so the public and decision maker can understand the rationale behind the proposed revisions.

**Monitoring and Enforcement.** The success of mitigation measures is based on the monitoring and enforcement programs that accompany them. The Draft EIS lacks sufficient information to determine if effective monitoring or enforcement would occur. EPA recommends the Final EIS include additional details regarding the Research and Monitoring Team, including its membership, funding, scope of work, and reporting requirements. We also recommend that the commitment to a fully-funded and functioning monitoring and enforcement program be included in the ROD. EPA recommends that the Final EIS discuss in greater detail how monitoring for compliance with stipulations and ROPs would be conducted and the communication process that would ensure non-compliance is reported and corrected in a timely manner.

**Agency Consultation.** The Final EIS should describe how and when resource and regulatory agencies would be consulted in a timely manner as decisions are made during implementation of stipulations and ROPs. We recommend the Final EIS describe how a project proponent and the BLM would coordinate with other decision makers in a timely manner, including the minimum time period required for notifications and consultation. EPA also recommends the BLM carefully review all of the proposed mitigation measures and verify with the appropriate resource and regulatory agencies that the proper notifications are specified.

**Basis for Numerical Requirements.** The Final EIS should describe how specific numerical requirements such as set-back distances, buffer zone areas, dates, and aircraft altitudes were developed for stipulations and ROPs. EPA recommends that the descriptions include the appropriate references or other information sources that were used to determine each numerical requirement.

**Cabins and Camp Sites.** EPA is concerned that the stipulations and ROPs do not establish adequate protection for traditional use cabins and camp sites in the Planning Area. Many of these cabins and camp sites are used as safety shelters during subsistence hunting and long-distance overland travel throughout the year and are also recognized as important cultural sites. EPA recommends that the BLM consult with local residents and regulatory agencies with subsistence and cultural resource management responsibilities to ensure that the stipulations and ROPs provide

September 9, 2004

adequate spatial and temporal protections for these sites. The consultation efforts and outcomes should be documented in the Final EIS.

**Specific Comments**

The following list includes specific comments and recommendations for stipulations and ROPs presented for the Draft EIS Preferred Alternative:

**A. Waste Prevention, Handling, Disposal, Spills and Public Safety**

EPA recommends that the spill prevention, response and reporting requirements remain lease stipulations due to the heightened concern by residents in North Slope villages and the adverse impacts that result from spills. In addition, requirements that address public safety should be lease stipulations, to ensure lessees are notified of these requirements prior to planning any activities within the Planning Area.

ROP A-4:   EPA recommends that minimum set-back distances from water bodies be included for storage containers that contain fuels or other hazardous substances. Containers should also be marked with the operator's name, for identification.

ROP A-7a:  EPA recommends that consultation with ADEC and EPA be conducted prior to authorizing alternate disposal methods for produced fluids.

**B. Water Use for Permitted Activities**

ROP B-2:   EPA recommends that appropriate consultations with federal, state, and North Slope Borough regulatory and resource agencies be added to this ROP.

**C. Winter Overland Moves and Seismic Work**

EPA recommends that the BLM develop an ROP that addresses local residents' concerns regarding snow and ice ruts that are created during seismic operations. ROP C-2(d) appears to partly address the issue; however, it lacks definition of what "superseding environmental concern" means. Encountering ruts in snow and ice during overland travel is a serious safety issue for local residents that should be addressed in this ROP.

EPA recommends that results of the Alaska Department of Natural Resources tundra travel studies, which should be available in November 2004, be reviewed, evaluated, and incorporated into the ROPs, in order to provide updated information regarding environmental protections for overland travel in the sensitive tundra environment.

ROP C-2:   This ROP does not address potential impacts to riparian zones. EPA recommends clarifying the application of this ROP to work near water bodies and specifying a prohibition for altering banks of waterways (see 1998 ROD, Stipulation 22). We also recommend this ROP clarify how it compares to special protections needed in the Colville River Special Area.

September 9, 2004

### D. Oil and Gas Exploratory Drilling

| | |
|---|---|
| Lease stipulation D-1: | This stipulation is less protective than Stipulation 28 (1998 ROD), which prohibited exploratory drilling in rivers, streams and fish-bearing lakes, unless the activity was environmentally preferable. EPA recommends deleting the "no feasible or prudent alternative" exception clause unless clear and measurable criteria are presented. |
| Lease stipulation D-2: | This stipulation is less protective than Stipulation 27 (1998 ROD), which prohibited permanent or gravel facilities during exploration. EPA recommends this ROP prohibit permanent or gravel facilities during exploration. An exception clause that depends on project economics should not be included for this stipulation, or for other stipulations and ROPs, unless specific and measurable decision criteria are described and a demonstration that activities would not cause adverse environmental impacts is required. |

### E. Facility Design and Construction

This section addresses potential impacts to subsistence use areas, which would include traditional cabins and camp sites. EPA is concerned that specific set-backs that are currently required have been removed in the proposed stipulations and ROPs. Adequate protection for these sites is a serious concern to local residents. EPA recommends that measurable criteria for protection of these areas, developed in consultation with local residents and Tribal representatives, be added to stipulations and ROPs.

| | |
|---|---|
| Lease stipulation E-2: | This stipulation should describe how a lessee would demonstrate "minimal impacts" to water bodies, water quality and aquatic and riparian habitat. EPA recommends the case-by-case approval clause in this stipulation be deleted, unless measurable decision criteria are included. |
| Lease stipulation E-3: | EPA recommends changing the monitoring program requirement from "may" to "shall." |
| ROP E-11: | Unless this ROP was developed in consultation with regulatory agencies with authorities over endangered species, EPA recommends that this ROP and all proposed requirements for protection of endangered species be included as lease stipulations. The requirements should be developed in consultation with appropriate resource and regulatory agencies. |

September 9, 2004

### F. Use of Aircraft for Permitted Activities

ROP F-1:  EPA recommends that requirements for aircraft use include measurable decision criteria instead of the vague standards used throughout this ROP. This ROP should be developed in consultation with resource and regulatory agencies, local residents and subsistence users. Monitoring and enforcement of this ROP should be described. Enforceable requirements for aircraft use not associated with a specific permit or authorization should also be included, or this ROP should be changed to a lease stipulation.

### H. Subsistence Consultation for Permitted Activities

ROP H-1:  EPA recommends that consultation requirements be lease stipulations, and also included as ROPs that would be applicable to other authorized (not just oil and gas) activities.

### K. Stipulations That Apply in Biologically Sensitive Areas

EPA recommends that the stipulations in this section be revised to align with our recommendation to develop and analyze a modified Preferred Alternative that maintains the current status of lands unavailable for leasing or under No Surface Activity restrictions.

EPA also recommends that the Final EIS clearly describe the agency coordination and consultation process that was completed during development of these revised stipulations. It is important to disclose to the public and decision maker the rationale that was used to change stipulations that are currently in effect.

Lease Stipulation K-3a:  EPA recommends that this stipulation include the consultation requirements and decision criteria that would be used to determine that exploration activities would not "unreasonably conflict" with traditional subsistence uses or "significantly impact" seasonally concentrated fish and wildlife resources.

Lease stipulation K-4:  This stipulation should include measurable criteria that would be used to determine potential adverse impacts to critical goose-feeding habitat. EPA recommends that appropriate consultation with regulatory and resource agencies be added for the entirety this stipulation.

Lease stipulation K-4g:  Additional description of the "strategies to minimize ground traffic" should be added to this stipulation. This requirement should be developed in consultation and coordination with appropriate resource and regulatory agencies with management authority over species at risk in goose molting areas.

September 9, 2004

| | |
|---|---|
| Lease Stipulation K-4h: | This stipulation is less protective than current stipulations. This stipulation must define the "nonessential helicopter overflights" term with clear and measurable criteria. EPA recommends that this stipulation include prohibitions for overflights in and around Goose Molting Area lakes between May 20 and August 20 (except for safety emergencies) unless coordination and consultation with appropriate resource and regulatory agencies is completed and documented. |
| Lease Stipulations K-6, K-7: | EPA recommends that the coordination and consultation that was conducted with resource and regulatory agencies and used to develop these stipulations be clearly described. |
| Lease Stipulation K-7: | EPA recommends the BLM delete the exception clauses included in this stipulation, in order to provide the maximum protections for significant wildlife resources in the Colville River Special Area, as mandated by the Naval Petroleum Reserves Production Act. |

## Environmental Justice

The Draft EIS concludes that on the basis of population statistics for North Slope communities, it is appropriate to consider environmental justice issues in evaluating effects of the Preferred Alternative.

EPA commends the BLM for conducting public scoping meetings and hearings in North Slope communities using an Inupiat translator. However, we are not aware that the Draft EIS, or a summary of the Draft EIS, was translated into Inupiat for the affected communities to use. The Final EIS should document any written materials that have been provided in the Inupiat language and the distribution that was used to inform residents and solicit comments and input. If an offer to translate written material was presented to the communities and declined, that information should also be included in the Final EIS.

The Draft EIS lacks an adequate summary of the verbal and written comments that were provided to the BLM from the local affected communities during scoping for the project, how the comments were heard and how they were incorporated into the development of the Alternatives. EPA recommends that the *Public Scoping Report for the Amendment to the National Petroleum Reserve-Alaska Integrated Activity Plan/Environmental Impact Statement* (ENSR, 2004), which is currently only available on the EIS project web site, be included in its entirety as an appendix in the Final EIS. We also recommend that the Final EIS describe how comments received from residents in affected communities were evaluated and used for decisions during the EIS process. We recommend that the Final EIS highlight or footnote components of the Preferred Alternative to show where and how input from residents in affected communities was incorporated. Documentation of such efforts and analysis is needed to determine if federal Environmental Justice requirements have been met.

Subsistence is given special consideration in determining the requirements for, and evaluation of, disproportionate impacts. EPA believes that opening additional lands and removing surface activity restrictions in the Teshekpuk Lake area and along the coast would cause adverse impacts to

September 9, 2004

subsistence resources that would likely result in high, disproportionate impacts on subsistence users in North Slope communities. We are particularly concerned that disturbance to bowhead whales, goose nesting and molting habitat, caribou calving grounds, insect-relief areas and migration corridors and the displacement of caribou could result in long-term adverse impacts to subsistence lifestyles in North Slope communities. The proposed performance-based stipulations and ROPs that are included in the Preferred Alternative do not ensure adequate protections or mitigation for subsistence resources that are used by North Slope residents.

## Consultation and Coordination

### Tribal Trust Responsibilities

Presidential Executive Order (EO) 13175, *Consultation and Coordination with Indian Tribal Governments*, recognizes the unique legal relationships the United States has with Indian Tribal governments. The EO requires all federal agencies to strengthen the United States Government-to-Government relationship with Indian Tribes. "Consultation" means the process of seeking, discussing, and considering the views of federally-recognized Tribal governments and typically means two-way communication that works toward a consensus reflecting the concerns of the affected federally recognized Tribes.

The Draft EIS (Section 5.5) documents the government-to-government consultation tasks the BLM completed during scoping and Draft EIS preparation. EPA recommends that additional information be included in the Final EIS to describe the:

- Level of Tribal participation that was accomplished during government-to-government consultation;
- Effectiveness of using meetings to achieve the consultation goal of strengthening the BLM's relationship with Tribes;
- Effectiveness of using the Subsistence Advisory Panel (SAP) in meeting consultation goals for this Draft EIS, i.e., effectiveness of using the SAP as a forum for distributing and discussing issues of importance to Tribes on a timely basis; and
- Process the BLM undertook to evaluate and respond to concerns and recommendations that were submitted to the BLM during government-to-government consultation or as a result of such consultation.

EPA also recommends that the Final EIS highlight or footnote those components of the Preferred Alternative that directly respond to comments, issues, and concerns expressed by Tribes during consultation and that resulted from consensus among Tribes and the BLM. For example, the Final EIS should indicate how the BLM has responded to the specific recommendation from Tribal leaders that the BLM and the Draft EIS adequately address the health impacts of oil and gas leasing on the residents of the North Slope (Section 5.5). We also recommend that the Final EIS highlight or footnote components of the Preferred Alternative that were results of consensus reached between Tribes and the BLM.

September 9, 2004

**Agency Coordination**

During development of the 1998 IAP/EIS and ROD, several workshops, meetings and peer reviews were conducted to obtain information and develop alternatives for analysis, including the following:

- *NPR-A Symposium (April 16-18, 1997)*
- *Multi-agency Planning Meeting (April, 1997)*
- *Teshekpuk Lake Waterfowl/Caribou Impact Analysis Workshop (May 21-25, 1997)*
- *NPR-A Subsistence Impact Analysis Workshop (August 19-21, 1997)*
- *Preliminary Draft EIS Multi-Agency Peer Review*

EPA is very concerned that a similar effort, directed toward alternatives to meet the Draft EIS Purpose and Need, was not completed during the preparation of the Draft EIS. The proposed changes to land use management of the Northeast Planning Area would impact ecologically unique waterfowl molting and nesting habitat that significant portions of global populations of geese depend upon. A decrease in the Teshekpuk Lake Caribou herd's health and productivity or alterations in their range would impact subsistence users in North Slope villages, and could cause long-term adverse impacts to subsistence use of the herd. Activities within the Planning Area could cause adverse impacts to threatened species, including the bowhead whale. EPA recommends the BLM provide an opportunity for scientists from government agencies, academia, industry, Tribes, and non-governmental organizations to meet and share updated information, including Traditional Knowledge, on resources and their uses within the Planning Area, discuss potential impacts from various land use activities, and reach consensus on a revised management plan for the Planning Area.

At a minimum, EPA believes it is essential that proposed changes to the management of lands within the Teshekpuk Lake Special Area or the Colville River Special Area that are considered during the preparation of the Final EIS and ROD be distributed for comment, discussion and consensus among federal, state, and North Slope Borough agency personnel with management responsibilities and expertise in the surface resources, and their uses, in those areas. The Final EIS and ROD should document these efforts and the outcomes.

**Clean Water Act and Wetlands**

The Draft EIS lacks sufficient detail to determine potential impacts to water bodies, shoreline vegetation and habitat, and wetlands from water use and withdrawal. The environmental consequences of water withdrawal from not only oil and gas exploration activities but also reasonably expected future development and production should be presented and analyzed in the document. This is especially critical in areas with documented fisheries and waterfowl use. EPA recommends additional information be provided for the Preferred Alternative that addresses reasonably expected future maximum water withdrawal needs, locations of potential water withdrawal, the environmental consequences, and the effectiveness of mitigation measures included in the Preferred Alternative.

September 9, 2004

EPA recommends revising the paragraph in Section 4.6.4.3 (Environmental Consequences, Wetlands and Floodplains), which references a Memorandum of Agreement between the USEPA and the U.S. Army Corps of Engineers (USACE), as follows (revised text is italicized):

"Wetland impacts are mitigated through stipulations, ROPs, permits and approvals issued at the exploration and development stages, and under Section 404 of the Clean Water Act, administered by the USACE. *The objective of mitigation for unavoidable impacts is to offset environmental losses. Under a Memorandum of Agreement between the USEPA and USACE, it is recognized that in certain areas such as the North Slope, avoidance or compensatory mitigation may not be practical due to the high proportion of land that is wetlands. The USEPA and USACE are working with industry to develop alternate methods to satisfy necessary compensation requirements for loss of wetlands on the North Slope.*"

### Final EIS Schedule

EPA acknowledges and appreciates the BLM extending the Draft EIS public comment period and rescheduling public hearings in local communities in order to facilitate greater participation. We encourage the BLM to take sufficient time during the preparation of the Final EIS and ROD to engage in additional government-to-government consultation and agency coordination and provide adequate opportunity to discuss issues, concerns and comments regarding this Draft EIS and the EIS process.