Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| **OIL AND GAS EXPLORATORY DRILLING** | | |
| *Stipulation 26 (Moderate)* would be more effective than *ROP H-1* (Low) in preventing unreasonable conflicts between subsistence activities and exploratory drilling near cabins and campsites. The *ROP H-1* might allow oil and gas activity to occur at closer distances to cabins or campsites than would occur under *Stipulation 26*. *Stipulation 26 and ROP H-1* would also reduce impacts on **subsistence harvest patterns** and would reduce impacts to **sociocultural systems** as well as address potential environmental justice concerns by providing opportunities for local participation in planning and decision-making. | | |
| 27. Permanent or gravel oil and gas facilities including roads shall not be constructed during the exploration phase of oil and gas development. | **D-2 Lease Stipulation** <br> Objective: Minimize surface impacts from exploratory drilling. <br> Requirement/Standard: Exploratory drilling shall be limited to temporary facilities such as ice pads, ice roads, ice airstrips, and temporary platforms, unless the lessee demonstrates that construction of permanent facilities such as gravel airstrips, storage pads, and connecting roads is environmentally preferable or necessary to carry out exploration more economically. | **D-2 Lease Stipulation** <br> Objective: Minimize surface impacts from exploratory drilling. <br> Requirement/Standard: Exploratory drilling shall be limited to temporary facilities such as ice pads, ice roads, ice airstrips, and temporary platforms, unless the lessee demonstrates that construction of permanent facilities such as gravel airstrips, storage pads, and connecting roads is environmentally preferable. |

*Stipulation 27 and ROP D-2* would differ in their effectiveness to provide protection for **soils** by reducing damage from permanent facilities constructed during exploration (High in Alternative A); (Moderate in all other alternatives). *Alternative A* would prohibit permanent facilities during exploration; the other alternatives may allow some permanent development.

*Stipulation 27 and ROP D-2* would differ in their effectiveness to provide protection from permanent facility construction that could potentially disturb the vegetative mat and impact **paleontological and cultural resources** that are near the surface (High for *Alternative A*); (Moderate for all other alternatives). *Alternative A* would prohibit permanent facilities during exploration; the other alternatives may allow some permanent development.

*Stipulation 27 and ROP D-2* would differ in their effectiveness in protecting **water resources and water quality** by regulating the construction of permanent roads during exploration (High for *Alternative A*); (Moderate for all other alternatives). *Alternative A* would prohibit permanent facilities during exploration; the other alternatives may allow some permanent development.

*Stipulation 27 and ROP D-2* could influence the level of effects on **estuarine water quality** by limiting exploratory drilling to temporary facilities such as ice pads, but would differ in their effectiveness (High for *Alternative A*); (Moderate for all other alternatives). *Alternative A* would prohibit permanent facilities during exploration; the other alternatives may allow some permanent development.

*Stipulation 27 and ROP D-2* would reduce the level of impacts to **vegetation** by regulating the construction of permanent facilities during exploration, but would have different effectiveness (High for *Alternative A*); (Moderate for all other alternatives). *Alternative A* would prohibit permanent facilities during exploration; the other alternatives may allow some permanent development.

*Stipulation 27 and ROP D-2* would benefit **freshwater fish habitat and fish** by reducing damage to fish habitat from construction of permanent facilities, but would differ in their effectiveness (High for *Alternative A*); (Moderate for all other alternatives). *Alternative A* would prohibit permanent facilities during exploration; the other alternatives may allow some permanent development.

*Stipulation 27 and ROP D-2* would differ in their effectiveness in benefiting **terrestrial mammals** by reducing the amount of habitat disturbed from permanent facilities (High for *Alternative A*); (Moderate for all other alternatives). *Alternative A* would prohibit permanent facilities during exploration; the other alternatives may allow some permanent development.

*Stipulation 27 and ROP D-2* would reduce the level of impacts to **endangered and threatened species and their habitats** by regulating the construction of permanent facilities during exploration, but would have different effectiveness (High for *Alternative A*); (Moderate for all other alternatives). *Alternative A* would prohibit permanent facilities during exploration; the other alternatives may allow some permanent development.

*Stipulation 27 and ROP D-2* would differ in their effectiveness in reducing impacts on **subsistence use** patterns by providing increased protection to fish and fish habitat (High for

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| **OIL AND GAS EXPLORATORY DRILLING** | | |
| | *Alternative A*: (Moderate for all other alternatives). *Alternative A* would prohibit permanent facilities during exploration; the other alternatives may allow some permanent development. | |
| | *Stipulation 27 and ROP D-2* would differ in their effectiveness in limiting the impacts that oil and gas exploration and development will have on **wild and scenic river values** (High for *Alternative A*); (Moderate for all other alternative]). *Alternative A* would prohibit permanent facilities during exploration; the other alternatives may allow some permanent development. | |
| | *Stipulation 27 and ROP D-2* would differ in their effectiveness in limiting the impacts that oil and gas exploration and development will have on **visual resources** (High for *Alternative A*); (Moderate for all other alternatives). *Alternative A* would prohibit permanent facilities during exploration; the other alternatives may allow some permanent development. | |
| 28. Exploratory drilling in river, stream, and lake beds, as determined by the highest high water mark, is prohibited. Exceptions to this stipulation may be authorized by the AO in cases of shallow lakes which freeze to the bottom, do not support significant fish or bird populations, and are hydrologically isolated. Further, such an exception may be granted only if it is environmentally preferable to maintaining the restriction. | *D-1 Lease Stipulation*<br>Objectives: Protect fish-bearing rivers, streams, and lakes from blowouts and minimize alteration of riparian habitat.<br>Requirement/Standard: Exploratory drilling is prohibited in rivers and streams, as determined by the active floodplain, and fish-bearing lakes, except where the lessee can demonstrate on a site-specific basis that impacts would be minimal, or it is determined that there is no feasible or prudent alternative. | *D-1 Lease Stipulation*<br>Objectives: Protect fish-bearing rivers, streams, and lakes from blowouts and minimize alteration of riparian habitat.<br>Requirement/Standard: Exploratory drilling is prohibited in rivers and streams, as determined by the active floodplain, and fish-bearing lakes, except where the lessee can demonstrate on a site-specific basis that impacts would be minimal, or it is determined that there is no feasible or prudent alternative. |
| | *Stipulation 28 and Lease Stipulation D-1* would be equally effective in protecting **water resources and water quality** by prohibiting exploratory drilling in most lakes, streams, and floodplains (Moderate). | |
| | *Stipulation 28 and Lease Stipulation D-1* would be equally effective in protecting **wetlands** by prohibiting exploratory drilling in most lakes, streams, and floodplains (Moderate). | |
| | *Stipulation 28 and Lease Stipulation D-1* would be equally effective in reducing impacts to **fish** and fish habitat during oil and gas exploratory drilling (Moderate). | |
| | *Stipulation 28 and Lease Stipulation D-1* would be equally effective in reducing the potential for damage to the riparian habitats used by **birds** (Moderate). | |
| | *Stipulation 28 and Lease Stipulation D-1* would be equally effective in reducing the potential for damage to the riparian habitats that are so important to many species of **terrestrial mammals**, including moose, bear and wolverine by prohibiting exploratory drilling in active floodplains. Disturbance impacts to wolverines and moose would also be reduced (Moderate). | |
| | *Stipulation 28 and Lease Stipulation D-1* would be equally effective in reducing impacts on **subsistence-harvest patterns** by providing increased protection for terrestrial mammals (Moderate). | |
| | *Stipulation 28 and Lease Stipulation D-1* would be equally effective in limiting the impacts that oil and gas exploration and development will have on **wild and scenic river values** (Moderate). | |
| **FACILITY DESIGN AND CONSTRUCTION** | | |
| 29. At least 3 years prior to approval of any development plan for leases within the Special Caribou Stipulations Area, the lessee shall design and implement a study of caribou movement, including historical information regarding the distribution and range use of the Teshekpuk Lake caribou, as well as maps of caribou trails within the area. Study data may be gathered concurrent with approved seismic | *K-5a Lease Stipulation - Teshekpuk Lake Caribou Habitat Area*<br>Objective: Minimize disturbance and hindrance of caribou, or alteration of caribou movements through portions the Teshekpuk Lake Caribou Habitat Area that are essential for all season use, including calving and rearing, insect relief, and migration.<br>Requirement/Standard: In the Teshekpuk Lake Caribou | *K-5a Lease Stipulation - Teshekpuk Lake Caribou Habitat Area*<br>Objective: Minimize disturbance and hindrance of caribou, or alteration of caribou movements through portions the Teshekpuk Lake Caribou Habitat Area that are essential for all season use, including calving and rearing, insect relief, and migration.<br>Requirement/Standard: In the Teshekpuk Lake Caribou |

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| | **FACILITY DESIGN AND CONSTRUCTION** | |
| and exploration activity. The study design shall be approved by the AO in consultation with the Research and Monitoring Team. The study will include a minimum of 3 years of data to assist in providing the information necessary to determine facility design and location, including pipelines, which will be part of the development plan. Lessees may submit individual plans or they may combine with other lessees in the area to do a joint study. Total study funding by all lessees will not exceed $500,000. | Habitat Area the following standards will be applied to permitted activities: a. Before authorization of construction of permanent facilities, the lessee shall design and implement a study of caribou movement unless an acceptable study(s) has been completed within the last 10 years. The study shall include a minimum of 3 years of current data on caribou movements and the study design shall be approved by the AO and should provide information necessary to determine facility (including pipeline) design and location. Lessees may submit individual study proposals or they may combine with other lessees in the area to do a single, joint study for the entire Teshekpuk Lake Caribou Habitat Area. Study data may be gathered concurrently with other activities. | Habitat Area the following standards will be applied to permitted activities: a. Before authorization of construction of permanent facilities, the lessee shall design and implement a study of caribou movement unless an acceptable study(s) has been completed within the last 10 years. The study shall include a minimum of 3 years of current data on caribou movements and the study design shall be approved by the AO and should provide information necessary to determine facility (including pipeline) design and location. Lessees may submit individual study proposals or they may combine with other lessees in the area to do a single, joint study for the entire Teshekpuk Lake Caribou Habitat Area. Study data may be gathered concurrently with other activities. |
| *Alternative A – Stipulation 29 and Alternatives B, C, and D – Lease Stipulation K-5(a) provide the same and equal benefit in effectively reducing but not eliminating impacts to* **terrestrial mammals**, *specifically TLH caribou and the* **subsistence** *use of these animals, in the area covered by the stipulations, by mandating that lessees conduct a study of caribou movement in the project area. The study results would then be utilized to design or place the facility in a manner that minimizes impacts. The presence of facilities and associated human activities would still result in some disturbance impacts to caribou. Caribou distribution can also vary from year to year (Moderate).* | | |
| 30. Causeways and docks are prohibited in river mouths or deltas. Artificial gravel islands and bottom-founded structures are prohibited in river mouths or active stream channels on river deltas, except as provided in the paragraphs below. The BLM discourages the use of continuous-fill causeways. Environmentally preferred alternatives for field development include the use of onshore directional drilling, elevated structures, or buried pipelines. Approved causeways shall be designed, sited, and constructed to prevent significant changes to near shore oceanographic circulation patterns and water-quality characteristics (e.g., salinity, temperature, suspended sediments) that result in exceeding water-quality criteria, and must maintain free passage of marine and anadromous fish. | *E-3 Lease Stipulation* Objective: Maintain free passage of marine and anadromous fish and protect subsistence use and access to traditional subsistence hunting and fishing. Requirement/Standard: Causeways and docks are prohibited in river mouths or deltas. Artificial gravel islands and bottom-founded structures are prohibited in river mouths or active stream channels on river deltas. Causeways, docks, artificial islands, and bottom-founded structures shall be designed to ensure free passage of marine and anadromous fish and to prevent significant changes to nearshore oceanographic circulation patterns and water quality characteristics. A monitoring program may be required to address the objectives of water quality and free passage of fish. | *E-3 Lease Stipulation* Objective: Maintain free passage of marine and anadromous fish and protect subsistence use and access to traditional subsistence hunting and fishing. Requirement/Standard: Causeways and docks are prohibited in river mouths or deltas. Artificial gravel islands and bottom-founded structures are prohibited in river mouths or active stream channels on river deltas. Causeways, docks, artificial islands, and bottom-founded structures shall be designed to ensure free passage of marine and anadromous fish and to prevent significant changes to nearshore oceanographic circulation patterns and water quality characteristics. A monitoring program may be required to address the objectives of water quality and free passage of fish. |

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| | **FACILITY DESIGN AND CONSTRUCTION** | |
| Causeways, docks, artificial gravel islands, and bottom-founded structures may be permitted if the AO, in consultation with appropriate federal, state, and NSB regulatory and resource agencies, determines that a causeway or other structure is necessary for field development, and that no feasible and prudent alternative exists. A monitoring program may be required to address the objectives of water quality and free passage of fish. Additional mitigation shall be required where significant deviation from these objectives occurs. | | |
| | *Alternative A – Stipulation 30 and Alternatives B, C, and D – Lease Stipulation E-3 provide the same and equal benefit in effectively reducing but not eliminating impacts to* **freshwater and marine fish, water resources and water quality, wild and scenic rivers values, subsistence use and access to traditional use areas, and environmental justice** *concerns, by prohibiting the placement of causeways and docks in river mouths or deltas, and artificial gravel islands and bottom-founded structures in active stream channels, river mouths, and deltas. Elsewhere these facilities must be constructed in a manner that does not restrict or impede fish movements or degrade water quality or flow. These are critical areas for fish and subsistence fisheries (Moderate).* | |
| 31. Permanent oil and gas surface occupancy, including but not limited to permanent oil and gas facilities, pads, rigs, platforms, gravel roads, airstrips, pipelines, gravel or other material extraction sites, and exploration and delineation drilling facilities are prohibited in the Teshekpuk Lake Surface Protection Area (specifically, T. 13 N., Rs. 3-7 W., U.M.; Secs. 1-6, 8-16, 21-25, 36, T. 13 N., R. 8 W., U.M.; T. 14 N., Rs. 1-2 E. and Rs. 1-8 W., U.M.; Secs. 1-2, 11-14, T. 14 N., R. 9 W., U.M.; T. 15 N., Rs. 2-8 W., U.M.; Secs. 1-3, 7-30, 35-36, T. 15 N., R. 9 W., U.M.; T. 16 N., Rs. 2-8 W., U.M.; Secs. 1-6, 8-17, 21-27, 34-36, T. 16 N., R. 9 W., U.M.; T. 17 N., Rs. 1-9 W., U.M.; and T. 18 N., Rs. 2-8 W., U.M.). No exceptions will be granted to this stipulation. | *K-3 Stipulation - Teshekpuk Lake*<br>Teshekpuk Lake contains sensitive biological resources and/or subsistence concerns. The standard(s) for exploration and development activities are set high with the burden of proof resting with the lessee to demonstrate to the AO that granting an approval for exploration and/or development is warranted.<br>Objective: Protect fish and wildlife habitat, preserve air and water quality, and minimize impacts to traditional subsistence activities and historic travel routes on Teshekpuk Lake.<br>Requirement/Standard (Exploration): Requests for approval of any activities must be submitted in advance and must be accompanied by evidence and documentation that demonstrates to the satisfaction of the AO that the actions or activities meet all of the following criteria:<br>a. Exploration activities will not unreasonably conflict with traditional subsistence uses or significantly impact seasonally concentrated fish and wildlife resources.<br>b. There is adequate spill response capability to effectively respond during periods of broken ice and/or open water or, the availability of | *K-3 Stipulation - Teshekpuk Lake Shoreline*<br>(Note: Under the Proposed Action Teshekpuk Lake would be deferred from additional oil and gas leasing for a period of 10 years).<br>Objective: Minimize the disruption of natural flow patterns and changes to water quality; the disruption of natural functions resulting from the loss or change to vegetative and physical characteristics of this large and regionally significant deep water lake; impacts to subsistence cabins, campsites and associated activities; and to protect fish and wildlife habitat including important insect relief areas.<br>Requirement/Standard: Permanent oil and gas facilities, including gravel pads, roads, airstrips, and pipelines, are prohibited within ¼ mile of the ordinary high water mark of Teshekpuk Lake – No Exceptions.<br><br>*K-4 Lease Stipulation - Goose Molting Area*<br>Objective: Minimize disturbance to molting geese and loss of goose molting habitat in and around lakes in the Goose Molting Area.<br>Requirement/Standard (General): Within the Goose |

## ALTERNATIVES

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| | **FACILITY DESIGN AND CONSTRUCTION** | |
| | alternative methods to prevent well blowouts during periods when adequate response capability cannot be demonstrated. Such alternative methods may include improvements in blowout prevention technology, equipment, and/or changes in operational procedures, and "top-setting" of hydrocarbon-bearing zones.<br><br>c. Reasonable efforts to avoid or minimize impacts related to oil spill response activities, including vessel, aircraft, and pedestrian traffic will be made to minimize additional impacts or further compounding of "direct spill"-related impacts on area resources and subsistence uses.<br><br>d. The location of exploration and related activities shall be sited so as to not pose a hazard to navigation by the public using high-use traditional subsistence-related travel routes on Teshekpuk Lake, recognizing that marine and near-shore travel routes change over time, subject to shifting environmental conditions.<br><br>**Requirement/Standard (Development):** With the exception of linear features such as pipelines and causeways, permanent oil and gas platforms or production equipment would not be permitted on or under the water within ¾ mile of the shoreline, and on land ¼ mile landward of the shoreline of Teshekpuk Lake. Activities will only be permitted if they can meet all the following criteria:<br><br>a. Design and construction of facilities shall minimize impacts to traditional subsistence uses, travel corridors, and seasonally concentrated fish and wildlife resources.<br><br>b. Daily operational activities, including use of support vehicles, watercraft, and aircraft traffic, alone or in combination with other past, present, and reasonably foreseeable activities, shall be conducted to minimize impacts to traditional subsistence uses, travel corridors, and seasonally concentrated fish and wildlife | Molting Area no permanent oil and gas facilities, except for pipelines, would be allowed on the approximately 216,000 acres illustrated on Map 2-4. No exceptions will be considered.<br><br>**Requirement/Standard (Exploration):** In goose molting habitat area exploratory drilling shall be limited to temporary facilities such as ice pads, ice roads, ice airstrips, and temporary platforms, unless the lessee demonstrates that construction of permanent facilities (outside the identified Goose Molting No Surface Occupancy Areas) such as gravel airstrips, storage pads, and connecting roads is environmentally preferable (Also see *Stipulation K-11* regarding allowable surface disturbance). In addition, the following standards will be followed for permitted activities:<br><br>a. From May 20 through August 20 exploratory drilling and associated activities are prohibited. The intent of this rule is to restrict exploration drilling during the period when geese are present.<br><br>b. Water extraction from any lake used by molting geese shall not alter hydrological conditions that could adversely affect identified goose-feeding habitat along lakeshore margins. Considerations will be given to seasonal use by operators (generally in winter) and geese (generally in summer), as well as recharge to lakes from the spring snowmelt.<br><br>c. Oil and gas exploration activities will avoid alteration (e.g., damage or disturbance of soils, vegetation, or surface hydrology) of critical goose-feeding habitat types along lakeshore margins (grass/sedge/moss), as identified by the AO in consultation with the USFWS.<br><br>d. Aircraft use (including fixed wing and helicopter) by oil and gas lessees and all other users shall be minimized, and possibly suspended, in and around Goose Molting Area lakes from May 20 through August 20 unless doing so would endanger human life or violate |

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| | **FACILITY DESIGN AND CONSTRUCTION** | |
| | resources. <br> c. The location of oil and gas facilities, including artificial islands, platforms, associated pipelines, ice or other roads, bridges or causeways, shall be sited and constructed so as to not pose a hazard to navigation by the public using traditional high-use subsistence-related travel routes into and through Teshekpuk Lake. <br> d. Demonstrated year-round oil spill response capability, including the capability of adequate response during periods of broken ice or open water, or the availability of alternative methods to prevent well blowouts during periods when adequate response capability cannot be demonstrated. Such alternative methods may include seasonal drilling restrictions, improvements in blowout prevention technology, equipment and/or changes in operational procedures, and "top-setting" of hydrocarbon-bearing zones. <br> e. Reasonable efforts will be made to avoid or minimize impacts related to oil spill response activities, including vessel, aircraft, and pedestrian traffic that add to impacts or further compound "direct spill" related impacts on area resources and subsistence uses. <br><br> **K-4 Lease Stipulation - Goose Molting Area** <br> Objective: Minimize disturbance to molting geese and loss of goose molting habitat in and around lakes in the Goose Molting Area. <br> Requirement/Standard: In goose molting habitats, the following standards will be followed for permitted activities: <br> a. Water extraction from any lake used by molting geese shall not alter hydrological conditions that could adversely affect identified goose-feeding habitat along lakeshore margins. Considerations will be given to seasonal use by operators (generally in winter) and geese (generally in summer), as well as recharge to | safe flying practices. <br> Requirement/Standard (Development): In Goose Molting Area, the following standards will be followed for permitted activities: <br> a. Major construction activities using heavy equipment (e.g., sand/gravel extraction and transport, pipeline and pad construction, but not drilling from existing production pads) shall be suspended within Goose Molting Area from May 20 through August 20, unless approved by the AO in consultation with the appropriate federal, state, and NSB regulatory and resource agencies. The intent of this rule is to restrict activities that would disturb molting geese during the period when geese are present. <br> b. Water extraction from any lakes used by molting geese shall not alter hydrological conditions that could adversely affect identified goose-feeding habitat along lakeshore margins. Considerations will be given to seasonal use by operators (generally in winter) and geese (generally in summer), as well as recharge to lakes from the spring snowmelt. <br> c. Oil and gas activities will avoid altering (i.e., damage or disturbance of soils, vegetation, or surface hydrology) critical goose-feeding habitat types along lakeshore margins (grass/sedge/moss). <br> d. Permanent oil and gas facilities (including gravel roads, pads, and airstrips, but excluding pipelines) and material sites will be sited outside the identified NSO areas. <br> e. Between May 20 and August, 20 within the Goose Molting Area, oil and gas facilities shall incorporate features (e.g., temporary fences, siting/orientation) that screen/shield human activity from view of any Goose Molting Area lake, as identified by the AO in consultation with appropriate federal, state, and NSB regulatory and resource agencies. |

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| | **FACILITY DESIGN AND CONSTRUCTION** | |
| | lakes from the spring snowmelt.<br>b. From May 20 through August 20 drilling other than from current production pads is prohibited. The intent of this rule is to restrict exploration drilling during the period when geese are present. There are no seasonal restrictions on development or exploration drilling for fields in operation.<br>c. Oil and gas exploration and development activities will avoid alteration (e.g., damage or disturbance of soils, vegetation, or surface hydrology) of critical goose-feeding habitat types along lakeshore margins (grass/sedge/moss), as identified by the AO in consultation with the USFWS.<br>d. Permanent oil and gas facilities (including gravel roads, pads, and airstrips but excluding pipelines) and material sites will be sited to meet the stated objective. With the exception of linear features such as pipelines and causeways, permanent oil and gas platforms or production equipment would not be permitted on or under the water within ¾ mile of the shoreline, and on land ¼ mile landward of the shoreline of goose molting lakes. Goose Molting Area lakes shall be identified by the AO in consultation with appropriate federal, state, and NSB regulatory and resource agencies.<br>e. Oil and gas facility layout located within 1½ miles of a Goose Molting Area lake from May 20 through August 20 shall incorporate features (e.g., temporary fences, siting/orientation) that screen/shield human activity from view of any Goose Molting Area lake, as identified by the AO in consultation with appropriate federal, state, and NSB regulatory and resource agencies.<br>f. Major construction activities using heavy equipment (e.g., sand/gravel extraction and transport, pipeline and pad construction, but not | f. Strategies to minimize ground traffic will be implemented from May 20 through August 20. These strategies may include limiting trips, use of convoys, different vehicle types, etc. to the extent practicable.<br>g. Aircraft use (including fixed wing and helicopter) within the Goose Molting Area by authorized users shall be restricted from May 20 to August 20 unless doing so would endanger human life or violate safe flying practices. Restrictions may include 1) limited to two round-trip flights/week, and 2) restricted to flight corridors will be established by the BLM after discussions with appropriate federal, state, and NSB regulatory and resource agencies. Note: This site-specific stipulation is not intended to restrict flights necessary to survey wildlife to gain information necessary to meet the stated objective of this stipulation. However, flights necessary to gain this information would be restricted to the minimum necessary to collect such data.<br><br>**K-5 Lease Stipulation - Teshekpuk Lake Caribou Habitat Area**<br>Objective: Minimize disturbance and hindrance of caribou, or alteration of caribou movements through portions the Teshekpuk Lake Caribou Habitat Area that are essential for all season use, including calving and rearing, insect-relief, and migration.<br>Requirement/Standard: In the Teshekpuk Lake Caribou Habitat Area the following standards will be applied to permitted activities:<br>a. Before authorization of construction of permanent facilities (outside NSO areas established in other stipulations), the lessee shall design and implement a study of caribou movement unless an acceptable study(s) has been completed within the last 10 years. The study shall include a minimum of 3 years of |

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| | **FACILITY DESIGN AND CONSTRUCTION** | |
| | drilling from existing production pads) shall be suspended within 1½ mile of the Goose Molting Area lakes from May 20 through August 20, unless approved by the AO in consultation with the appropriate federal, state, and NSB regulatory and resource agencies.<br>g. Strategies to minimize ground traffic will be implemented from May 20 through August 20. These strategies may include limiting trips, use of convoys, different vehicle types, etc. to the extent practicable.<br>h. Nonessential helicopter overflights by oil and gas lessees and all other users shall be reviewed and may be suspended in and around Goose Molting Area lakes from May 20 through August 20.<br>i. Within the Goose Molting Area, use of fixed-wing aircraft by authorized users shall be restricted from May 20 to August 20. Restrictions may include 1) limited to two round-trip flights/week, and 2) restricted to flight corridors will be established by the BLM after discussions with appropriate federal, state, and NSB regulatory and resource agencies. Note: This site-specific stipulation is not intended to restrict flights necessary to survey wildlife to gain information necessary to meet the stated objective of this stipulation. However, flights necessary to gain this information would be restricted to the minimum necessary to collect such data.<br><br>*K-5 Lease Stipulation - Teshekpuk Lake Caribou Habitat Area*<br><u>Objective</u>: Minimize disturbance and hindrance of caribou, or alteration of caribou movements through portions the Teshekpuk Lake Caribou Habitat Area that are essential for all season use, including calving and rearing, insect-relief, and migration.<br><u>Requirement/Standard</u>: In the Teshekpuk Lake Caribou Habitat Area the following standards will be applied to | current data on caribou movements and the study design shall be approved by the AO and should provide information necessary to determine facility (including pipeline) design and location. Lessees may submit individual study proposals or they may combine with other lessees in the area to do a single, joint study for the entire Teshekpuk Lake Caribou Habitat Area. Study data may be gathered concurrently with other activities.<br>b. Exploratory drilling will be allowed only from current production pads or platforms sited within a lake body from May 20 through August 20 in the Teshekpuk Lake Caribou Habitat Area, in compliance with setbacks and restrictions set forth in other stipulations.<br>c. Within the Teshekpuk Lake Caribou Habitat Area, lessees shall orient linear corridors when laying out oil field developments to the extent practicable, to address migration and corralling effects and to avoid loops of road and/or pipeline that connect facilities.<br>d. Ramps over pipelines, buried pipelines, or pipelines buried under the road may be required by the AO, after consultation with appropriate federal, state, and NSB regulatory and resource agencies, in the Teshekpuk Lake Caribou Habitat Area where pipelines potentially impede caribou movement.<br>e. The following ground-traffic restrictions shall apply to permanent oil and gas-related roads in the areas and time periods indicated:<br>1. Within the Teshekpuk Lake Caribou Habitat Area, from May 20 through August 20, traffic speed shall not exceed 15 miles per hour when caribou are within ½ mile on the road. Additional strategies may include limiting trips, using convoys, using different vehicle types, etc., to the extent practicable. |

ALTERNATIVES

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| | **FACILITY DESIGN AND CONSTRUCTION** | |
| | permitted activities: | 2. The lessee or a contractor shall observe caribou movement from May 20 through August 20. Based on these observations, traffic will be stopped temporarily to allow a crossing by 10 or more caribou. Sections of road will be evacuated when migrations of large numbers of caribou appears to be imminent. |
| | a. Before authorization of construction of permanent facilities, the lessee shall design and implement a study of caribou movement unless an acceptable study(s) has been completed within the last 10 years. The study shall include a minimum of 3 years of current data on caribou movements and the study design shall be approved by the AO and should provide information necessary to determine facility (including pipeline) design and location. Lessees may submit individual study proposals or they may combine with other lessees in the area to do a single, joint study for the entire Teshekpuk Lake Caribou Habitat Area. Study data may be gathered concurrently with other activities. | 3. Major equipment, materials, and supplies to be used at oil and gas work sites in the Teshekpuk Lake Caribou Habitat Area shall be stockpiled prior to or after the period of May 20 through August 20 to minimize road traffic during that period. |
| | b. Exploratory drilling will be allowed only from current production pads or platforms sited within a lake body from May 20 through August 20 in the Teshekpuk Lake Caribou Habitat Area, in compliance with setback requirements set forth in other stipulations. | 4. Use of aircraft larger than a Twin Otter by authorized users of the Planning Area, including oil and gas lessees, from May 20 through August 20 within the Teshekpuk Lake Caribou Habitat Area, shall be for emergency purposes only. |
| | c. Within the Teshekpuk Lake Caribou Habitat Area, lessees shall orient linear corridors when laying out oil field developments to the extent practicable, to address migration and corralling effects and to avoid loops of road and/or pipeline that connect facilities. | 5. Fixed-wing aircraft takeoffs and landings by authorized users of the Planning Area shall be limited to an average of one round-trip flight per day from May 20 through June 20, at aircraft facilities within the Teshekpuk Lake Caribou Habitat Areas. |
| | d. Ramps over pipelines, buried pipelines, or pipelines buried under the road may be required by the AO, after consultation with appropriate federal, state, and NSB regulatory and resource agencies, in the Teshekpuk Lake Caribou Habitat Area where pipelines potentially impede caribou movement. | 6. Aircraft shall maintain a minimum height of 1,000 feet AGL (except for takeoffs and landings) over caribou winter ranges from October 1 through May 1, and 2,000 feet AGL over the Teshekpuk Lake Caribou Habitat Area from May 20 through August 20, unless doing so would endanger human life or violate safe flying practices. |
| | e. The following ground-traffic restrictions shall apply to permanent oil and gas-related roads in the areas and time periods indicated:<br>1. Within the Teshekpuk Lake Caribou | **K-6 Stipulation - Coastal Area**<br>Objective: Minimize hindrance or alteration of caribou movement within caribou coastal insect-relief areas; to prevent contamination of marine waters; loss of important |

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| | **FACILITY DESIGN AND CONSTRUCTION** | bird habitat; alteration or disturbance of shoreline marshes; and impacts to subsistence resources activities.<br>Requirement/Standard: In the Coastal Area, permanent oil and gas facilities, including gravel pads, roads, airstrips, and pipelines established to support exploration and development activities shall be located at least ¾ mile inland from the coastline to the extent practicable. Where, as a result of technological limitations, economics, logistics, or other factors, a facility must be located within ¾ mile inland of the coastline, the practicality of locating the facility at previously occupied sites such as Camp Lonely, various Husky/USGS drill sites, and Distant Early Warning (DEW)-Line sites, shall be considered. Use of existing sites within ¾ mile of the coastline shall also be acceptable where it is demonstrated that use of such sites will reduce impacts to shorelines or otherwise be environmentally preferable. All lessees/permitees involved in activities in the immediate area must coordinate use of these new or existing sites with all other prospective users. Before conducting open water activities, the lessee shall consult with the Alaska Eskimo Whaling Commission, the Nuiqsut Whaling Association, and the NSB to minimize impacts to the fall and spring subsistence whaling activities of the communities of the North Slope.<br><br>**K-9 Lease Stipulation – Caribou Movement Corridor**<br>Objective: Minimize disturbance and hindrance of caribou, or alteration of caribou movements (that are essential for all season use, including calving and rearing, insect-relief, and migration) in the area extending from the eastern shore of Teshekpuk Lake to approximately 4 miles eastward towards the Kogru Inlet.<br>Requirement/Standard: Within the Caribou Movement Corridor, no permanent oil and gas facilities, including pipelines, would be allowed on the approximately 16,000 acres illustrated on Map 2-4. Note: In addition to the general stipulations and ROPs, site-specific stipulations, i.e. *Stipulations K-3, K-4, K-5, and K-11* would also apply. |
| | Habitat Area, from May 20 through August 20, traffic speed shall not exceed 15 miles per hour when caribou are within ½ mile on the road. Additional strategies may include limiting trips, using convoys, using different vehicle types, etc., to the extent practicable. | |
| | 2. The lessee or a contractor shall observe caribou movement from May 20 through August 20. Based on these observations, traffic will be stopped temporarily to allow a crossing by 10 or more caribou. Sections of road will be evacuated when migrations of large numbers of caribou appears to be imminent. | |
| | 3. Major equipment, materials, and supplies to be used at oil and gas work sites in the Teshekpuk Lake Caribou Habitat Area shall be stockpiled prior to or after the period of May 20 through August 20 to minimize road traffic during that period. | |
| | 4. Use of aircraft larger than a Twin Otter by authorized users of the Planning Area, including oil and gas lessees, from May 20 through August 20 within the Teshekpuk Lake Caribou Habitat Area, shall be for emergency purposes only. | |
| | 5. Fixed-wing aircraft takeoffs and landings by authorized users of the Planning Area shall be limited to an average of one round-trip flight per day from May 20 through June 20, at aircraft facilities within the Teshekpuk Lake Caribou Habitat Areas. | |
| | 6. Aircraft shall maintain a minimum height of 1,000 feet AGL (except for takeoffs and landings) over caribou winter ranges from October 1 through May 1, and 2,000 feet AGL over the Teshekpuk Lake Caribou Habitat Area from May 20 through August | |

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| | **FACILITY DESIGN AND CONSTRUCTION** | |
| | 20, unless doing so would endanger human life or violate safe flying practices.<br><br>**K-6 Stipulation – Coastal Area**<br>Objective: Minimize hindrance or alteration of caribou movement within caribou coastal insect-relief areas; to prevent contamination of marine waters; loss of important bird habitat; alteration or disturbance of shoreline marshes; and impacts to subsistence resources activities.<br>Requirement/Standard: In the Coastal Area, permanent oil and gas facilities, including gravel pads, roads, airstrips, and pipelines established to support exploration and development activities shall be located at least ¾ mile inland from the coastline to the extent practicable. Where, as a result of technological limitations, economics, logistics, or other factors, a facility must be located within ¾ mile inland of the coastline, the practicality of locating the facility at previously occupied sites such as Camp Lonely, various Husky/USGS drill sites, and Distant Early Warning (DEW)–Line sites, shall be considered. Use of existing sites within ¾ mile of the coastline shall also be acceptable where it is demonstrated that use of such sites will reduce impacts to shorelines or otherwise be environmentally preferable. All lessees/permitees involved in activities in the immediate area must coordinate use of these new or existing sites with all other prospective users. Before conducting open water activities, the lessee shall consult with the Alaska Eskimo Whaling Commission, the Nuiqsut Whaling Association, and the NSB to minimize impacts to the fall and spring subsistence whaling activities of the communities of the North Slope. | **K-10 Lease Stipulation – Southern Caribou Calving Area**<br>Objective: Minimize disturbance and hindrance of caribou, or alteration of caribou movements (that are essential for all season use, including calving and post calving, and insect-relief) in the area south/southeast of Teshekpuk Lake:<br>Requirement/Standard: Within the Southern Caribou Calving Area, no permanent oil and gas facilities, excluding pipelines, would be allowed on the approximately 141,000 acres illustrated on Map 2-4. Note: In addition to the general stipulations and ROPs, site specific *Stipulations K-4, K-5, K-6, and K-11* would also apply.<br><br>**K-11 Lease Stipulation: Lease Tracts A-G**<br>Objective: To protect key surface resources and subsistence resources/activities resulting from permanent oil and gas development and associated activities.<br>Requirement Standard: Surface disturbance is limited to 300 acres within the following described lease tracts (Map 2-4); this does not include surface disturbance activities from pipeline construction.<br>a. Total Acreage: 49,090: <u>39,418 acres</u> = No Surface Occupancy for Permanent Oil and Gas facilities excluding pipelines <u>9,672 acres</u> = Area open to development subject to general and site specific stipulations and required operating procedures. The total development footprint cannot exceed 300 acres (0.6% of total acreage) within the 9,672 acres.<br>b. Total Acreage: 45,953: <u>40,728 acres</u> = No Surface Occupancy for Permanent Oil and Gas facilities excluding pipelines <u>5,225 acres</u> = Area open to development subject to general stipulations and required operating procedures. The total development footprint cannot exceed 300 acres (0.6% of total acreage) within the |

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| | **FACILITY DESIGN AND CONSTRUCTION** | |
| | | 5,225 acres. |
| | | c. Total Acreage: 53,545: 48,828 acres = No Surface Occupancy for Permanent Oil and Gas facilities excluding pipelines 4,717 acres = Area open to development subject to general stipulations and required operating procedures. The total development footprint cannot exceed 300 acres (0.5% of total acreage) within the 4,717 acres. |
| | | d. Total Acreage: 51,752: 29,094 acres = No Surface Occupancy for Permanent Oil and Gas facilities excluding pipelines 22,658 acres = Area open to development subject to general stipulations and required operating procedures. The total development footprint cannot exceed 300 acres (0.5% of total acreage) within the 22,658 acres. |
| | | e. Total Acreage: 56,829: 46,986 acres = No Surface Occupancy for Permanent Oil and Gas facilities excluding pipelines 9,843 acres = Area open to development subject to general stipulations and required operating procedures. The total development footprint cannot exceed 300 acres (0.5% of total acreage) within the 9,843 acres. |
| | | f. Total Acreage: 57,959: 46,364 acres = No Surface Occupancy for Permanent Oil and Gas facilities excluding pipelines 11,595 acres = Area open to development subject to general stipulations and required operating procedures. The total development footprint cannot exceed 300 acres (0.5% of total acreage) within the 11,595 acres. |
| | | g. Total Acreage: 57,959: 46,364 acres = No Surface Occupancy for Permanent Oil and Gas facilities excluding pipelines 11,595 acres = Area open to development subject to general stipulations and required operating procedures. The total development footprint cannot exceed 300 acres (0.5% of total acreage) within the |

Exhibit 42, page 74 of 300

## ALTERNATIVES

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| FACILITY DESIGN AND CONSTRUCTION | | |
| | | 11,595 acres. |

*Alternative A – Stipulation 31 and Alternatives B, C, and D – Lease Stipulation K-3, K-4, K-5* provide similar benefit in effectively reducing impacts to soils, freshwater fishes and their habitat, birds and bird habitats, terrestrial mammals, endangered and threatened species, water quality, in the area covered by the stipulations. However, other elements of each alternative, i.e. No Surface Occupancy restrictions, and/or management decisions that make lands available or unavailable to oil and gas leasing, provide a different means for resource protection. Therefore, while the mitigations are comparable in providing protection to this resource, this is not to say that the overall level of protection under the various *Alternatives* is necessarily equal or the same based on management decisions in the planning area. Please see Table 2.3 for a discussion regarding the comparison of impacts among alternatives. Gravel pads and roads can only be constructed for permanent facilities, therefore prohibition of permanent facilities avoids the impacts to soils, vegetation and the birds and mammals that utilize the vegetation that would be covered by gravel. Permanent facilities are also the sites of human activity which can disturb *Lease Stipulation K-3 of Alternatives B and C* may be more slightly less effective than *Stipulation 31 (Alternative A)* and *Lease Stipulation K-3 (Alternative D)* as it exempts pipelines and other linear oil and gas facilities while the others do not (Moderate).

*Alternative A Stipulation 31 and Alternatives B, C, and D Lease Stipulation K-3* could provide additional protection of **birds, threatened and endangered species, bird** habitats and avoid disturbance of seasonally concentrated birds, by prohibiting oil and gas exploration activity between May 20 - August 20, requiring adequate year-round spill response capability including during periods of broken ice or alternative methods to prevent oil spills, requiring that facilities minimize impacts to seasonally concentrated birds, and requiring that daily activities are conducted to minimize impacts to seasonally concentrated birds.

*Alternative A – Stipulation 31 and Alternatives B, C, and D – Lease Stipulation K-4* – provide similar benefit in effectively reducing impacts to soils, birds and bird habitats, and water quality, in the area covered by the stipulations, by prohibiting the construction of permanent oil and gas facilities in the area covered by the stipulations. However, other elements of each alternative, i.e. No Surface Occupancy restrictions, and/or management decisions that make lands available or unavailable to oil and gas leasing, provide a different means for resource protection. Therefore, while the mitigations are comparable in providing protection to this resource, this is not to say that the overall level of protection under the various *Alternatives* is necessarily equal or the same based on management decisions in the planning area. Please see Table 2.3 for a discussion regarding the comparison of impacts among alternatives. *Lease Stipulation K-3 of Alternatives B and C* may be more slightly less effective than *Stipulation 31 (Alternative A)* and *Lease Stipulation K-3 (Alternative D)* as it exempts pipelines and other linear oil and gas facilities while the others do not (Moderate).

*Alternative A – Stipulation 31 and Alternatives B, C, and D – Lease Stipulation K-5* – provide similar benefit in effectively reducing impacts to soils, bird habitats, and water quality, in the area covered by the stipulations, by prohibiting the construction of permanent oil and gas facilities in the area covered by the stipulations. However, other elements of each alternative, i.e. No Surface Occupancy restrictions, and/or management decisions that make lands available or unavailable to oil and gas leasing, provide a different means for resource protection. Therefore, while the mitigations are comparable in providing protection to this resource, this is not to say that the overall level of protection under the various *Alternatives* is necessarily equal or the same based on management decisions in the planning area. Please see Table 2.3 for a discussion regarding the comparison of impacts among alternatives. *Lease Stipulation K-3 of Alternatives B and C* may be more slightly less effective *than Stipulation 31 (Alternative A)* and *Lease Stipulation K-3 (Alternative D)* as it exempts pipelines and other linear oil and gas facilities while the others do not (Moderate).

*Alternative A Stipulation 31 and Alternatives B, C, and D Lease Stipulation K-3* would be more effective than *Lease Stipulation K-3* in protecting soils in Teshekpuk Lake Surface Protection Area because no permanent oil and gas facilities would be allowed in the TLSP Area under *Stipulation 31*, but would permanent oil and gas facilities would be allowed in the TLSP Area under *Lease Stipulation K-3*. *Lease Stipulation K-3* for the Proposed Action would be more protective than *Lease Stipulation K-3 for the Alternatives B and C* for Teshekpuk Lake, as the lake would be deferred from leasing under the Proposed Action.

*Alternative A Stipulation 31 and Alternatives B, C, and D Lease Stipulation K-3* could reduce impacts to **endangered and threatened species** by protecting eider habitats and avoiding disturbance of seasonally concentrated eiders, molting geese, and other **birds** by 1) prohibiting oil and gas exploration activity between May 20-August 20) requiring adequate year round spill response capability including during periods of broken ice or alternative methods to prevent oil spills (K-3 b), requiring that facilities minimize impacts to seasonally concentrated birds (K-3 f), and requiring that daily activities are conducted to minimize impacts to seasonally concentrated eiders (K-3 g). This reduces the potential for impacts to freshwater and marine fishes and their habitat from oil and gas operations.

*Stipulation 31 and Lease Stipulation K-4* would provide benefit in the minimization of impacts to birds, and endangered species, particularly eiders, and nesting and molting

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| **FACILITY DESIGN AND CONSTRUCTION** | | |
| waterfowl, by prohibiting construction of permanent oil and gas facilities along the shoreline of the goose molting lakes and oil and gas drilling within between May 20 and August 20 except at existing pads. Human activity at facilities within 1.5 miles of the lakes must be shielded from view from the lake. These measures should reduce disturbance to molting waterfowl including brant, eiders, and other species during the molting periods when they are most susceptible. *Stipulation 31 and Lease Stipulation K-4* would reduce impacts to **birds** by reducing habitat loss or disturbance of nesting and brood-rearing brant by requiring pre-construction aerial surveys of proposed development sites and surrounding area, and by prohibiting development or curtailing activities within 1/2 mi of deep water lakes. | | |
| | *Alternative A Stipulation 31 and Alternatives B, C, and D Lease Stipulation K-5* would greatly reduce but not totally eliminate impacts to **terrestrial mammals**, specifically TLH caribou. (Moderate) The presence of facilities and associated human activity would still result in disturbance impacts to caribou. Caribou distribution can vary from year to year depending upon many factors. What appears to be the best design and location based on a minimum of three years of data may not hold true over the life of the facility or may be altered as additional infrastructure is constructed in other areas. | |
| | *Alternative A Stipulation 31 and Alternatives B, C, and D Lease Stipulation K-6* would not reduce the acreage of **vegetation** impacted by an action, but might shift the impacts from more valuable **wetland** or riparian vegetation types to habitats perceived as lesser in value (Moderate). | |
| | *Alternative A Stipulation 31 and Alternatives B, C, and D Lease Stipulation K-6* provide equal benefit in reduction of potential impacts to **soils, vegetation, wetlands, terrestrial mammals, marine mammals, birds, and fish** by prohibiting permanent oil and gas facilities within 3/4 mi inland from the coastline to the extent practicable. This stipulation would thereby reduce the potential for accidental spills to enter coastal/marine waters where marine fishes might be impacted. They would increase the opportunity for oil spill response and cleanup well before they enter either riverine or coastal/marine fish habitats; consequently, they reduce the potential for a spill to adversely impact marine fishes. The stipulations would reduce impacts on subsistence harvest patterns by providing increased protection to caribou, birds and marine fish and mammals. They would help to prevent large fuel or crude oil spills, and consequently reduce the small potential for impacts to paleontological and cultural resources from spill cleanup. They would protect subsistence resources and access in Kogru Inlet, and other coastal areas. This protection of subsistence pursuits as set down in ANILCA (P.L. 96-487); helps to guard against potential impacts to **subsistence-harvest patterns, sociocultural** disruptions that then fall under the purview of environmental justice. | |
| 32. Lessees shall use maximum economically feasible extended-reach drilling for production drilling to minimize the number of pads and the network of roads between pads. New developments shall share facilities with existing development when prudent and technically feasible. All oil and gas facilities, except airstrips, docks, and seawater-treatment plants, will be co-located with drill pads. If possible, airstrips will be integrated with roads. Given the paucity of gravel sites in the planning area and the cost of transporting gravel from outside the planning area, lessees are encouraged to implement gravel-reduction technologies e.g., insulated or pile-supported pads. | **E-5 Required Operating Procedure** **Objective:** Minimize impacts of the development footprint. **Requirement/Standard:** Facilities shall be designed and located to minimize the development footprint to the maximum extent practicable considering environmental, economic, and social impacts. Note: Where aircraft traffic is a concern, consideration shall be given to balancing gravel pad size and available supply storage capacity with potential reductions in the use of aircraft to support oil and gas operations. | **E-5 Required Operating Procedure** **Objective:** Minimize impacts of the development footprint. **Requirement/Standard:** Facilities shall be designed and located to minimize the development footprint to the maximum extent practicable considering environmental, economic, and social impacts. Note: Where aircraft traffic is a concern, consideration shall be given to balancing gravel pad size and available supply storage capacity with potential reductions in the use of aircraft to support oil and gas operations. |
| *Alternative A Stipulation 32 and Alternatives B, C, and D - ROP E-5* would be equally effective in minimizing effects on **soils, paleontological and cultural resources, water resources and water quality, vegetation, wetlands, and fish and fish habitat** by minimizing the development footprint and amount of gravel use (Moderate). *Stipulation 32 and ROP E-5* would be equally effective in minimizing the development footprint and amount of gravel use (Moderate), and on subsistence and sociocultural systems by requiring minimal facility footprint (Moderate). *ROP E-5* (Moderate) would be more effective than *Stipulation 32* (Low) in reducing impacts to terrestrial mammals, birds, and endangered species from aircraft activity, as facility footprint size would be balanced against the need for additional air traffic to support the facility when designing facilities. *Stipulation 32 and ROP E-5* would be equally effective in minimizing effects on recreation, wilderness area, and wild and scenic river values by minimizing the development footprint and amount of gravel use (Moderate). *ROP E-5* (Moderate) would be more effective than *Stipulation 32* (Low) in reducing impacts to these resources and resource users | | |

Table 2-2. Continued.

| 1998 Northeast IAP/EIS Stipulations for the No Action Alternative | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for Alternative B and Alternative C | Comparable/Applicable Amended IAP/EIS Lease Stipulations and Required Operating Procedures for the Proposed Action |
|---|---|---|
| **FACILITY DESIGN AND CONSTRUCTION** | | |
| from aircraft activity, as facility footprint size would be balanced against the need for additional air traffic to support the facility when designing facilities. *Stipulation 32 and ROP E-5 would be equally effective in minimizing effects on visual resources by minimizing the development footprint and amount of gravel use (Moderate). Stipulation 33 and Lease Stipulation K-5c would be equally effective in reducing, but not necessarily totally eliminating, impacts to terrestrial mammals, specifically TLH caribou.* | | |
| 33. Within the Special Caribou Stipulations Area, lessees shall orient linear corridors when laying out oil field developments to address migration and corralling effects and to avoid loops of road and/or pipeline that connect facilities. | *K-5c Lease Stipulation*<br>c. Within the Teshekpuk Lake Caribou Habitat Area, lessees shall orient linear corridors when laying out oil field developments to the extent practicable, to address migration and corralling effects and to avoid loops of road and/or pipeline that connect facilities. | *K-5c Lease Stipulation*<br>c. Within the Teshekpuk Lake Caribou Habitat Area, lessees shall orient linear corridors when laying out oil field developments to the extent practicable, to address migration and corralling effects and to avoid loops of road and/or pipeline that connect facilities. |
| *Alternative A Stipulation 33 and Alternatives B, C, and D Lease Stipulation K-5c would be equally effective in reducing impacts on terrestrial mammals and subsistence use patterns by providing increased protection to caribou (Moderate).* | | |
| 34. Lessees shall separate elevated pipelines from roads by a minimum of 500 feet, if feasible. Separating roads from pipelines may not be feasible within narrow land corridors between lakes and where pipe and road converge on a drill pad. | *E-7 Required Operating Procedure*<br>Objective: Minimize disruption of caribou movement and subsistence use.<br>Requirement/Standard: Pipelines and roads shall be designed to allow the free movement of caribou and the safe, unimpeded passage of the public while participating in traditional subsistence activities. Listed below are the accepted design practices: | *E-7 Required Operating Procedure*<br>Objective: Minimize disruption of caribou movement and subsistence use.<br>Requirement/Standard: Pipelines and roads shall be designed to allow the free movement of caribou and the safe, unimpeded passage of the public while participating in traditional subsistence activities. Listed below are the accepted design practices: |
| 35. To minimize delay or deflection of caribou movements, lessees shall place pipeline on the appropriate side of the road as determined by the AO (depending on general caribou movements in the area). | a. Above ground pipelines shall be elevated a minimum of 7 feet as measured from the ground to the bottom of the pipeline at vertical support members. | a. Above ground pipelines shall be elevated a minimum of 7 feet as measured from the ground to the bottom of the pipeline at vertical support members. |
| 36. In the Special Caribou Stipulations Area and where facilities or terrain may funnel caribou movement, ramps over pipelines, buried pipe, or pipe buried under the road may be required by the AO after consultation with appropriate federal, state, and NSB regulatory and resource agencies. | b. In areas where facilities or terrain may funnel caribou movement, ramps over pipelines, buried pipelines, or pipelines buried under roads may be required by the AO after consultation with federal, state, and NSB regulatory and resource agencies (as appropriate, based on agency legal authority and jurisdictional responsibility). | b. In areas where facilities or terrain may funnel caribou movement, ramps over pipelines, buried pipelines, or pipelines buried under roads may be required by the AO after consultation with federal, state, and NSB regulatory and resource agencies (as appropriate, based on agency legal authority and jurisdictional responsibility). |
| 37. Aboveground pipelines shall be elevated at least 5 feet, as measured from the ground to the bottom of the pipe, except where the pipeline intersects a road, pad, or a ramp installed to facilitate wildlife passage and subsistence passage and access. The AO, in consultation with appropriate federal, state, and NSB regulatory and resource agencies, may make an exception if no feasible and prudent means exists to | c. A minimum distance of 500 feet between pipelines and roads should be maintained when feasible. Separating roads from pipelines may not be feasible within narrow land corridors between lakes and where pipelines and roads converge on a drill pad. | c. A minimum distance of 500 feet between pipelines and roads should be maintained when feasible. Separating roads from pipelines may not be feasible within narrow land corridors between lakes and where pipelines and roads converge on a drill pad. |