*Filed: 24 Sept. 2004*

DEAN K. DUNSMORE
DEPARTMENT OF JUSTICE
Environment & Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
Telephone:(907)271-5452
Facsimile: (907)271-5827
Email: dean.dunsmore@usdoj.gov

MARTIN LaLONDE
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Ben Franklin Station
Washington, D.C. 20044-0663
Telephone 202-305-0247
Facsimile     202-305-0506
Email: martin.lalonde@usdoj.gov

ROBERT GULLEY
Environment & Natural Resources Division
Wildlife & Marine Resources Section
P.O. Box 7369
Ben Franklin Station
Washington, D.C. 20044-7369
Telephone 202-305-0500
Facsimile 202-305-0275
Email: robert.gulley@usdoj.gov

Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

NORTHERN ALASKA ENVIRONMENTAL
CENTER, NATIONAL AUDUBON SOCIETY,
et al.

               Plaintiffs,

    v.

GALE NORTON, Secretary of the
Interior; HENRI BISSON, Bureau of
Land Management State Director;
et al.

               Defendants,

No. J04-0006-CV(JKS)

DEFENDANTS' BRIEF
ON COUNTS I-V

EXHIBIT 2
Page 1 of 8

the ROD places surface restrictions on both permanent and temporary facilities in the stream bed and 3/4 and ½ mile from the center line of various rivers including the Meade River, ROD Appendix B-14 & Map 1 at 9, The FEIS thus provided sufficient detail to allow BLM to impose these restrictions.

Plaintiffs contend (Plfs' Brief at 28) that the FEIS only discloses total acreage impacts on wetlands associated with seismic surveys. That is incorrect. The FEIS, after detailing what seismic surveys are, 1 FEIS IV-52 thru 53, describes the impacts of seismic activities on soils, vegetation and on wetlands generally for all alternatives. 1 FEIS IV-82, 83, 92-93, 124-25, 126, 158-60, 282-3, 284, 297-98, 344-45, 346, 357-58, 399-401; 2 FEIS V-14, 48-49, 171-73. While the FEIS does not state that these impacts will occur at a particular site, it does state that the greater impacts will likely be concentrated on the northern portions of the Northwest Planning Area so that "marsh wetland" will be affected and tussock wetlands will be affected less. 2 FEIS V-48-49. Given what is known of the area that was offered for lease, and could potentially be explored and developed, the information provided as to impacts on wetlands is more than sufficient.

Plaintiffs complain (Plfs' Brief at 28) about a lack of detail regarding the location of subsistence cabins. The location of such cabins and campsites areas are mapped. 3 FEIS Maps 75, 85. This information led to the imposition of specific conditions to reduce potential displacement of subsistence users from their traditional areas. 2 FEIS VII-203-31, 233.[18]/

## IV. THE FEIS ADEQUATELY ASSESSES CUMULATIVE IMPACTS

The task of selecting the scope of an EIS is assigned to the special competency of the agency. *Kleppe v. Sierra Club*, 427 U.S. 390, 413-14 (1976); *Selkirk Conservation Alliance v. Fosgren*, 336 F.3d 944, 958 (9th Cir. 2003). This includes consideration of cumulative impacts. *Id.* A cumulative impact "is the impact on the environment which results from the incremental impact of the action when added to past, present, and reasonably foreseeable

---

[18]/    The FEIS contains detailed maps showing the various subsistence use areas. 2 FEIS 233, 3 FEIS Maps 65-80, 85, 94, 96.

EXHIBIT Z
Page 2 of 8

future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions." 40 C.F.R. § 1508.7, *Accord Earth Island Institute v. United States Forest Service*, 351 F.2d 1291, 1306 (9th Cir. 2003). Reasonably foreseeable includes only "proposed actions." *Lands Council v. Powell*, 379 F.3d 738, 746 (9th Cir. 2004).

The FEIS specifically addressed cumulative impacts.[19]/ 1 FEIS IV-401 thru 503. Plaintiffs contend that this analysis is inadequate because it did not consider the potential cumulative impacts of possible changes in the stipulations, restrictions and conditions set forth in the Northeast National Petroleum Reserve-Alaska Integrated Activity Plan/Environmental Impact Statement Record of Decision, October 7, 1998.[20]/ Plfs' Brief at 35-40. BLM did not address these impacts in the FEIS because they were deemed too speculative and beyond the scope of the FEIS.

The issue is whether the potential impacts of any future changes in the Northeast Planning Area ROD were sufficiently foreseeable at the time the Northwest FEIS was prepared that they should have been discussed in the FEIS. *Lands Council v. Powell*, 379 F.3d 738, 746 (9th Cir. 2004). This in turn depends on whether there was a proposal to change the Northeast conditions. *Id.*

Plaintiffs rely solely on timing to support the contention that there was an existing proposal to change the Northeast Planning Area ROD. Prior to the issuance of the FEIS and

---

[19]/    The cumulative impacts analysis is described in Defendants' Response to Plaintiffs' Motion for Preliminary Injunction and Rule 12(h) suggestion of Lack of Jurisdiction at 27-31. It included consideration of future leasing, exploration and development in the Northeast planning area of the NPR-A. 1 FEIS IV-413, 3 FEIS Tables IV-16 and IV-25 (future federal lease sales considered in the cumulative effects analysis included the Federal OCS, Northeast NPR-A and Northwest NPR-A); 1 FEIS IV-406, IV-409, IV-410 (cumulative effects analysis considered additional "exploration and development in the Northeast NPR-A" even while the FEIS candidly acknowledged that "the amount, nature and location of such development is unknown.")

[20]/    This ROD and the EIS prepared prior to its entry are in litigation in *The Wilderness Society et al. v. Gale Norton et al.*, No. 1:98-CV02395(RWR) (D. D.C.).

EXHIBIT 2
Page 3 of 8

the ROD for the Northwest Planning Area in November 2003, BLM had issued a press release on April 15, 2003, Exhibit 4 to Plfs' Brief, and on June 23, 2003, it published a notice of intent to amend the Northeast National Petroleum Reserve-Alaska Integrated Activity Plan/Environmental and to prepare an accompanying EIS. 68 Federal Register 37173, Exhibit 3 to Plfs' Brief. One of the purposes of this notice was to "assist in early scoping and later development of alternatives for the IAP/EIS." *Id.*[21]/

The press release and scoping notice are not sufficient to constitute a proposal. A proposal is defined in the CEQ's regulations as follows:[22]/

> *Proposal* exists at that stage in the development of an action when an agency subject to the Act has a goal and is actively preparing to make a decision on one or more alternative means of accomplishing that goal **and** the effects can be meaningfully evaluated. (Latter emphasis added)

40 C.F.R. § 1508.23. Both prongs of the regulation must be satisfied. The agency must have a goal it is actively pursuing **and** it must be far enough along in defining the goal that its effects can be meaningfully evaluated. Plaintiffs ignore the fact that in each of the cases they cite, the record before the agency showed that specific proposed timber sales or land exchanges were sufficiently definite at the time of the NEPA analysis to be evaluated meaningfully as the CEQ regulations require.

BLM declined to speculate as to the outcome of the Northeast amendment process that had just been initiated. 2 FEIS VII-194. While BLM was nearing completion of the FEIS for the Northwest NPR-A study area (notice of the FEIS was published on November 28, 2003 in 68 Fed. Reg.66824-25), the agency was only in the very early stages of soliciting

---

[21]/    "Scoping" is a specific step in the EIS preparation process. 40 C.F.R. § 1501.7. A notice of intent must precede scoping and preparation of an EIS.

[22]/    NEPA created the Council on Environmental Quality (CEQ). 42 U.S.C. § 4342. In partial fulfillment of its role under NEPA, CEQ promulgated regulations for implementation of NEPA which are codified at 40 C.F.R. Parts 1501-1508. Federal agencies are to comply with these regulations. 40 C.F.R. § 1501.4. The courts also give substantial deference to these regulations. *Methow Valley Citizens Council*, 409 U.S. at 355; *Center for Biological Diversity*, 349 F.3d at 1166.

EXHIBIT 2
Page 4 of 8

information from the public on a wide range of topics that might be included in an amendment of the Northeast NPR-A IAP. Any conjecture on the outcome of that process was, "speculative at this time." 2 FEIS VII-194 ("[f]uture changes to existing habitat protections around Teshekpuk Lake are not discussed in the cumulative impacts analysis because such changes are speculative at this time and beyond the scope of this document.")

The "call for information" in the June 2003 Federal Register notice was many steps removed from any actual amendment to the Northeast Plan and possible future development impacts. BLM had not yet proposed a preferred approach or released a draft EIS on any proposed amendment. At the time that decisions were being made on the Northwest NPR-A IAP/EIS, all that had occurred was giving of notice that BLM was "preparing an amendment" and it was seeking "information and comments on specific issues to be addressed." 68 Fed. Reg. 37173.

Even if, at the conclusion of any future Northeast amendment process, BLM ultimately decides to offer new areas in the Northeast NPR-A for lease, the areas that might be offered and the nature of the protective stipulations and conditions of any lease offering might be were not known at the time of the FEIS.

Under NEPA, agencies "need not consider potential effects that are highly speculative or indefinite." *Presidio Golf Club v. National Park Service*, 155 F.3d 1153, 1163 (9th Cir. 1998); *Sierra Club v. Marsh*, 976 F.2d 763, 768 (1st Cir. 1992). *See also Churchill County v. Norton*, 276 F.3d 1060, 1080 (9th Cir. 2001) *opinion modified, rehearing denied*, 282 F.3d 1055 (9th Cir. 2002), *cert denied*, 537 U.S. 822 (2002) (where uncertainty existed as to the extent of future actions, it was not arbitrary and capricious for the agency to find it would be speculative to analyze their cumulative impacts). NEPA does not require the agency "to consider the possible impacts of less imminent actions when preparing an impact statement on proposed actions." *Kleppe v. Sierra Club*, 427 U.S. 390, 410, note 20 (1976):

> "Should contemplated actions later reach the stage of actual proposals, impact statements on them will take into account the effect of their approval upon the existing environment, and the condition of that environment presumably will reflect earlier proposed actions and their effects."

EXHIBIT 2
Page 5 of 8

Given the very preliminary stage the June 23, 2003 Federal Register notice signaled, and the very broad range of topics on which the agency was seeking input in order to develop an amendment, it was reasonable for BLM to conclude that it was too early in the process to incorporate any specific amendment assumed by plaintiffs (i.e., decreased habitat protection for Teshekpuk Lake caribou) into the cumulative effects analysis for the Northwest NPR-A plan.

The cases cited by plaintiffs do not support their argument. The early request for general scoping information in BLM's Federal Register notice was a far cry from the "virtual certainty of the transaction and its scope" that the court found existed in *Muckleshoot Indian Tribe v. U.S. Forest Service*, 177 F.3d 800, 812 (9th Cir. 1999). In *Muckleshoot*, the court referred to specific documents that gave detailed descriptions of the Plum Creek land exchange and held that "the record reflects that the Forest Service was all but certain that the National Forest lands . . . would be included in the . . . exchange." *Id.* (Emphasis added.) Here, by contrast, the notice of intent for the Northeast amendment was indefinite and tentative, soliciting public input generally on "areas to be considered for oil and gas leasing" as well as an exceedingly broad array of other issues which might or might not be included in the amendment. 68 Federal Register 37173 (June 23, 2003). The "meaningful evaluation" of a proposal contemplated by the CEQ regulations, 40 C.F.R. § 1508.23, was impossible at this early, undefined stage, as BLM recognized. 2 FEIS VII-94.

Plaintiffs' reliance on *City of Tenakee Springs v. Clough*, 915 F.2d 1308, 1313 (9th Cir. 1990), *Neighbors of Cuddy Mountain v. U.S. Forest Service*, 137 F.3d 1372, 1378 (9th Cir. 1998), and *Thomas v. Peterson*, 753 F.2d 754, 760 (9th Cir. 1985), is equally unavailing. The Federal Register notices at issue in the *Tenakee Springs* case made available 280 million board feet of timber for immediate harvest in the next two years in five specific sub-areas of the National Forest. *Id.* at 1313. In *Cuddy Mountain*, the agency failed to adequately consider in its cumulative effects analysis the combined effects of three specifically identified timber sales in the same area as the Cuddy Mountain timber sale. *Id* at 1378. The issue of what constitutes reasonably foreseeable future actions was not even addressed in *Cuddy Mountain*.

EXHIBIT 2
Page 6 of 8

Finally, *Thomas v. Peterson* involved an issue not even in dispute in this case--whether an EA on a logging road proposal should have included an analysis of timber sale proposals because they are "connected actions" or "cumulative actions" and whether they must be evaluated together in an EIS. 753 F.2d at 758-760. *See* 40 C.F.R. § 1508.25(a)(1) and (2) (defining connected and cumulative actions).[23]/ The court determined that the logging road had no "independent utility . . . such that the agency might reasonably consider constructing only the segment in question." *Id. Thomas v. Peterson* does not discuss the issue of what constitutes reasonably foreseeable future action for purposes of a cumulative effects analysis.

In contrast, the Federal Register notice published by BLM announced only that the agency was seeking information on a broad array of issues that might be addressed in a future amendment to the Northeast NPR-A plan. *See* 68 Fed. Reg. 37173. There was no imminent prospect of leasing activity in the Teshekpuk Lake area that is in any way comparable to the pending timber sales and land exchange in the cases cited by plaintiffs in their brief. Many more interim steps would be necessary, including an actual proposal to amend the Northeast plan, before any oil and gas leasing might become more than "an extremely tentative possibility." *Park County Resources Council v. U.S. Dept. of Agriculture*, 817 F.2d 609, 623 (10th Cir. 1987).

In *Lands Council v. Powell*, 379 F.3d 738, 746 (9th Cir. 2004), the Court of Appeals affirmed a decision that certain timber sales were not yet reasonably foreseeable for cumulative impact purposes. In so doing, the court noted that these sales had not been scoped at the time of the NEPA analysis at issue. *Id.* The court also indicated that if one of the timber sales had been scoped at the time of the final EIS and Record of Decision, it "should have been included as a reasonably foreseeable activity." *Id.* n. 8. However, the proposed timber sales at issue in the *Lands Council* case were identified specifically by geographic location

---

[23]/    Plaintiffs explain that they are <u>not</u> arguing that the Northwest leasing plan and the possible Northeast amendment were "cumulative actions" that had to be evaluated together in a single EIS. Plfs' Brief at 35-36.

EXHIBIT 2
Page 7 of 8

and were far more definite than mere possible changes to the Northeast plan in this case. The *Lands Council* case should not be read as setting forth a *per se* rule that a Federal Register notice commencing scoping is a proposal sufficient to constitute a foreseeable activity, as that would read out of existence the additional requirement in 40 C.F.R. § 1508.23, that the activity must be sufficiently described that it "can be meaningfully evaluated" in order for it to be a proposal.

## V. THE FEIS ADEQUATELY DISCUSSES ALTERNATIVES

An agency is required to explore and objectively evaluate all reasonable alternatives in an EIS, and for alternatives eliminated from detailed study briefly discuss the reasons for their elimination. 40 C.F.R. § 1502.14(a). *Accord Westlands Water District v. United States Department of the Interior*, 376 F.3d 853, 868 (9th Cir. 2004). A court's review of the range of alternatives in an EIS is also reviewed under the "rule of reason." *Westlands Water District*. An agency is not required to undertake a separate analysis of alternatives that are not significantly distinguishable from the alternatives actually considered or that have similar consequences. *Id.* An agency is not required to consider alternatives that are "inconsistent with the basic policy objectives for the management of the area." *Id.* NEPA requires only that the FEIS "estimate the impacts of a likely or probable development alternative." *Northern Plains Resources Council v. Lujan*, 874 F.2d 661, 666 (9th Cir. 1989). "The 'touchstone' for courts reviewing challenges to an EIS under NEPA 'is whether an EIS's selection and discussion of alternatives fosters informed decision-making and informed public participation.'" *Westlands Water District*, 376 F.3d at 872, *quoting, California v. Block*, 690 F.2d 753, 767 (9th Cir. 1982).

Plaintiffs allege two deficiencies in the alternatives analysis. First, plaintiffs argue that the FEIS failed to consider a "middle-ground" alternative, which would allow for some oil and gas exploration and development in the planning area, while at the same time protecting some of the most important wildlife areas by placing them off limits to leasing. Plfs' Brief at 12, 14. Second, plaintiffs argue that the FEIS did not adequately explain why an alternative submitted by one of the plaintiff organizations during the public comment process (the

EXHIBIT 2
Page 8 of 8