No. 05-35085

———————

IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

———————

NORTHERN ALASKA ENVIRONMENTAL CENTER, ET AL.,

Plaintiff-Appellants,

v.

GALE NORTON, SECRETARY OF THE INTERIOR, ET AL.,

Defendant-Appellees,

and

ARCTIC SLOPE REGIONAL CORPORATION, ET AL.,

Intervenor-Defendant-Appellees.

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

———————

BRIEF FOR THE DEFENDANT-APPELLEES GALE NORTON, ET AL.

———————

OF COUNSEL:

LAURI J. ADAMS
Office of the Regional Solicitor
Anchorage, Alaska

KELLY A. JOHNSON
Acting Assistant Attorney General

DEAN K. DUNSMORE
MARTIN LaLONDE
ROBERT GULLEY
JOHN A. BRYSON
Attorneys, Department of Justice
Washington, D.C.  20530
(202) 514-2740

EXHIBIT 4
Page 1 6

Because an EIS need not discuss every conceivable alternative or alternatives that are not significantly distinguishable from each other, BLM was not required to consider the Audubon proposal further. *Westlands Water District*, 376 F.2d at 871; *Headwaters, Inc.*, 914 F.2d at 1181.

    D. <u>BLM was not required to evaluate as a cumulative effect the possible changes in restrictions applicable in the Northeast Planning Area</u>. – Under NEPA, BLM was required to evaluate any cumulative impact, which is defined as "the impact on the environment that results from the incremental impact of the action when added to past, present, and reasonably foreseeable future actions . . . ." 40 C.F.R. § 1508.7. The FEIS here specifically addressed cumulative impacts. FEIS IV-401 thru 503 (SER 687-789). That evaluation included consideration of future leasing, exploration and development in the Northeast Planning Area of the NPR-A. FEIS IV-406 (cumulative effects analysis considered additional "exploration and development in the Northeast NPR-A"), IV-409, IV-410, IV-413; Tables IV-16 and IV-25 (SER 692, 695, 696, 699, 1483, 1494). NAEC contends (Br. 35-39) that this analysis is inadequate because it did not consider the potential cumulative impacts of possible specific changes in the stipulations, restrictions and conditions set forth in the 1998 ROD for the Northeast Planning Area.

-44-

Under NEPA, agencies "need not consider potential effects that are highly speculative or indefinite." *Presidio Golf Club v. National Park Service*, 155 F.3d 1153, 1163 (9th Cir. 1998), *quoting Sierra Club v. Marsh*, 976 F.2d 763, 768 (1st Cir. 1992). *See also Churchill County v. Norton*, 276 F.3d 1060, 1080 (9th Cir. 2001) *opinion modified, rehearing denied*, 282 F.3d 1055 (9th Cir. 2002). NEPA does not require the agency "to consider the possible environmental impacts of less imminent actions when preparing the impact statement on proposed actions." *Kleppe v. Sierra Club*, 427 U.S. 390, 410, n. 20 (1976).

NAEC relies solely on timing to support the contention that possible changes in the Northeast Planning Area ROD were reasonably foreseeable. Prior to the issuance of the FEIS for the Northwest Planning Area in November 2003, BLM had issued a press release on April 15, 2003, and on June 23, 2003, it published a notice of intent to amend the Northeast ROD and to prepare an accompanying EIS. (ER 44, 129-130). One of the purposes of this notice was to "assist in early scoping and later development of alternatives for the IAP/EIS." (ER 129).

BLM reasonably declined to speculate as to the outcome of the Northeast amendment process that had just been initiated. FEIS VII-194. While BLM was nearing completion of the FEIS for the Northwest NPR-A study area, the agency was only in the very early stages of soliciting information from the public on a

EXHIBIT    4
Page   3   of   6

wide range of topics that might be included in an amendment of the Northeast

NPR-A IAP.  Any conjecture on the outcome of that process was, "speculative at

this time." FEIS VII-194 (ER 555) ("[f]uture changes to existing habitat protections

around Teshekpuk Lake are not discussed in the cumulative impacts analysis

because such changes are speculative at this time and beyond the scope of this

document.")

The "call for information" in the June 2003 Federal Register notice was

many steps removed from any actual amendment to the Northeast Plan and possible

future development impacts.  BLM had not yet proposed a preferred approach or

released a draft EIS on any proposed amendment.  At the time that decisions were

being made on the Northwest NPR-A IAP/EIS, all that had occurred was giving of

notice that BLM was "preparing an amendment" and it was seeking "[i]nformation

and comments on specific issues to be addressed." 68 Fed. Reg. 37173 (ER 129).

Even if, at the conclusion of any future Northeast amendment process, BLM

ultimately decides to offer new areas in the Northeast NPR-A for lease, the areas

that might be offered and the nature of the protective stipulations and conditions of

any lease offering were not known at the time of the FEIS.  Given the very

preliminary stage the June 23, 2003 Federal Register notice signaled, and the very

broad range of topics on which BLM agency was seeking input, it was reasonable

EXHIBIT   4
Page   4   of   6

for BLM to conclude that it was too early in the process to incorporate any specific amendment assumed by NAEC (i.e., decreased habitat protection for Teshekpuk Lake caribou) into the cumulative effects analysis for the Northwest NPR-A plan.

The cases relied on by NAEC do not support their contrary argument. In each case, the record showed that specific proposed timber sales or land exchanges were before the agencies at the time of the NEPA analysis at issue in those cases. The early request for general scoping information in BLM's Federal Register notice was a far cry from the "virtual certainty of the transaction and its scope" that the court found existed in *Muckleshoot Indian Tribe v. U.S. Forest Service*, 177 F.3d 800, 812 (9th Cir. 1999). Here, the notice of intent for the Northeast amendment was indefinite and tentative, soliciting public input generally on "areas to be considered for oil and gas leasing" as well as an exceedingly broad array of other issues which might or might not be included in the amendment. 68 Fed. Reg. 37173 (ER 129). Many more interim steps would be necessary, including an actual proposal to amend the Northeast plan, before any oil and gas leasing might become more than "an extremely tentative possibility." *Park County Resources Council v. U.S. Dept. of Agriculture*, 817 F.2d 609, 623 (10th Cir. 1987).

Further, the Federal Register notices in the *City of Tenakee Springs v. Clough*, 915 F.2d 1308, 1313 (9th Cir. 1990), made available 280 million board

EXHIBIT 4
Page 5 of 6

feet of timber for immediate harvest in the next two years in five specific sub-areas of the National Forest. *Id.* at 1313. In *Neighbors of Cuddy Mountain v. U.S. Forest Service*, 137 F.3d 1372, 1378 (9th Cir. 1998), the agency failed to adequately consider the combined effects of three specifically identified timber sales in the same area as the Cuddy Mountain timber sale. *Id* at 1378. The issue of what constitutes reasonably foreseeable future actions was not even addressed in *Cuddy Mountain.*

Finally, *Thomas v. Peterson*, 753 F.2d 754, 760 (9th Cir. 1985), involved a different issue – whether an EA on a logging road proposal should have included an analysis of timber sale proposals because they are "connected actions " or "cumulative actions" and whether they must be evaluated together in an EIS. 753 F.2d at 758-760. *Id. Thomas v. Peterson* does not discuss the issue of what constitutes reasonably foreseeable future action for purposes of a cumulative effects analysis.

E. The FEIS contains a reasonable discussion of mitigation. – An EIS must include a discussion of possible mitigation measures in sufficient detail that the environmental consequences of the measures are fairly evaluated. *Robertson v. Methow Valley Citizens Council*, 490 U.S. at 351-53; *Westlands Water District,*

EXHIBIT 4
Page 6 of 6