1

DEPARTMENT OF THE INTERIOR

Bureau of Land Management

National Petroleum Reserve - Alaska, Oil and Gas Lease Sale 2006

AGENCY:    Bureau of Land Management, Alaska State Office

ACTION:    Detailed Statement of Sale

### 1. Authority.

The Bureau of Land Management (BLM) is issuing this detailed statement of sale under the authority of the Department of the Interior Appropriations Act (P.L. 96-514; the Naval Petroleum Reserves Production Act of 1976 (42 U.S.C. 6504 et seq.), as amended; the Federal Land Policy and Management Act of 1976, except that sections 202 and 603 do not apply (43 U.S.C. 1701 et. seq.), as amended; and the regulations in Title 43 of the Code of Federal Regulations (CFR) Part 3130. Pursuant to 43 CFR 3131.4-1(a), a Notice of Availability of this Detailed Statement must be published in the Federal Register at least 30 days prior to September 27, 2006, the scheduled date of sale.

The lands described in this statement are being offered for competitive oil and gas lease by sealed bid to the highest qualified bidder. The United States reserves the right to withdraw any tract from this sale prior to issuance of a written acceptance of a bid. Also reserved is the right to reject any and all bids received for any tract, regardless of the amount offered. Locator Maps and descriptions of tracts being offered are provided in the Exhibits of this Detailed Statement of Sale.

The tracts being offered in this sale are within the Northeast NPR-A Planning Area and the Northwest NPR-A Planning Area, and are subject to stipulations and required operating procedures established by each respective Record of Decision (ROD). These tracts are listed in Exhibits C, D, and E. Stipulations and Required Operating Procedures (ROPs) are in Exhibits F and G. Tracts affected by the site-specific K stipulations are identified in the tract descriptions in Exhibits C, D, and E by reference designation, such as "K-1(h)".

### 2. Litigation Summary.

There are two pending lawsuits challenging BLM decisions to open the northeast portion of the NPR-A to oil and gas leasing: Wilderness Society, et al. v. Norton, et al., No. 1:98-02395 CV (D.D.C.) and National Audubon Society, et al. v. Norton, J05-088 CV (D. Alaska). Both cases have been fully briefed (the Wilderness Society case to the D.C. Federal District Court and the National Audubon case to the Alaska Federal District Court), and decisions on both cases are pending. Bidders are advised to check the status of these cases prior to submitting a bid on a subject parcel.

Ex. C, p. 1

### 3. <u>Minimum Bid, Yearly Rental, and Royalty System</u>.

The lands described herein are offered for competitive oil and gas lease sale by sealed bid to the qualified bidder submitting the highest bonus bid in accordance with the statutory and regulatory authorities cited above. The minimum bid, yearly rental, and royalty rate that apply to this sale are specified below.

The minimum bid amount stated below is the minimum amount acceptable to be considered a valid bid. To ensure that the Government receives fair market value for the conveyance of lease rights in this sale, each tract receiving a bid will be evaluated to determine its fair market value. Any bid which does not meet or exceed the fair market value may be rejected.

Leases issued as a result of this sale will have primary terms of ten (10) years.

| Variable | High Potential Tracts | Low Potential Tracts | Tracts A thru G |
|---|---|---|---|
| Tract Size | ¼ township ( $\pm$ 5,760 acres) | ½ township ( $\pm$ 11, 500 acres) | 40,000 to 60,000 acres |
| Minimum Bid | $25.00 or more per acre or fraction thereof | $5.00 or more per acre or fraction thereof | $25.00 or more per acre or fraction thereof |
| Fixed Royalty Rate | 16 2/3 percent | 12 ½ percent | 16 2/3 percent |
| Rental Rate | $5.00 per acre or fraction thereof | $3.00 per acre or fraction thereof | $3.00 per acre or fraction thereof |

### 4. <u>Description of the Areas Offered for Bids</u>.

Land status data regarding tracts offered for lease may be found on the official plats available for review or sale at $1.10 each in the BLM Public Room located on the first floor of the Federal Building and Courthouse, 222 W. Seventh Avenue, #13, Anchorage, Alaska 99513-7599. These tracts are shown on the Locator Maps of Exhibit A and B and are described in detail in Exhibit C, D, and E of this Detailed Statement of Sale.

### 5. <u>Lease Terms and Stipulations</u>.

(a) Leases resulting from this sale will have initial terms of 10 years. A copy of the lease form is available as Exhibit N of this statement.

(b) The applicability of standard and special lease stipulations and required operating procedures are explained in Exhibits F for the Northeast and G for the Northwest. The standard

3

stipulations will become a part of all leases. The special stipulations affecting each tract are identified in the tract descriptions on Exhibits C, D, and E and will become a part of the leases for those tracts.

### 6.  Acreage and Land Status.

The acreage shown above is only a general approximation. The acreage for each tract is shown on Exhibits C, D, and E. The successful bidders will be advised of any required adjustments (additional payments or refunds) to the advanced rental payments prior to lease issuance. High bonus bids will be based on the highest bid per tract, and will not be affected by such acreage adjustments. Tracts may be subject to encumbrances such as conveyances to Native Allottees, or by Air Navigation Sites or other surface ownership or uses which may restrict surface access. Responsibility for assessing the existence of, and importance of, encumbrances rests with bidders. An oil and gas lease does not in itself authorize any on-the-ground activity

### 7. Split Estate Parcels.

The lessee will be responsible for negotiating any surface use and access issues with the surface owner or managing surface agency for split-estate lands. For Native Allotments, the lessee must also obtain approval from the Bureau of Indian Affairs. If a bidder wants to review the land status of particular tracts prior to bidding, details for obtaining the pertinent status plats are found at paragraph 4.

For applicants bidding on tracts with no surface occupancy allowed, the lessee is responsible for making appropriate arrangements with the BLM and the adjacent lessee to obtain an easement for using an adjacent tract to establish a drilling pad. While the BLM has the sole authority to issue such an easement, coordination with the adjacent lessee is required to assure the easement does not materially interfere with that lessee's operations. The cost of the easement will be in addition to the costs of the bonus bid and rentals paid on the leased tract per 43 CFR 3131.4-1. The format of this lease sale utilizes a bidding system based upon bidding systems included in Section 205(a)(1)(H) of the Outer Continental Lands Act Amendments of 1978 (43 U.S.C.1801, et. seq.)

### 8. Filing of Bids.

Bidders must comply with the following requirements and all other provisions of applicable law. Times specified hereafter are Alaska Standard Time unless otherwise indicated.

(a) No bid will be accepted for less than an entire tract as described in Exhibits C, D, and E. For each tract bid upon, a bidder must submit a separate signed bid in a sealed envelope labeled "Sealed Bid for NPR-A Oil and Gas Lease Sale Tract No. 2006-(alpha-numeric designation or alpha-alpha, as appropriate i.e. 2006-H-000, 2006-L-000, or 2006-H-A)" for the Northeast or 2006-000 for the Northwest, not to be opened until 9 a.m., September 27, 2006 at the Wilda Marston Theater, located at the Loussac Library. The total amount bid must be in a

4

whole dollar amount (U.S. dollars); any cent amount above the whole dollar will be ignored by the BLM. Details of the information required on the bid(s) and the bid envelope(s) are specified in the document "Bid Form and Envelope" included as Exhibit I.

Each bid must be accompanied by a bid deposit of 1/5th the amount of the bonus bid amount in U.S. currency or by certified or cashier's check, bank draft, or certified check, payable to the Department of the Interior, Bureau of Land Management. This deposit will be forfeited if a bidder, after being determined the highest qualified bidder, fails to sign the lease or otherwise comply with applicable regulations.

Bidders submitting joint bids must state on the bid form (Exhibit K) the proportionate interest of each participating bidder, in percent to a maximum of five decimal places, e.g., 33.33333 percent. The BLM may require bidders to submit other documents in accordance with 43 CFR Part 3130 et. seq. The BLM warns bidders that they are bound by 18 U.S.C. 1860 which prohibits unlawful combination or intimidation of bidders. In accordance with 43 CFR 3132.5(b), "The United States reserves the right to reject any and all bids received for any tract, regardless of the amount offered."

Submission of a bid constitutes certification of compliance with the regulations found in 43 CFR 3130 et. seq. Per 43 CFR 3132.2(c), each bid shall be accompanied by a anyone seeking to acquire a Federal oil and gas lease may be required to submit additional information to show compliance with the regulations. A statement to this effect must be included on each bid (see the document "Bid Form and Envelope" contained in the Detailed Statement Package as Exhibit I).

    (b) Sealed bids must be received by the Department of the Interior's BLM Alaska State Office, 222 West Seventh Avenue #13, Anchorage, Alaska 99513-7599, during normal business hours (8 a.m. to 3:45 p.m.) until the Bid Submission Deadline at 3:45 p.m., September 22, 2006. If bids are received later than the time and date specified above, they will be returned unopened to the bidders. Bidders may not modify or withdraw their bids unless the BLM receives a written modification or written withdrawal request prior to 3:45 p.m. September 22, 2006.

    (c) Bid Opening Time will be 9:00 a.m., September 27, 2006, at the Wilda Marston Theater located at the Loussac Library. The opening of the bids is for the sole purpose of publicly announcing and recording the bids received, and no bids will be accepted or rejected at that time.

    (d) Natural Disasters. In the event of a natural disaster or any other force majeure, the Alaska State Office may extend the bid submission deadline. Bidders may call (907) 271-5960 for information about the possible extension of the bid submission deadline due to such an event.

5

**9.  Deposit of Payment**.

Any payments made in accordance with paragraph 8(b) will be deposited by the Government in a non-interest-bearing account during the period the bids are being considered.  Such a deposit does not constitute and shall not be construed as acceptance of any bid on behalf of the United States.

**10.  Acceptance, Rejection, or Return of Bids**.

No lease for any tract will be awarded to any bidder, unless, in addition to compliance with all procedures set forth at 43 CFR 3132.5:

(a)  the bidder has complied with all requirements of this Detailed Statement of Sale, including the requirements listed on documents contained therein, and the applicable regulations;

(b)  the bid is the highest valid bid; and

(c)  the amount of the bid has been determined by the authorized officer to be at or above fair market value.

No bid will be considered for acceptance unless it provides for a bonus bid as specified in paragraph 3 above.  Any bid submitted which does not conform to the requirements of this Detailed Statement of Sale, the laws and regulations cited in above, and other applicable regulations may be returned to the person submitting that bid by the BLM and not considered for acceptance.

**11.  Successful Bidders**.

In addition to other conditions imposed by applicable law, the following requirements apply to successful bidders in this sale:

(a)  Lease Issuance.  The BLM will require each person who has submitted a bid accepted by the authorized officer to execute copies of lease Form AK-3130-1 (March 2002) shown as Exhibit N of this statement, pay the balance of the bonus bid along with the first year's annual rental for each lease issued in accordance with the requirements of 43 CFR 3132.3, and satisfy the bonding requirements of 43 CFR 3134.

(b)  Who May Hold A Lease.  In accordance with 43 CFR 3132.1, a lease issued may be held only by:
(1)  Citizens and nationals of the United States;
(2)  Aliens lawfully admitted for permanent residence in the United States as defined in 8 U.S.C. 1101(a)(20);
(3)  Private, public or municipal corporations organized under the laws

6

of the United States or of any State or of the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, or any of its territories; or

(4) Associations of such citizens, nationals, resident aliens or private, public, or municipal corporations.

(c) <u>Bonding Requirements</u>. Pursuant to 43 CFR 3134 et. seq., prior to issuance of a lease, an individual lease surety or personal bond must be furnished to the Authorized Officer in the sum of $100,000 conditioned on compliance with all the lease terms and in accordance with the provisions of 43 CFR 3104.1, including rentals and royalties, and stipulations. An individual lease bond will not be required if a bidder already maintains or furnishes an NPR-A wide bond in the sum of $300,000 conditioned on compliance with the terms, conditions, and stipulations of all oil and gas leases held by the bidder within the NPR-A, or maintains or furnishes a nationwide bond as set forth in 43 CFR 3104(b) and furnishes a rider thereto sufficient to bring total coverage to $300,000 to cover the bidder's oil and gas leases within NPR-A. A copy of the bond form is included in the Detailed Statement of Sale Package as Exhibit L.

### 13. **Supplemental Lease Terms.**

Supplemental lease terms are identified on a document titled, "Supplemental Lease Terms" as Exhibit H. These supplemental lease terms will become part of all leases.

### 14. **Information to Lessees.**

1. The Northwest and Northeast Planning Area Records of Decision (RODs) established Required Operating Procedures (ROP's) for lands covered by the RODs. These are pre-application requirements, procedures, management practices, or design features that BLM has adopted as operational requirements. These requirements will be addressed through the permitting process. An oil and gas lease does not in itself authorize any on-the-ground activity. Seismic operations, drilling, ice road construction, pipeline construction, etc. require additional land use authorizations. Any applicant requesting such authorization will have to address the required operating procedures either before submitting the application (e.g., subsistence consultation, brant surveys) or as part of the application proposal (e.g., proposal states garbage will not be buried, or pipelines and roads will be separated by 500 ft or more). Requirements that are met prior to submission of the application, as well as procedures, practices, and design features that are an integral part of a proposal, do not need to be stipulated in a permit or lease. Because ROP's are operational requirements, not lease stipulations, their applicability goes beyond the oil and gas leasing to any permitted activity where the requirement is relevant.

The Authorized Officer (AO) may add more restrictive stipulations as determined necessary by further NEPA analysis and as developed through consultation with other federal, state, and NSB regulatory and resource agencies. Laws or regulations may require other federal, state, and NSB permits (e.g., Clean Water Act [CWA] Section 404) for an oil and gas project to proceed. Specific state permits are required when the state has authority, under federal or state law or regulation, to enforce the provision in question. Specific permits issued by federal agencies other

than BLM could include permit conditions that are more stringent than those identified in the ROD.

Appendix B of the respective RODs provides the Stipulations and ROPs for each planning area. A thorough discussion of ROPs is in each Appendix; we have provided the language contained therein as Exhibits F and G of this Detailed Statement of Sale.

2. On April 11, 2002, the Final Rulemaking was published in the Federal Register establishing the NPR-A regulations providing for unitization, lease suspensions, and subsurface storage agreements.

3. Energy Policy Act of 2005  On August 8, 2005, the Energy Policy Act of 2005 was signed into law. The Act allows lessees to extend NPR-A leases by virtue of drilling a well "capable" of producing in paying quantities, allows lessees to renew leases for a period of 10 years if there is an oil and gas discovery that is not capable of producing in paying quantities, and allows lessees to renew leases for a period of 10 years without a discovery for a fee of $100 per acre provided exploration has been pursued diligently. Prior to the Act being passed, leases in the NPR-A were issued for a period of 10 years and lessees could only extend the leases by actual production. The BLM has issued a proposed rulemaking to implement the change in lease terms mandated by the Act and the final regulations should be in effect by this time next year. The change in lease terms mandated by the Act will be applicable to all existing leases and all leases issued through this lease sale.

4. Conservation of Surface Values for Northwest and Northeast NPR-A Planning Area Lands

The lessee, his agents, contractors, subcontractors and operators (hereafter referred to as "Lessee") will operate within the resource management policy of the Bureau of Land Management (BLM). This policy is outlined in the National Petroleum Reserves Production Act of 1976 (NPRPA) (90 Stat. 303), as amended, and the Federal Land Policy and Management Act (40 U.S.C. 1701 et seq.) which states that " . . . public lands will be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resources, and archeological values . . . that will provide food and habitat for fish and wildlife and domestic animals; and that will provide for outdoor recreation and human occupancy and use . . . " The Lessee will be required to protect these identified resource values and to operate in a manner which minimizes environmental impacts to physical, biological, cultural and aesthetic resources. Areas requiring special protection are identified by the Northeast National Petroleum Reserve-Alaska Final Integrated Activity Plan / Environmental Impact Statement and the related Record of Decision. In this regard, the NPRPA also provides "Any exploration within the Utukok River, the Teshekpuk Lake areas, and other areas designated by the Secretary of the Interior containing any significant subsistence, recreational, fish and wildlife, or historical or scenic value, shall be conducted in a manner which will assure the maximum protection of such surface values to the extent consistent with the requirements of this Act for the exploration of the reserve. (42 U.S.C. 6504(b)). These requirements apply to both exploration and production under this lease sale (42 U.S.C. 6508). Operational procedures

8

designed to protect resource values will be cooperatively developed during Surface Use Plan preparation, and additional protective measures may be required beyond the standard and special stipulations identified in the above-referenced documents.

Prior to entry upon the National Petroleum Reserve in Alaska (NPR-A) for purposes of conducting geophysical operations, the Lessee shall obtain a permit authorizing specific geophysical exploration activities from the BLM Northern Field Office. Such permit shall provide for conditions, restrictions, and prohibitions as the Authorized Officer deems necessary or appropriate to mitigate reasonably foreseeable and significant adverse effects upon the surface resources, including bonding for geophysical activities not covered by a lease bond, NPR-A-wide bond or Nationwide bond with NPR-A and geophysical exploration riders.

Lessee's activities are subject to all federally approved coastal zone plans and ordinances. A Lessee requesting a federal permit on the lease (e.g., an Application for Permit to Drill) must acquire a state consistency determination.

The Lessee shall comply with all federal laws and regulations, including rules and regulations of the Secretary of Health and Human Services, the Environmental Protection Agency, and state and local laws and codes governing the emission or discharge of pollutants from activities which are embraced in the lease permit. Surface disturbing activities may be prohibited during muddy and/or wet soil periods. This limitation does not apply to operations and maintenance of producing wells using authorized roads. During periods of adverse conditions due to climatic factors, all activities creating irreparable impacts may be suspended. The lessee is advised that during the conduct of all activities related to leases issued as a result of this lease sale, it will be subject to the 43 CFR 3130 and the 43 CFR 3160 regulations and to the provisions of the Onshore Oil and Gas Order No. 1. BLM will add such site specific stipulations derived from the Environmental Assessment / Environmental Impact Statement and the adjoining field examination, as necessary, to insure conservation of resource values. These will be in addition to stipulations attached to and made a part of each oil and gas lease.

5. Early Filing of APD Recommended

The Lessee, the Authorized Officer, and Northern District Office representatives should hold a conference at least one year prior to each specific drill site occupation to discuss pertinent stipulations, applicable regulations, other permits, and any research survey and/or analysis and report formats required of the Lessee to complete the APD or to be considered in the formulation of a drilling plan. Common practice dictates that Environmental Assessments / Environmental Impact Statements and staking must coincide with the snow-free season.

It is recommended that APDs be filed by early to mid-summer and at least six months prior to proposed commencement of drilling operations. This will aid BLM in completing necessary surface and environmental field inspections which can be completed only during the summer months. It will also provide the time required to gather site specific subsistence information and allow for analysis and coordination with other federal, state, and local entities. Early filing of an

9

APD will provide a greater likelihood of a timely decision.

### 6. Other Permits

The Lessee is responsible for obtaining all required federal, state, local, or private permits and authorizations prior to commencing any operations.

### 7. Gravel Extraction

The oil and gas lease does not entitle the Lessee to NPR-A gravel resources. Use of federal gravel resources must be in compliance with BLM regulations, which require, among other things, that a mineral material sale contract be obtained from the appropriate office (Northern District Office) for the purpose of gravel extraction and use. Use of sand and gravel from Congressionally approved Native Allotments must be arranged with the allottee and the Bureau of Indian Affairs. The Lessee is advised that gravel is basically a scarce commodity within the Reserve, so conservation of gravel is of utmost concern.

### 8. Equal Employment Opportunity

The Lessee is advised that, during the period of operations within NPR-A, the Lessee will ensure equal employment opportunity consistent with the authority contained in Section 10 of the Oil and Gas Lease Form.

### 15. **Detailed Statement of Sale**.

Copies of this statement and the individual Exhibits contained therein are available from the BLM Alaska State Office, either by written request or by telephone request at (907) 271-5960.

The following Exhibits are included in the statement and contain additional information essential for bidders. Bidders are expected to understand the information contained therein.

**Exhibit A:**    Locator Map Northeast Area Tracts Offered

**Exhibit A-1:**  Record of Decision Map 1

**Exhibit A-1.1** Record of Decision Map 1 a

**Exhibit B:**    Locator Map Northwest Area Tracts Offered (includes the NE/NW split tracts).

**Exhibit B-1**   Record of Decision Map

**Exhibit C:**    Description of Northeast Planning Area Tracts Offered

10

**Exhibit D:**   Description of Northwest Planning Area Tracts Offered

**Exhibit E**   Description of split Northwest/Northeast Planning Areas Tracts
Offered

**Exhibit F:**   Appendix B of the NE Record of Decision with Stipulations and Required
Operating Procedures

**Exhibit G:**   Appendix B of the NW Record of Decision with Stipulations and
Required Operating Procedures

**Exhibit H:**   Supplemental Lease Terms

**Exhibit I:**   Bid Form and Envelope

**Exhibit J:**   Bidder Contact Form

**Exhibit K:**   Oil and Gas Lease Bond Form 3000-4 (This form may be used for lease,
statewide, nationwide, or NPR-A-wide bonds)

**Exhibit L:**   Geophysical Exploration Rider Form for Use with NPR-A-wide bonds

**Exhibit M:**   Lease Form AK-3130-1(March 2002)