Jeffrey W. Leppo
Laura J. Beveridge
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, Washington 98101
Phone: (206) 624-0900
Fax: (206) 386-7500
Email: jwleppo@stoel.com
Email: ljbeveridge@stoel.com

*Attorneys for Intervenor-Defendant
Anadarko Petroleum Corporation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATIONAL AUDUBON SOCIETY, ALASKA WILDERNESS LEAGUE, CENTER FOR BIOLOGICAL DIVERSITY, NATURAL RESOURCES DEFENSE COUNCIL, NORTHERN ALASKA ENVIRONMENTAL CENTER, SIERRA CLUB, and THE WILDERNESS SOCIETY, ) ) ) ) ) ) ) | Case No. <u>1:05-CV-00008-JKS</u> |
| Plaintiffs, ) | |
| v. ) ) | |
| DIRK KEMPTHORNE, Secretary of the Interior; HENRI BISSON, State Director, Bureau of Land Management; TOM MELIUS, Regional Director, United States Fish and Wildlife Service; BUREAU OF LAND MANAGEMENT; UNITED STATES FISH AND WILDLIFE SERVICE; and the UNITED STATES DEPARTMENT OF THE INTERIOR, ) ) ) ) ) ) ) ) | |
| Defendants, and ) ) | |
| CONOCOPHILLIPS ALASKA, INC., ANADARKO PETROLEUM CORPORATION, ARCTIC SLOPE REGIONAL CORPORATION, and the STATE OF ALASKA, ) ) ) ) ) | |
| Intervenor-Defendants ) | |

**INTERVENOR-DEFENDANTS ARCTIC SLOPE REGIONAL CORPORATION, ANADARKO PETROLEUM CORPORATION, AND THE STATE OF ALASKA'S REBUTTAL BRIEF**

**National Audubon Society, et al. v. Kempthorne, et al.**
1:05-CV-00008-JKS

Plaintiffs' response to the Preliminary Memorandum Decision ("Preliminary Decision") recycles arguments previously made in their briefing on the merits and fails to establish that the Court's conclusions in sections I.A, I.C, and III of the Preliminary Decision are based on either a factual or legal error.  Accordingly, Plaintiffs have not provided the Court with a reason to alter its preliminary determinations that the Bureau of Land Management ("BLM") was not required to issue a supplemental environmental impact statement ("EIS") on the Final Preferred Alternative, that BLM took a hard look at impacts related to global climate change in the Final Amended Integrated Activity Plan/Environmental Impact Statement ("FEIS"), and that BLM's final decision complies with both the National Petroleum Reserves Production Act ("Production Act") and the Administrative Procedure Act ("APA").

## I.     BLM WAS NOT REQUIRED TO ISSUE A SUPPLEMENTAL EIS

The Preliminary Decision correctly finds that the Final Preferred Alternative, which was developed in response to public comments on the draft EIS, did not require issuance of a supplemental EIS.  Preliminary Decision, § I.A.  Plaintiffs nonetheless persist in their attempt to convince the Court that certain mitigation measures in the Final Preferred Alternative are "new" and "untested" and that BLM's failure to circulate a supplemental EIS prevented agencies, like the Fish & Wildlife Service ("FWS"), from "analyzing" the Final Preferred Alternative.  As demonstrated below, Plaintiffs' factual contentions are contradicted by the administrative record and, in any event, do not provide the Court with a basis for changing its preliminary determination.

First, Plaintiffs contend that the Court has "misstated the essential features" of the Final Preferred Alternative.  Specifically, Plaintiffs argue that the 300-acre limitation on surface disturbance on lease tracts north of Teshekpuk Lake is a "new" approach because it is a limitation on the number of acres that can be disturbed rather than the location of that disturbance.  This is a distinction without a difference.  Plaintiffs obscure the fact that the 300-acre limitation *is* based on the location of sensitive resources.  The 300-acre limitation, which is imposed by the K-11 Stipulation, only applies to lease tracts in the designated goose molting area.  ROD at 74, Map A1; FEIS at 2-54 to 2-55.  In addition, the K-11 Stipulation must be viewed in conjunction with the K-4 Stipulation, which further limits the location of surface activity on lease tracts north of Teshekpuk Lake by imposing a no-surface occupancy ("NSO")

**National Audubon Society, et al. v. Kempthorne, et al.**
1:05-CV-00008-JKS

restriction in and around goose molting area lakes. ROD at 40, Map A1; FEIS at 2-51 to 2-52. Moreover, contrary to Plaintiffs, FWS did review and comment on the Final Preferred Alternative. In an email to BLM, FWS recognized that the NSO restriction on goose molting area lakes and the 300-acre limitation were designed to work together to protect goose molting habitat. Pls. Opening Br., Ex. 35 (AR 5030).[1] As emphasized in Intervenors' Response Brief, the 300-acre limitation on surface disturbance is an additional mitigation measure imposed in response to the broad range of comments received on the draft EIS and is consistent with BLM's resource-based approach to protecting surfaces resources in the Petroleum Reserve. It is not a "dramatic departure" necessitating a supplemental EIS. See Intervenors' Resp. Br. at 24-25.[2]

Similarly, Plaintiffs' assertion that the Court erroneously described the Final Preferred Alternative as providing greater protection than Alternative B does not require the Court to alter its preliminary determination regarding the need for a supplemental EIS. BLM did find that the Final Preferred Alternative provides many Northeast Planning Area surface resources with a greater degree of protection than Alternative B and other resources with a similar level of protection. See, e.g, FEIS at 2-131 (impacts on air quality are expected to be "slightly lower" under Final Preferred Alternative than Alternative B); id. at 2-132 to 2-135 (soil disturbance, water resources, water quality, vegetation, and fish impacts are expected to be less under Final Preferred Alternative); id. at 2-138 (impacts to birds throughout Northeast Planning Area are expected to be less under Final Preferred Alternative than Alternatives B and C); id. at 2-140, 2-142, 2-145 (effects on caribou, subsistence harvest patterns, and listed species will be similar to those expected under Alternative B). In addition, BLM acknowledged that a few resources would experience greater impacts under the Final Preferred Alternative. See, e.g., id. at 2-141 (indicating that impacts to marine mammals could be greater under Final Preferred Alternative); id. at 4-360 to 4-361 (impacts within goose molting area closed under Alternative B may be greater under Final Preferred Alternative). However, none of these conclusions requires BLM to

---

[1] Elsewhere in the record, FWS itself advocated limiting the amount of acreage disturbed as a way to protect goose molting areas. Intervenors' Resp. Br., Exs. K (AR 4430), M (AR 4500), and O (AR 4505).
[2] The Preliminary Decision accurately captures the unworkable implications of Plaintiffs' position. As the Court recognizes, if Plaintiffs are correct then federal agencies would be required to issue a supplemental EIS every time they tried to find a compromise between conflicting comments. Preliminary Decision at 11; see also Kettle Range Conservation Group v. U.S. Forest Serv., 148 F. Supp. 2d 1107, 1121 (E.D. Wash. 2001).

**National Audubon Society, et al. v. Kempthorne, et al.**
1:05-CV-00008-JKS

2

issue a supplemental EIS where, as here, the Final Preferred Alternative is a reasonable response to public comment and falls within the range of alternatives addressed in the draft EIS. See Half Moon Bay Fishermans' Mktg. Ass'n v. Carlucci, 857 F.2d 505, 508-09 (9th Cir. 1988); see also Intervenors' Resp. Br., § III.C.1.a-b; Preliminary Decision at 11.

Nor is BLM's decision to open the goose molting area north of Teshekpuk Lake to leasing a reason to issue a supplemental EIS. As explained in Intervenors' Response Brief, the possibility that the goose molting area would be open to leasing was on the table from the start of the administrative process. Intervenors' Resp. Br. at 24. In addition, the record provides no support for Plaintiffs' continued speculation that deferral of Teshekpuk Lake was meant to be a "substitute" for opening the goose molting area. Id. at 25 (explaining the Teshekpuk Lake was deferred on its own merits as an important subsistence resource and wildlife habitat); FEIS at 6-373 to 6-374. Other than representing arguments preliminarily rejected by this Court, the sole point of Plaintiffs' discussion of the goose molting area appears to be the opportunity to allude to unidentified newspaper articles regarding pipeline impacts. Not only is this extra-record information irrelevant here, Plaintiffs' argument is based on the flawed assumption that closing an area to subsurface oil and gas leasing will prevent all surface activity. BLM can still authorize exploration activities and grant rights-of-way for pipelines and other infrastructure in areas of the Petroleum Reserve that are closed to leasing. 42 U.S.C. § 6502 (Secretary may grant rights-of-way, licenses, and permits necessary to fulfill goals of Production Act); FEIS at 2-17 (indicating BLM may grant rights-of-way for pipelines subsequent to leasing); 43 C.F.R. pt. 3150 (regarding exploration activities).

Finally, Plaintiffs argue, once again, that had BLM circulated a supplemental EIS, FWS would have submitted detailed comments analyzing the Final Preferred Alternative. However, FWS was aware of the Final Preferred Alternative, and as discussed in Intervenors' Response Brief, integrally involved in its development. See Intervenors' Resp. Br. § III.C.1.a-b. In fact, after meeting with BLM regarding the development of new alternatives, FWS explicitly stated:

> "*Our Draft EIS comments stand and this is our current position.* We are happy to work with BLM and supply what technical information we have, but the decision about a final preferred alternative is theirs to make. *We may or may not comment on a Final EIS.*"

**National Audubon Society, et al. v. Kempthorne, et al.**
1:05-CV-00008-JKS

3

Intervenors' Resp. Br., Ex K at 1 (AR 4430) (emphasis added).  While numerous agencies and environmental groups, including Plaintiffs, commented on the FEIS, FWS decided not to.  Thus, it is reasonable to assume that FWS had nothing new to add.  Plaintiffs have similarly conceded that their comments on the FEIS, like their comments on the draft EIS, advocate the No Action Alternative.  Pls.' Resp. at 6-7.  Consequently, based on the record in this case and the requirements of the National Environmental Policy Act ("NEPA"), the Court has correctly determined that BLM was not required to issue a supplemental EIS on the Final Preferred Alternative.

## II.    BLM TOOK A "HARD LOOK" AT CLIMATE CHANGE IMPACTS

The Preliminary Decision correctly concludes that BLM properly analyzed climate change impacts as a cumulative effect and that the scientific methodology used to do so was reasonable.  Preliminary Decision at 15, 17-18.  Plaintiffs do not challenge any of these findings in their response to the Court's preliminary opinion.  See, e.g., Pls.' Suppl. Br. at 8 (stating Plaintiffs' argument does not focus on methodology).  Instead, Plaintiffs continue to attack the format of the FEIS without addressing the information that the FEIS actually contains.

The centerpiece of Plaintiffs' argument is a contention that BLM "simply assumed" the combined impact of oil and gas activity and climate change would "be the same" under each alternative.  Id. at 8.  However, Plaintiffs' claim that BLM "assumed" climate change would have the same effect for each alternative is itself an assumption.  Plaintiffs do not identify a single place in the FEIS where BLM makes such a statement or provide any other record evidence to support their position.  Moreover, it is an assumption that is contradicted by the record.  As discussed in Intervenors' Response Brief and recognized by this Court, the FEIS *does* acknowledge that the combined impact of climate change and oil and gas development will be different under the alternatives.  FEIS at 4-588 to 5-589; Preliminary Decision at 18.

As BLM explained in both the FEIS and the ROD, "the incremental contribution of an alternative to cumulative impacts is assumed to be proportional to the projected level of activities for that alternative" and would be "greater" in areas with high surface values.  FEIS at 4-588; ROD at 10; Intervenors' Resp. Br. at 33-34.  Thus, BLM concluded that cumulative effects – including those attributable to climate change – would be the greatest under Alternative C and least under the No Action Alternative.  FEIS at 4-588 to 4-589; see also id. at 4-512, 4-519

**National Audubon Society, et al. v. Kempthorne, et al.**
1:05-CV-00008-JKS

4

(cumulative impacts to brant and caribou are expected to be higher under those alternatives that allow development in areas surrounding Teshekpuk Lake); id. at 4-524 (cumulative impacts to polar bears will be greatest under Alternative C). This mirrors the general conclusions – if not the methodology – of Plaintiffs' extra-record declarations. See Pls. Opening Br., Exs. 59 at 8 (indicating combined impact of climate change and oil and gas development will be greater in areas around Teshekpuk Lake); id., Ex. 60 at 5 (stating same with regard to polar bears); see also Intervenors' Resp. Br., § III.C.3.[3]

      Plaintiffs have therefore failed to demonstrate that the Court's preliminary determination in section I.C is based on a factual or legal error. Accordingly, Plaintiffs have not provided the Court with a reason to depart from its preliminary determination that BLM's analysis of climate change impacts satisfies the requirements of NEPA. Preliminary Decision at 18.

## III.    THE FINAL DECISION COMPLIES WITH THE PRODUCTION ACT AND THE APA

      Plaintiffs' argument in response to the Court's preliminary determination that BLM complied with the Production Act and the APA when it adopted the Final Preferred Alternative is curious. After arguing that the only way to provide the Teshekpuk Lake Special Area ("TLSA") with maximum protection is to close it to leasing, Plaintiffs now expend considerable energy trying to convince the Court that their quibble with BLM's final decision is merely procedural. See, e.g., Pls.' Suppl. Br. at 11 ("Plaintiffs are not challenging the decision as a substantive violation and do not seek a determination from this Court [as to] whether the decision meets the maximum protection standard…"). Plaintiffs then go on to rehash their argument that BLM failed to adequately explain its decision without addressing the substantial record evidence to the contrary presented by Intervenors and the Federal Defendants in their

---

[3] Indeed, despite Plaintiffs' insistence that that they are not making a methodological argument, Plaintiffs still rely on these declarations (and their synergistic approach) to argue that impacts will be different than the FEIS indicates. Pls.' Suppl. Br. at 9. However, as the FEIS states, the "net impacts" of climate change are impossible to calculate at this time due to limitations in our current understanding of global climate change. FEIS at 3-8; Intervenors' Resp. Br. at 34-35. Given this uncertainty, and the fact that Plaintiffs did not bother to inform BLM of its preferred methodology during the comment period, BLM's additive approach is, as this Court recognizes, both reasonable and consistent with NEPA. Preliminary Decision at 17-18.

**National Audubon Society, et al. v. Kempthorne, et al.**
1:05-CV-00008-JKS

briefing on the merits.[4]  As demonstrated below, Plaintiffs' repeat arguments have no more force now than they did before.

Plaintiffs' primary objection here appears to be that BLM skipped over the question of *whether* to lease areas in TLSA.  However, Plaintiffs' complaint is belied by the record.  During the planning process, BLM not only developed but also solicited and responded to public comments on a range of alternative management plans, two of which explicitly closed sections of TLSA to leasing.  See FEIS at 2-3 (describing alternatives presented in draft EIS and stating "alternatives present a range of actions in terms of the amount of additional lands" opened for leasing).  Moreover, in rejecting the No Action Alternative advocated by Plaintiffs, under which 589,000 acres in TLSA would remain closed, BLM explained that such an alternative would be inconsistent with both the Production Act's goal of facilitating oil and gas development to meet the national need and the President's energy policy.  ROD at 19.  In contrast, BLM explained that the additional lands made available under the Final Preferred Alternative would be "within the area of highest oil and gas potential."  ROD at 20; see also FEIS at 6-30 (explaining in response to comments that commercially recoverable oil is expected to be higher in TLSA than originally thought), 6-63 (same).

Plaintiffs try to discount this explanation by claiming that it does not "explain BLM's interpretation and application of the maximum protection standard."  Pls.' Suppl. Br. at 12.  However, Plaintiffs' remark misses the point.  As this Court has stated, and the Plaintiffs themselves have recognized, the maximum protection standard requires BLM to balance oil and gas development with environmental protection.  Preliminary Decision at 23-24; Pls.' Suppl. Br. at 10.  Needless to say, that balance will change as the nation's energy needs change, technology advances, and knowledge about petroleum reserves improves.  Thus, contrary to Plaintiffs, information indicating that areas off-limits to leasing may contain more than two billion barrels of technically-recoverable petroleum is a valid reason, and one that is consistent with the Production Act, for opening previously closed areas in TLSA.  See Intervenors' Resp. Br. at 17-18.

---

[4] On reply, Plaintiffs conceded that they are not "attempting to erect a heightened standard" for APA review of agency action. Pls.' Reply Br. at 7.  Consequently, all parties agree that the traditional APA standard applies here.  See Intervenors' Resp. Br. at 15-16.

**National Audubon Society, et al. v. Kempthorne, et al.**
1:05-CV-00008-JKS

As discussed in detail in Intervenors' Response Brief, the administrative record reveals that BLM more than complied with the APA when it adopted the Final Preferred Alternative. Not only does the record demonstrate that BLM "wrestled" with various ways to provide TLSA with maximum protection throughout the three year administrative process leading up to the ROD, the record explains both *why* BLM opened TLSA to leasing and *how* the extensive mitigation measures imposed by the Final Preferred Alternative will provide sensitive surface resources in TLSA with maximum protection.  See Intervenors Resp. Br. § III.B.3.  In short, Plaintiffs have not supplied this Court with a reason to deviate from its preliminary determination that BLM's final decision satisfies the standard of review set forth by the APA. Preliminary Decision at 25 (citing Basin Mine Watch v. Hankins, 456 F.3d 955, 962 (9th Cir. 2006).

## IV.    CONCLUSION

As stated herein, and in Intervenors' prior briefing, Plaintiffs have failed to establish that the agency decisions at issue in this case violate the applicable law.  Accordingly, this Court should deny Plaintiffs' motion for summary judgment on all grounds and reject their request for injunctive relief.  In the event the Court disagrees, injunctive relief should be limited to the sale of Northeast Planning Area leases.  Leases in the Northwest Planning Area are not implicated in this case and are offered pursuant to Record of Decision previously upheld by this Court and the Ninth Circuit.

DATED this 21st day of September, 2006.

STOEL RIVES LLP

s/Laura J. Beveridge
Jeffrey W. Leppo, AK Bar #0001003
Laura J. Beveridge, *Pro Hac Vice*
600 University Street, Suite 3600
Seattle, Washington  98101
Phone:  (206) 624-0900 / Fax:  (206) 386-7500
Email:  jwleppo@stoel.com
Email:  ljbeveridge@stoel.com

*Attorneys for Intervenor-Defendant
Anadarko Petroleum Corporation*

David C. Crosby, AK Bar # 7106006
*Attorney for Arctic Slope Regional Corporation*

Ethan Falatko, AK Bar # 0112093
*Attorney for State of Alaska*

**National Audubon Society, et al. v. Kempthorne, et al.**
1:05-CV-00008-JKS

<u>**Certificate of Service**</u>

I hereby certify that on September 21, 2006, a copy of foregoing document was served electronically on:

**Deirdre A. McDonnell**
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801
*Attorneys for Plaintiffs*

**Dean K. Dunsmore**
U.S. DEPARTMENT OF JUSTICE
Environment and Natural Resources Division
801 B Street, Suite 504
Anchorage, Alaska 99501-3657
*Attorneys for Federal Defendants*

**David C. Crosby**
DAVID C. CROSBY, P.C.
5280 Thane Road
Juneau, Alaska 99801-7717
*Attorneys for Arctic Slope Regional Corporation*

**Ethan Falatko**
**Lawrence Ostrovsky**
STATE OF ALASKA
Office of the Attorney General
P.O. Box 110300
Juneau, Alaska 99811-0300
*Attorneys for State of Alaska*

**Jeffrey W. Leppo**
**Laura J. Beveridge**
Stoel Rives LLP
600 University Street, Suite 3600
Seattle, WA 98101
*Attorneys for ConocoPhillips Alaska, Inc.*


s/Laura J. Beveridge
Laura J. Beveridge



**National Audubon Society, et al. v. Kempthorne, et al.**
1:05-CV-00008-JKS

8