Deirdre McDonnell
Layla Hughes
Eric P. Jorgensen
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801
Phone: (907) 586-2751
Fax:     (907) 463-5891
Email: dmcdonnell@earthjustice.org

*Attorneys for Plaintiffs National Audubon Society, et al.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NATIONAL AUDUBON SOCIETY, ALASKA WILDERNESS LEAGUE, CENTER FOR BIOLOGICAL DIVERSITY, NATURAL RESOURCES DEFENSE COUNCIL, NORTHERN ALASKA ENVIRONMENTAL CENTER, SIERRA CLUB, and THE WILDERNESS SOCIETY,<br><br>Plaintiffs,<br><br>v.<br><br>DIRK KEMPTHORNE, Secretary of the Interior[1]; HENRI BISSON, State Director, Bureau of Land Management; TOM MELIUS, Regional Director, United States Fish and Wildlife Service[2]; BUREAU OF LAND MANAGEMENT, UNITED STATES FISH AND WILDLIFE SERVICE, and UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>Defendants, and<br><br>CONOCOPHILLIPS ALASKA, INC., ANADARKO PETROLEUM CORPORATION, ARCTIC SLOPE REGIONAL CORPORATION, and STATE OF ALASKA,<br><br>Intervenor-Defendants. | Case No. 1:05-cv-00008-JKS |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' AND INTERVENOR-DEFENDANTS' SUPPLEMENTAL BRIEFS**

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Dirk Kempthorne has been automatically substituted for P. Lynn Scarlett.

[2] Pursuant to Fed. R. Civ. P. 25(d)(1), Tom Melius has been automatically substituted for Rowan Gould.

**INTRODUCTION**

Defendants offer no new argument for the environmental impact statement (EIS) and biological opinion's failure to account for the increased development BLM itself predicted would occur when this decision and the Northwest decision are combined.  Defendants do not deny that they failed to adjust their impact assessment to account for this fact.  Instead, Defendants insist that the Court should accept the flawed analysis, in the case of the EIS, because this is only the lease sale stage and, for the biological opinion, because they may re-initiate consultation later. The preliminary decision correctly rejected these arguments and held that Defendants should have delivered on their promise to fully analyze the cumulative impacts of these two decisions.

**ARGUMENT**

I.   THE PRELIMINARY DECISION CORRECTLY FOUND A VIOLATION OF NEPA.

Defendants and Intervenor-Defendants' supplemental briefs offer no new defense for their failure to meet NEPA's cumulative impacts requirement.  As the Court correctly noted, the EIS here "fails to adequately analyze the cumulative effects of the development in the NWPA." Preliminary Decision at 12.  As Plaintiffs pointed out in the original briefing on this case, BLM erred by omitting any consideration of the increased development BLM itself predicted would occur in the Northwest planning area if the Northeast plan was amended.  BLM still has not, and cannot, argue that this factor was considered. Instead it continues to defend its oversight on the grounds that the analysis it included was adequate--for the leasing stage.  See Defs.' Supp. Br. at 4.

As the Court recognized, the EIS did not consider "the cumulative impact of development in NE NPRA on the NWPA."  Preliminary Decision at 14.  In defense, Defendants argue that there is no evidence that the "alleged 'relaxation of regulations' will have any actual impact on

development in the NW NPRA." Defs.' Supp. Br. at 4. In their opening brief, Defendants made the same argument. Defs.' Opp'n at 21-22 ("It would indeed speculative [sic] to attribute at this time any effect to the limited changes in regulatory restrictions in the NE NPRA on any development that may, or may not, occur in the NW NPRA . . . ."). However, the premise that there will be more development in the Northwest planning area if the remaining Northeast was opened and stipulations relaxed is not based on Plaintiffs' allegation or speculation, but rather on BLM's own projection. See Pls.' Ex. 15 at 12 (1 NW FEIS at IV-69). BLM itself found that the "restrictive regulations" of the 1998 Northeast plan would reduce development in the Northwest by 20%. Id. BLM initiated the Northeast amendment process specifically to remove these "needlessly restrictive" stipulations. Pls.' Supp. Response Ex. 1 at 2 (BLM press release announcing intent to amend NE plan). As Defendant-Intervenors note, "economic potential is significant because BLM uses production estimates to determine the anticipated level of environmental impact." Int-Defs.' Supp. Br. at 4. Thus, a 20% increase in projected production is significant and should have been analyzed here.[1]

While Defendants do not claim that they considered the increased production expected, they reiterate their argument that the analysis in the EIS is sufficient. See Defs.' Supp. Br. at 4-6. Despite the fact that the Court stated it has reviewed the sections cited by Defendants, the

---

[1] Ironically, Defendants point out that "the projected pipeline paths from the Northwest through the Northeast do not even pass through the Teshekpuk Lake area." Defs.' Supp. Br. at 7. Naturally, the Northwest EIS assumed that pipelines would not pass through the protected area because it did not analyze the plan to open that area. This is precisely the problem that needs to be fixed in this process. Opening the Teshekpuk Lake area will make development easier in the Northwest and thus increase the impacts there. BLM refused to analyze this in the Northwest EIS and has continued to fail to analyze it here.

Defendants essentially repeat the same citations. Compare Defs.' Opp'n Br. at 22 with Defs.' Supp. Br. at 4-5. The Court should reject this attempt to rehash the arguments it has already considered. Moreover, these cites do not address the issue here. These pages do not demonstrate, and Defendants themselves have not claimed, that BLM has considered the impact to resources from increased development in the Northwest combined with development in the Teshekpuk Lake area.

Similarly, Intervenor-Defendants repeat the argument BLM has notably not joined that the development projection Plaintiffs cite is incorrect. In their original reply brief, Plaintiffs cited the clear evidence that BLM did in fact rely upon the projection from the Northwest EIS. Pls. Reply at 17 n.8 (citing Pls.' Reply Ex. 3 at 4 (2 FEIS at 4-451)).

II.     THE FAILURE TO INCLUDE INCREASED DEVELOPMENT IN THE NORTHWEST BASELINE ALSO VIOLATED THE ESA.

Similar to their defenses of the NEPA cumulative impacts section, Defendants continue to defend the biological opinion based on the assertion that they will fix their flawed analysis later. See Defs.' Supp. Br. at 6-7. In essence, BLM argues that it does not need to correct the error in the biological opinion at issue here because the agencies will likely have to reinitiate consultation in the future on the Northwest. This notion is contrary to well-established ESA law. Indeed, Conner v. Burford, explicitly rejected the notion that future consultations could be relied on as a substitute for a full consultation based on the best available evidence. 848 F.2d 1441, 1453-54 (9th Cir. 1988). The question is not whether the agencies need to reinitiate consultation for the Northwest, however. The question is whether the biological opinion for the Northeast amendment is adequate. The ESA requires agencies to use the best available scientific information. Here, that information includes the increased development in the Northwest that BLM itself has predicted. Conner cannot be read to stand for the proposition, as Defendants

would have it, that because consultation at the leasing stage is to be based on projections, BLM can use any projection it wishes, even one based on incorrect assumptions. As the Court noted, BLM did not include the best available information in its biological assessment in violation of the ESA.

Intervenor-Defendants' continued argument that development in the Northwest is not part of the baseline for the Northeast biological opinion is without merit. Intervenor-Defendants' entire argument is based on the assertion that Northwest development is a <u>future</u> federal action. Plaintiffs, however, have never argued that it is a future federal action. Rather, Northwest development is plainly part of the baseline because it is "the anticipated impact" of a "Federal project[] in the action area that ha[s] already undergone formal . . . section 7 consultation." 50 C.F.R. § 402.02.

III.  THE MAXIMUM PROTECTION STANDARD IS NOT LIMITED TO EXPLORATION.

In the preliminary decision, the Court properly rejected Intervenor-Defendants' argument that, contrary to BLM's interpretation, the maximum protection provision of the NPRPA does not apply to leasing. <u>See</u> Preliminary Decision at 22. Intervenor-Defendants' argument that the language enacted in the 1980 rider making the maximum protection standard applicable to leasing only applied to the first two lease sales is unpersuasive. First, the plain language itself refers to any activity "pursuant to this section," not limiting its application to one subsection. Intervenor-Defendants' structural argument is completely undermined by the fact that when this language was enacted, it did not appear in a separate subsection, but rather the entirety of what is now 42 U.S.C. § 6506a originally was enacted in one paragraph and was originally codified as one paragraph at 42 U.S.C. § 6508. The Energy Policy Act of 2005, recodified this language, but did not change it. There is no indication that Congress intended this reorganization to change

the meaning of the law.  See 151 Cong. Rec. S9255-01, S9273 (July 28, 2005) (Statement of Sen. Domenici) ("It is my understanding that the transfer of the matter . . . does not affect or otherwise modify the standard for activities undertaken pursuant to Public Law 96-514.").

IV.  RELIEF SHOULD INCLUDE AN INJUNCTION AGAINST IMPLEMENTATION OF THE ROD.

Although the Defendants argue that relief should be limited, they provide no new evidence or argument relevant to this question.  The preliminary decision correctly found that there would be irreparable harm if the decision is not enjoined because the NEPA process would be constrained by the existence of leases under the ROD.  Moreover, the balance of harms clearly weighs in favor of injunctive relief.[2]  Indeed, even the oil companies have now stated that they prefer for the lease sale not to take place before the supplemental analysis is conducted.

Plaintiffs do not take issue with Intervenor-Defendants' suggestion that injunctive relief should be limited to leases in the Northeast planning area.  Indeed, Plaintiffs' requested relief was for the Court to vacate and remand the decision and issue an injunction against implementation of the ROD.  Plaintiffs maintain that this is the correct scope of injunctive relief.

---

[2] As noted in Plaintiffs' Supplemental Brief, because the Court also found a violation of the ESA, injunctive relief on that count should issue without reference to the traditional balancing of the equities because Congress has already decided that protection of listed species should take precedence over other considerations.

Dated this 21st day of September, 2006.

                Respectfully submitted,

                */s/ Deirdre McDonnell*
                Deirdre McDonnell (AK Bar # 0111082)
                Layla Hughes (AK Bar # 0312094)
                Eric P. Jorgensen (AK Bar # 8904010)
                EARTHJUSTICE
                325 Fourth Street
                Juneau, Alaska 99801
                Phone: (907) 586-2751
                Fax:    (907) 463-5891
                Email:  dmcdonnell@earthjustice.org

                *Attorneys for Plaintiffs National Audubon Society, Alaska Wilderness League, Center for Biological Diversity, Natural Resources Defense Council, Northern Alaska Environmental Center, Sierra Club, and The Wilderness Society*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2006, a copy of the PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANTS' AND INTERVENOR-DEFENDANTS' SUPPLEMENTAL BRIEFS, with accompanying materials, was served electronically on:

**Dean K. Dunsmore**
U.S. DEPARTMENT OF JUSTICE
Environment & Natural Resources Division
801 B. Street, Suite 504
Anchorage, AK 99501-3657

**Jeffrey W. Leppo**
**Laura J. Beveridge**
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101

**David C. Crosby**
DAVID C. CROSBY, P.C.
5280 Thane Road
Juneau, AK 99801-7717

**Ethan Falatko**
**Lawrence Z. Ostrovsky**
STATE OF ALASKA
Office of the Attorney General
P.O. Box 110300
Juneau, AK 99811-0300


_/s/ Deirdre McDonnell_
Deirdre McDonnell

## TABLE OF EXHIBITS

| Exhibit No. | AR No. | Description |
| --- | --- | --- |
| 1 | 24 | BLM Press Release Announcing Intent to Amend Northeast Plan (April 15, 2003) |